UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE, INC.

        Plaintiff,

v.

ALBERTO R. GONZALES, Attorney General
of the United States, UNITED STATES
DEPARTMENT OF JUSTICE, and KAREN P.
TANDY, Administrator of the United States
Drug Enforcement Administration

        Defendant.

Civil Action No.
1:06CV00966 (CKK)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION REGARDING ITS MOTION TO SEAL**

**INTRODUCTION**

Plaintiff ▓▓▓▓▓▓▓▓▓▓ ("Plaintiff") seeks to seal from public access, as its confidential business information, regulatory language applicable to and descriptions of the controlled substance that Plaintiff sought to import in contravention of the requirements of the Controlled Substances Act ("CSA"). In this Circuit, however, there is a presumption – not overcome here – that the public has a right of access to court proceedings and filings. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of the country recognize a general right to inspect and copy public records and documents, including judicial records and documents"); *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) ("The first amendment guarantees the press and the public a general right of access to court proceedings

. . . ."); *McConnell v. Federal Election Comm'n*, 251 F. Supp. 2d. 919, 925 (D.D.C. 2003) (Kollar-Kotelly, J.) (same); *New York v. Microsoft Corp.*, 2002 WL 1315804 (D.D.C., May 8, 2002) (Kollar-Kotelly, J.) (same). Although that right is not absolute, it is only overcome "by an overriding interest based on findings that closure is *essential* to preserve higher values and is *narrowly* tailored to serve that interest." *Washington Post*, 935 F.2d at 288 (emphasis added); *see also Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984). Plaintiff has not narrowly tailored its motion to seal to protect only its legitimate interest in its confidential business information. Accordingly, this Court should deny Plaintiff's motion or alternatively enter an appropriately narrowed order to seal. *See* Part III, *infra*.

I.  **The Public Has an Overriding Interest in the Drug Enforcement Administration's ("DEA") Interpretation of Its Regulations and Information Bearing on That Interpretation Should not Be Closed to the Public.**

Plaintiff's burden of demonstrating that redaction of the filings in this action is warranted is especially high because this case involves the DEA's interpretation of its regulations. The fact that a government agency is both party to this lawsuit and objects to sealing the record "is not only relevant, but strengthens the already strong case for access." *Equal Employment Opportunity Comm'n v. National Children's Center*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see also Federal Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party."). "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Id.* The public's substantial stake and interest in the operation of its government is well established. *See, e.g., Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d

2

1060, 347 (D.C. Cir. 1998) ("public's interest in the 'faithful application of the laws' outweighed its interest in immediate access to Mylan's generic product"). Nowhere is that more clear than in this case involving the DEA's interpretation of its regulations governing the importation of controlled substances.

Although Plaintiff would have this Court believe that this case is about whether the DEA acted arbitrarily and capriciously in concluding that the generic pharmaceutical drug Plaintiff is developing is a Schedule I controlled substance, in actuality this case presents a straightforward question of regulatory interpretation. Specifically, the issue before this Court is whether the DEA reasonably interpreted its own regulation, 21 C.F.R. 1308.13(g)(1) (listing in schedule III "Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a U.S. Food and Drug Administration approved product"), as excluding dronabinol that is not contained in an already FDA-approved product. Any redaction of this regulatory language from the filings in this action is therefore completely unwarranted. *See* Affidavit of ▮▮▮▮▮▮▮ in Support of Plaintiff's Amended Motion to Seal ("▮▮▮▮▮▮▮") ¶ 12 (contending that "the very description of the product at issue, including its description in Schedule III and in the Federal Register" should be subject to an order to seal). The DEA's interpretation of its own regulatory language is clearly a matter of public concern and that language should not be closed from the public.[1]

---

[1] Plaintiff cannot, by equating the regulatory language with its product under development, transform that language into its confidential business information. *See* Plaintiff's Amended Motion Regarding Its Motion to Seal ("Amend. Mot.") at 2 (contending that Plaintiff's confidential business information includes the "[controlled substance at issue's] identification in the Code of Federal Regulations and the Controlled Substances Schedule"). The regulatory language is clearly in the public domain and thus not Plaintiff's confidential business information.

3

Further counseling against closure of these proceedings is the requirement of openness inherent in the regulations governing the importation of certain controlled substances. Companies registered to handle controlled substances, for example, have a legal obligation to ensure that anyone to whom they distribute or from whom they receive such substances is also a registered handler of them. *See* 21 U.S.C. §§ 841(a)(1), 960(a)(1) (making it a felony to distribute, manufacture, or import a controlled substance except as authorized by an issued registration and in conformity with other provisions of the CSA). Registration information therefore unsurprisingly is publicly available though a database maintained by the Department of Commerce and the DEA. *See* www.ntis.gov/products/types/dea/dea-csa.asp. (describing database as "extremely useful" for those "who must verify that a practitioner is registered to handle controlled substances"). Thus, the fact of registration to handle a particular controlled substance is not privileged information and such information in the record here should not be closed to the public.

Certain provisions of the CSA and the regulations promulgated thereunder moreover mandate that the DEA publish in the *Federal Register* applications of companies – like Plaintiff here – seeking to import a Schedule I controlled substance.[2] *See* 21 C.F.R. § 1301.34(a) ("In the case of an application for registration or reregistration to import a controlled substance listed in Schedule I or II, . . . the Administrator shall, upon the filing of such application, publish in the

---

[2] Plaintiff erroneously contends that because it intends to apply for FDA approval of its product – something which has not been guaranteed to Plaintiff – that product is covered by 21 C.F.R. § 1308.13(g)(1). As explained in Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff's product at this point in time is a Schedule I controlled substance. *See* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction ("Def. Mot.") at 13-14.

4

Federal Register a notice naming the applicant and stating that such applicant has applied to be registered as an importer of a Schedule I or II controlled substance, which substance shall be identified."); *see, e.g.,* 70 Fed. Reg. 47,232 (Aug. 12, 2005) (notice of application of National Center for Natural Products Research); 70 Fed. Reg. 47,232 (Aug. 12, 2005) (notice of registration as bulk manufacturer of Tetrahydrocannabinols "for formulation into the pharmaceutical product Marinol"). Such publication gives effect to Congress's intent that preference be given to existing registrants over new applicants and domestic manufacturers over importers. *See* 21 U.S.C. § 823(a)(1); 21 U.S.C. § 952(a)(2)(B). The CSA further provides that "prior to issuing a registration [to import a controlled substance] to a bulk manufacturer of a controlled substance in schedule I or II, . . . the [DEA] shall give manufacturers holding registrations for the bulk manufacture of the substance an opportunity for a hearing." 21 U.S.C. § 958(i). Existing registrants therefore are given the opportunity to challenge the applicant's entry into the market. *See, e.g., Roxane Labs., Inc.*, 63 Fed. Reg. 55,891 (Oct. 19, 1998) (hearing challenging the application of Roxane Laboratories for registration as importer of Schedule II substance). Thus, within the regulatory framework of controlled substances, registrants have no expectation of privilege as to their applications for registrations and import permits. This Court therefore should not seal such information from the public in these proceedings.

II.   **The Court Should Deny Plaintiff's Request to Seal as Overbroad.**

Although the parties generally agree that the protection of confidential business information "has been recognized as an appropriate justification for the restriction of public or press access," Plaintiff seeks to extend this protection to matters in which the public has an overriding interest or that it has failed demonstrate will injure its business if disclosed. *See*

5

*Microsoft, Corp.*, 2002 WL 1315804, at *2; *see also Nixon*, 435 U.S. at 598 (noting that "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing"). Specifically, Plaintiff contends that its "confidential business information consists of the identity of the generic drug at issue, its identification in the Code of Federal Regulations and the Controlled Substances Schedule [sic], and related statements and documentation that would disclose ▮▮▮▮ development of this drug." Amend. Mot. at 2. Courts have regarded business information that might harm a litigant's competitive standing as including "business sales statistics, inventories, customer lists, scientific or manufacturing processes or developments, and negotiating positions." *New York Public Interest Research Group v. Environmental Protection Agency (NYPIRG)*, 249 F. Supp. 2d 327, 333 (S.D.N.Y. 2003) (relying on *Public Citizen Health Research Group v. Federal Drug Admin.*, 704 F.2d 1280 (D.C. Cir. 1983)). Clearly excluded as not confidential is information that "does not reveal anything about the nature and character of [the company's] business or its revenues, expenses or income, or anything that a commercial business would want to protect for fear of competitive injury." *NYPIRG*, 249 F. Supp. 2d at 33; *see also National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 684 (D.C. Cir. 1976) (concluding that withholding of information proper where "[d]isclosure would provide competitors with valuable insights into the operational strengths and weaknesses of a [company] while [its competitors] could continue in the customary manner of playing their cards close to their chest").

Plaintiff has not demonstrated that all of the information it seeks to redact is confidential business information. *See United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) (company seeking to protect its confidential business information must "prove that disclosure

6

will result in a 'clearly defined and very serious injury to its business'"). Rather, Plaintiff seeks a sealing order based on the conclusory assertion of its Chief Executive Officer that if "the description of the product at issue, including its description in Schedule III and in the Federal Register" is not protected from public disclosure "it could be used against ▓▓ by its competitors to develop similar, if not identical, generic pharmaceutical products, deprive ▓▓ of first ANDA filing status and thereby deprive ▓▓ of the opportunity to establish name-recognition with respect to a particular drug product, divert ▓▓ customers, and undermine the relationships ▓▓ has worked hard to establish with its vendors, suppliers, customers and collaborative parties."[3] ▓▓ Aff. ¶ 13. The regulatory language whose interpretation is at issue in this case, however, is already in the public domain. *See* 21 C.F.R. 1312.30; 21 C.F.R. 1308.11(d)(30); 21 C.F.R. 1308.13(g). Plaintiff thus cannot seriously contend that this same information constitutes its confidential business information.

Moreover, the general fact that some company is developing a generic version of a patented FDA-approved drug is also not confidential. As Plaintiff concedes, the market for the manufacture and distribution of generic drugs is highly competitive. *See* Plaintiff's Motion for Preliminary Injunction at 3. Indeed, in April 2005, the Presswire reported that the cannabinoid market, "which currently lies with Marinol," is "expected to develop from the limited, controversial, niche market of today, to that with a much higher profile with additional approved therapeutic areas." Visiongain: Visiongain Report Announces Cannabinoids as a Potential Blockbuster? (Apr. 21, 2005), a copy of this article is attached hereto as Exhibit 1. Where, as

---

[3] Nothing in the record before the Court would enable any of Plaintiff's competitors to duplicate its manufacturing process for the drug Plaintiff is developing.

7

here, Plaintiff seeks to seal information that is in the public domain, Plaintiff clearly has not met its burden of demonstrating that its motion is narrowly tailored to protect only its confidential business information. *See Washington Post*, 935 F.2d at 288 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

### III. This Court Should Only Require the Parties to Redact Information Identifying Plaintiff and Its Overseas Contractual Partner.

Although Plaintiff has not demonstrated any "very serious injury" that it would suffer from disclosure of the information Plaintiff moves to seal, should this Court conclude otherwise, Plaintiff's interest in its confidential business information can sufficiently be protected by redacting its identity and that of its overseas business partner from the filings in this action.[4] The filings would then reveal this action as involving whether the DEA's interpretation of 21 C.F.R. § 1308.13(g)(1) was arbitrary and capricious or exceeded its statutory authority and whether a company may circumvent the established regulatory procedures for importing a schedule I controlled substance based on the company's subjective expectation of FDA-approval. The public clearly has an interest in this Court's resolution of these issues and neither determination

---

[4] In addition to redacting the name of Plaintiff and its contractual partner, information that might reveal their identities should also be redacted. *See, e.g.*, Compl. ¶ 12 (identifying the number of employees Plaintiff employs). Thus, for example, in the caption "Plaintiff" would replace the company name. An order consistent with this approach would provide that,

Upon consideration of Plaintiff's Amended Motion Regarding Its Motion to Seal, the opposition thereto, and the complete record in this case, it is hereby
ORDERED that all references to Plaintiff's name, including in the caption, and information from which Plaintiff might be identified be redacted from filings in this action; and
FURTHER ORDERED that all references to Plaintiff's overseas contractual partner and information from which that partner might be identified be redacted from filings in this action.

hinges on the specific fact of Plaintiff's development of a product that it contends is within that provision. Since Plaintiff has not demonstrated that disclosure of the regulatory language or the fact that a company is seeking to make a generic competitor of an FDA-approved product will injure its competitive position, this information should not be withheld from the public.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's amended motion to seal or alternatively issue an appropriately narrowed order to seal.

Dated: June 12, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch

_____/s/_____
JACQUELINE E. COLEMAN (D.C. Bar No. 459548)
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm 7214
Washington, DC 20530
202-514-3418

**Counsel for Defendants**

# Exhibit 1

Westlaw.                                                                    NewsRoom

4/21/05 M2PW 00:00:00                                                        Page 1

4/21/05 M2 Presswire 00:00:00

M2 PRESSWIRE
Copyright 2005 M2 Communications Ltd.

April 21, 2005

visiongain: visiongain report announces cannabinoids as a potential blockbuster?

RDATE:21042005

San Francisco, CA and London, UK - According to the latest visiongain report, there is a potential for a drug within the cannabinoids market to become a blockbuster within the next few years. The visiongain report, "Cannabinoids: A Potential Blockbuster?", states that there are at present only 2 approved cannabinoid drugs on the market: Canada has recently become the first country to accept the use of a medicine derived from cannabis when it is approved GW Pharma's Sativex for the relief of pain in multiple sclerosis suffers.

Sativex is expected to raise both profits and the profile of the cannabinoid market. GW Pharmaceutical also hopes Sativex will become available in the UK by the end of 2005 for MS associated spasticity and pave the way for approval of the companies many other cannabinoid pipeline products.

"Sativex, a trial cannabinoid drug, is expected to generate revenues of $200 million in its first six months following its 2005 launch, by 2006 this is expected to grow 20.0% to $240 million", says Zoe Downes, visiongain's Pharmaceutical analyst. According to the latest visiongain report "By 2010, Sativex should be marketed in the US where profits of $575 million can be expected". With these revenues Sativex will dominate the cannabinoid market, which currently lies with Marinol. Visiongain predicts that Acomplia will earn revenues of $120 million in its first twelve months of launch expected at the end of 2005. Revenues will grow steadily until 2010, where they could generate up to $175 million.

Visiongain values the current cannabinoid market in 2005 at $110.5 million. This value is the combined world revenues of Marinol, Nabilone and also includes generic Dronabinol in Germany. This is a 6.3% growth increase from 2004, where revenues totalled $104 million. By 2010 sales of these products could reach a potential of just under $200 million. Over the forecast period, 2002 to 2010, this will generate a CAGR% of 10.76%.

By 2006 the cannabinoid market is expected to develop from the limited, controversial, niche market of today, to that with a much higher profile with additional approved therapeutic areas. The next coming months will witness the arrival of the world's first whole-cannabis plant derived pharmaceutical product,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4/21/05 M2PW 00:00:00                                                                    Page 2

Sativex. Sativex (THC:CBN) from the innovative cannabinoid company GW Pharmaceuticals is expected to be launched into the Canadian neuropathic pain Multiple Sclerosis market.

Acomplia, (Rimonabant) by Sanofi-Aventis is another major new comer to the market. Acomplia is expected to gain approval for the antiobesity/smoking cessation markets by the end of 2005. Acomplia is also undergoing Phase II studies for alcohol withdrawal.

If Sativex and Acomplia are approved for MS neuropathic pain/spasticity and antiobesity, the market then could reach a potential of $947 by 2010 with sales of Marinol and Nabilone with generic Dronabinol aiding revenues.

If you are interested in an overview of cannabinoids: a potential blockbuster - Please send an email to Senh Ip Senh.ip@visiongain.com including: full name, Title of publication, contact telephone number, Email, and details of where you saw this release. Upon receipt of this information, an overview will be emailed to you. Also view:
http://www.epharmaceuticalnews.com/Products/4/201/visiongain/Cannaboids-A-potential-blockbuster.html

Background: Visiongain is one of the fastest growing and most innovative independent media companies in Europe today. Based in London, UK, visiongain produce a host of business-2-business conferences, newsletters, management reports and E-Zines focusing on the Financial markets, the Pharmaceutical, Telecoms industries and currently the Defence sector.

For more Pharmaceutical information, please contact our website on: Http://www.epharmaceuticalnews.com For information on visiongain, please visit the website:  Http://www.visiongain.com.

CONTACT: Senh Ip, Corporate Communications e-mail: Senh.ip@visiongain.com

((M2 Communications Ltd disclaims all liability for information provided within M2 PressWIRE. Data supplied by named party/parties. Further information on M2 PressWIRE can be obtained at http://www.presswire.net on the world wide web. Inquiries to info@m2.com)).

---- INDEX REFERENCES ----

COMPANY: GW PHARMACEUTICALS PLC; SANOFI AVENTIS

NEWS SUBJECT: (Business Management (1BU42); Corporate Strategy & Strategic Planning (1XO03); Business Strategy (1BU97))

INDUSTRY: (Science & Engineering (1SC33); Theoretical Analysis (1TH79); Business Theory (1BU14))

REGION: (United Kingdom (1UN38); Europe (1EU83); Americas (1AM92); England (1EN10); North America (1NO39); Canada (1CA33); Western Europe (1WE41))

Language: EN

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

4/21/05 M2PW 00:00:00                                                                                  Page 3

OTHER INDEXING: (ACOMPLIA; CAGR; GW; GW PHARMACEUTICALS; MARINOL; NABILONE; SANOFI AVENTIS; UK; VISIONGAIN) (Email; Multiple Sclerosis; Sativex; Senh Ip; Senh Ip Senh.; Senh.; Zoe)

Word Count: 848
4/21/05 M2PW 00:00:00
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2006, I caused a copy of the foregoing Defendants' Opposition to Plaintiff's Amended Motion Regarding Its Motion to Seal to be filed through the United States District Court for the District of Columbia's ECF system.

/s/
Jacqueline Coleman