U. S. Department of Justice
Drug Enforcement Administration

---

*www.dea.gov*

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Joseph T. Rannazzisi, certify that to the best of my knowledge, the attached documents constitute a true and accurate copy of the materials and applicable regulations concerning the Drug Enforcement Administration's decision to deny ████████████████████ application for a permit to import 525,000 capsules of its synthetic dronabinol.

Signed on the 13th day of June, 2006, at Headquarters, Drug Enforcement Administration, Arlington, Virginia.

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

Westlaw.

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

PROPOSED RULES

DEPARTMENT OF JUSTICE

Drug Enforcement Administration

[DEA-180P]

21 CFR Parts 1308 and 1312

Schedules of Controlled Substances: Rescheduling of Synthetic Dronabinol
(Martinol[R]; (-)-D$^9$-(trans)-Tetrahydrocannabinol in Sesame oil and
Encapsulated in Soft Gelatin Capsules) From Schedule II to Schedule III.

Thursday, November 5, 1998

*59751  AGENCY: Drug Enforcement Administration, Department of Justice.

ACTION: Notice of proposed rulemaking.

SUMMARY: This proposed rule is issued by the Acting Deputy Administrator of the
Drug Enforcement Administration (DEA) to remove the Food and Drug Administration
(FDA) approved drug product containing dronabinol [Marinol[R]; (-)-*$^9$
-(trans)-tetrahydrocannabinol in sesame oil and encapsulated in soft gelatin
capsules] from Schedule II and place it into Schedule III of the Controlled
Substances Act (CSA). This proposed action is based on an evaluation of the
relevant data by the DEA and a recommendation from the Assistant Secretary for
Health of the Department of Health and Human Services (DHHS) *59752  that the
FDA-approved dronabinol product [Marinol[R]; (-)-D$^9$-(trans)-THC in sesame oil and
encapsulated in soft gelatin capsules] be rescheduled from Schedule II to Schedule
III. If finalized, this action will impose the regulatory controls and criminal
sanctions of Schedule III on those who handle dronabinol and products containing
dronabinol.

DATES: Comments, objections and requests for a hearing must be received on or
before December 7, 1998.

ADDRESSES: Comments, objections and requests for a hearing should be submitted in
quintuplicate to the Acting Deputy Administrator, Drug Enforcement Administration,
Washington, DC.  20537; Attention: DEA Federal Register Representative/CCR.

FOR FURTHER INFORMATION CONTACT: Frank Sapienza, Chief, Drug and Chemical
Evaluation Section, Drug Enforcement Administration, Washington, DC.  20537,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

63 FR 59751-01                                                          Page 2

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

202-307-7183.

SUPPLEMENTARY INFORMATION: Dronabinol is the synthetic equivalent of the
(-)-isomer of $D^9$-(trans)-tetrahydrocannabinol [$D^9$-(trans)-THC], which is the major
psychoactive component of Cannabis sativa L. (Marijuana). Dronabinol, under the
trade name Marinol$^{(R)}$. was approved for marketing by the FDA on May 31, 1985 for
the treatment of nausea and vomiting associated with cancer chemotherapy.
Dronabinol [Marinol$^{(R)}$; (-)-$D^9$-(trans)-THC in sesame oil and encapsulated in soft
gelatin capsules], but not THC itself, was transferred from Schedule I to Schedule
II of the CSA on May 13, 1986, in accordance with 21 U.S.C. 811(a) and the FDA
approval of a new drug application for Marinol$^{(R)}$ capsules. The rescheduling of
Marinol$^{(R)}$ was based on a recommendation from the Assistant Secretary for Health
which also stated that THC should remain in Schedule I. Marinol$^{(R)}$'s indications
were expanded on December 22, 1992 to include the treatment of anorexia associated
with weight loss in patients with AIDS.

On February 3, 1995, UNIMED Pharmaceuticals, Inc. petitioned the Administrator of
the DEA to reschedule dronabinol formulations from Schedule II to Schedule III.
This request involves only dronabinol [synthetic (-)-$D^9$-(trans)-THC], specifically
the product Marinol$^{(R)}$ (dronabinol in sesame oil in a soft gelatin capsule).
Prior to a review of the data in the petition, the DEA had to determine whether
the rescheduling of dronabinol formulations to Schedule III was possible, in light
of the control of THC in Schedule II of the 1971 Convention on Psychotropic
Substances. The DEA concluded that control of dronabinol formulations in Schedule
III of the CSA was possible and would meet the requirements of Schedule II of the
convention provided that THC remained in Schedule I or II of the CSA and that 21
CFR 1312.30 was amended to require import and export permits for international
transactions involving dronabinol.

On December 11, 1996, UNIMED Pharmaceuticals, Inc. submitted a supplement to its
petition to reschedule dronabinol formulations from Schedule II to Schedule III.
This supplement provided data regarding the pharmacokinetics of Marinol$^{(R)}$,
additional data about the chemistry of the product and studies regarding the
actual abuse of the Marinol$^{(R)}$ product. This information specifically addressed
the criteria required to be considered under the CSA.

On August 7, 1997, after gathering the necessary data, the DEA sent its review
document and a letter to the Acting Assistant Secretary for Health, DHHS
requesting a scientific and medical evaluation of the available data and a
scheduling recommendation on dronabinol, as required by 21 U.S.C. 811(b).

On September 11, 1998, the Acting Assistant Secretary for Health sent to the DEA
a letter recommending that dronabinol (Marinol$^{(R)}$; (-)-$D^9$-(trans)-THC in sesame
oil and encapsulated in soft gelatin capsules) be transferred from Schedule II to
Schedule III of the CSA. Enclosed with the September 11, 1998 letter was a
document prepared by the FDA entitled "Basis for the Recommendation for
Rescheduling Marinol$^{(R)}$ Capsules from Schedule II to Schedule III of the CSA." In
this document, the FDA defines the Marinol$^{(R)}$ product as "an FDA approved drug

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

63 FR 59751-01

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

product containing synthetically produced dranabinol dissolved in sesame oil and encapsulated in soft gelatin capsules (2.5 mg, 5 mg, and 10 mg per dosage unit." The document contained a review of the factors which the CSA requires the Secretary to consider [21 U.S.C. 811(c)].

The factors considered by the Acting Assistant Secretary for Health and the DEA with respect to dranabinol were:

(1) Its actual or relative potential for abuse;

(2) Scientific evidence of its pharmacological effect, if known;

(3) The state of current scientific knowledge regarding the drug or other substance;

(4) Its history and current pattern of abuse;

(5) The scope, duration, and significance of abuse;

(6) What, if any, risk there is to the public health;

(7) Its psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

The pharmacological and behavioral effects of dronabinol are comparable to those of $D^9$-THC, marijuana and other active cannabinoids. There are few scientific studies that directly evaluate the pharmacologeutical and behavioral effects of the product Marinol[R] to indicate that there are differences in its abuse liability compared to oral THC. Nevertheless, there is little evidence of actual abuse of Marinol[R], despite modest annual increases in the total number of prescriptions written. Despite dronabinol's THC-like abuse liability, there are several factors that deter its actual abuse and trafficking. These factors include dronabinol's formulation in sesame oil, the improbability that the THC would be extracted from the product and abused by another route of administration, and its delayed onset of effects. Although excessive use of Marinol[R] may result in the development of psychological dependence, there has been no evidence of such use. The scientific data reviewed to date and the minimal evidence of actual abuse and trafficking support the transfer of dronabinol to Schedule III of the CSA.

Relying on the scientific and medical evaluation and the recommendation of the Assistant Secretary for Health in accordance with section 201(b) of the CSA (21 U.S.C. 811(b)), and the independent review of the DEA, the Acting Deputy Administrator of the DEA, pursuant to sections 201(a) and 201(b) of the CSA (21 U.S.C. 811(a) and 811(b)), finds that:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

(1) Based on information now available, dronabinol (Marinol[R]) has a potential
for abuse less than the drugs or other substances in Schedules I and II.

(2) Marinol[R] [(-)-*[9]-(trans)-THC in sesame oil and encapsulated in soft gelatin
capsules] is an FDA approved drug product and has a currently accepted medical use
in treatment in the United States; and

(3) Abuse of dronabinol [Marinol[R];      (-)-*[9]-(trans)-THC in seasame oil and
encapsulated in soft gelatin capsules] may lead to moderate or low physical
dependence or high psychological dependence.

Based on these findings, the Acting Deputy Administrator of the DEA concludes
that dronabinol [Marinol[R];      (-)-*[9]-(trans)-THC in sesame oil and
encapsulated in soft gelatin capsules] *59753  should be removed from Schedule II
and placed into Schedule III of the CSA.

Special Provisions Regarding Import/Export Authorization

Dronabinol is internationally controlled in Schedule II of the 1971 Convention on
Psychotropic Substances, to which the United States is a party. Under the special
obligations of the Convention, Article 12 defines provisions relating to
international trade relative to Schedule II substances. Specifically, signatory
countries are required to issue import/export permits/authorizations to import or
export a Schedule II substance. Due to its international control status,
import/export permits for dronabinol still will be required despite the proposed
transfer of dronabinol to Schedule III of the CSA.

In accordance with 21 CFR 1312.13(b) "[t]he Administrator may require that such
non-narcotic controlled substances in Schedule III as he shall designate by
regulation in §1312.30 of this part be imported only pursuant to the issuance of
an import permit" (21 U.S.C. 952(b)(2)).  Similarly, the DEA could require export
permits for Schedule III non-narcotic substances (21 CFR 1312.23(b) and 21 U.S.C.
953(e)(2)).

Currently, there are no Schedule III non-narcotic substances for which the
Administrator requires an import/export permit. However, in accordance with 21
CFR 1312.30, this proposed designation of dronabinol as a Schedule III
non-narcotic substance requiring an import/export permit is necessary for the
United States to remain in compliance with the Convention.

Interested persons are invited to submit their comments, objections or requests
for a hearing, in writing, with regard to this proposal. Requests for a hearing
should state, with particularity, the issues concerning which the person desires
to be heard. All correspondence regarding this matter should be submitted to the
Acting Deputy Administrator, Drug Enforcement Administrator, Washington, DC 20537.
Attention: DEA Federal Register Representative/CCR. In the event that comments,
objections, or requests for a hearing raise one or more issues which the Acting
Deputy Administrator finds warrant a hearing, the Acting Deputy Administrator

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A.R.  4

63 FR 59751-01                                                          Page 5

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

shall order a public hearing by notice in the Federal Register, summarizing the
issues to be heard and setting the time for the hearing.

  In accordance with the provisions of the CSA (21 U.S.C. 811(a)), this action is a
formal rulemaking "on the record after opportunity for a hearing." such
proceedings are conducted pursuant to the provisions of 5 U.S.C. 556 and 557 and,
as such, are exempt from review by the Office of Management and Budget pursuant to
Executive Order (E.O.) 12866, section 3(d)(1).  The Acting Deputy Administrator,
in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed
this proposed rule and by approving it certifies that it will not have a
significant economic impact on a substantial number of small entities.  Dronabinol
products are prescription drugs used to treat nausea due to cancer chemotherapy
and AIDS wasting.  Handlers of dronabinol are likely to handle other controlled
substances used to treat cancer or AIDS, which are already subject to the
regulatory requirements of the CSA.  Further, placement of dronabinol in Schedule
III of the CSA will mean a significant decrease in the regulatory requirements for
persons handling dronabinol products.

  This rule will not result in the expenditure by State, local and tribal
governments, in the aggregate, or by the private sector, of $100,000,000 or more
in any one year, and it will not significantly or uniquely affect small
governments.  Therefore, no actions were deemed necessary under provisions of the
Unfunded Mandates Reform Act of 1995.

  This rule is not a major rule as defined by section 804 of the Small Business
Regulatory Enforcement Fairness Act of 1996.  This rule will not result in an
annual effect on the economy of $100,000,000 or more; a major increase in costs or
prices; or significant adverse effects on competition, employment, investment,
productivity, innovation, or on the ability of United States based companies to
compete with foreign based companies in domestic and export markets.

  This rule will not have substantial direct effects on the United States, on the
relationship between the national government and the United States, or on the
distribution of power and responsibilities among the various levels of government.
Therefore, in accordance with E.O. 12612, it is determined that this rule, if
finalized, will have sufficient federalism implications to warrant the
preparation of Federalism Assessment.

List of Subjects

*21 CFR Part 1308*

  Administrative practice and procedure, Drug traffic control, Narcotics,
Prescription drugs.

*21 CFR Part 1213*

  Administrative practice and procedure, Drug traffic control, Exports, Imports,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

63 FR 59751-01                                                    Page 6

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)


Narcotics, Reporting requirements.

 Under the authority vested in the Attorney General by section 201(a) of the CSA (
21 U.S.C. 811(a)), and delegated to the Administrator of the DEA by the Department
of Justice regulations (28 CFR 0.100) and redelegated to the Deputy Administrator
pursuant to 28 CFR 0.104, the Acting Deputy Administrator hereby proposes that 21
CFR parts 1308 and 1312 be amended as follows:

PART 1308-- [AMENDED]

 1.  The authority citation for 21 CFR part 1308 continues to read as follows:

 Authority: 21 U.S.C. 811, 812, 871(b) unless otherwise noted.

                           21 CFR § 1308.12

§1308.12   [Amended]

                           21 CFR § 1308.12

 2.  Section 1308.12 is proposed to be amended by removing paragraph (f)(1) and
redesignating the existing paragraph (f)(2) as (f)(1).

                           21 CFR § 1308.13

 3.  Section 1308.13 is proposed to be amended by adding a new paragraph  (g)(1)
to read as follows:

                           21 CFR § 1308.13

§1308.13   Schedule III.

* * * * *
 (g) Hallucinogenic substances.


(1) Dronabinol (synthetic) in sesame oil and encapsulated in a soft
  gelatin capsule in a U.S. Food and Drug Administration approved product  7369


 [Some other names for dronabinol: (6aR-trans)-6a,7,8,10a-tetrahydro-6,6,9-
trimethyl-3-pentyl-[6H-dibenzo[b,d]pyran-1-ol] or (-)-delta-9-(trans)-
tetrahydrocannabinol]

PART 1312-- [AMENDED]

                           21 CFR § 1312.30

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

63 FR 59751-01                                                    Page 7

63 FR 59751-01, 1998 WL 766555 (F.R.)

(Cite as: 63 FR 59751)

   1.  Section 1312.30 is proposed to be amended by adding a new paragraph (a) to
read as follows:

§1313.30 Schedule III, IV and V non-narcotic controlled substances requiring an
import and export permit.

* * * * *
   (a) Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin
capsule in a U.S. Food and Drug Administration approved product.

* * * * *
   Dated: October 29, 1998.

Donnie R. Marshall,

Acting Deputy Administrator, Drug Enforcement Administration.

[FR Doc. 98-29571 Filed 11-4-98; 8:45 am]

BILLING CODE 4410-09-M

   63 FR 59751-01, 1998 WL 766555 (F.R.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

64 FR 35928-01                                                    Page 1

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

RULES and REGULATIONS

DEPARTMENT OF JUSTICE

Drug Enforcement Administration

21 CFR Parts 1308, 1312

[DEA-180F]

Schedules of Controlled Substances: Rescheduling of the Food and Drug
Administration Approved Product Containing Synthetic Dronabinol [(-)-D $^9$-
(trans)-Tetrahydrocannabinol] in Sesame Oil and Encapsulated in Soft Gelatin
Capsules From Schedule II to Schedule III

Friday, July 2, 1999

*35928  AGENCY: Drug Enforcement Administration, Department of Justice.

ACTION: Final rule.

SUMMARY: This is a final rule of the Deputy Administrator of the Drug Enforcement
Administration (DEA) transferring a drug between schedules of the Controlled
Substances Act (CSA) pursuant to 21 U.S.C. 811. With the issuance of this final
rule, the Deputy Administrator transfers from schedule II to schedule III of the
CSA the drug containing synthetic dronabinol [(-)-D $^9$
-(trans)-tetrahydrocannabinol] in sesame oil and encapsulated in soft gelatin
capsules in a product approved by the Food and Drug Administration (FDA). This
rule also designates this drug as a schedule III non-narcotic substance requiring
an import/export permit. As a result of this rule, the regulatory controls and
criminal sanctions of schedule III will be applicable to the manufacture,
distribution, importation and exportation of this drug.

EFFECTIVE DATE: July 2, 1999.

FOR FURTHER INFORMATION CONTACT: Frank Sapienza, Chief, Drug and Chemical
Evaluation Section, Drug Enforcement Administration, Washington, DC 20537, 202-
307-7183.

SUPPLEMENTARY INFORMATION:

Background

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                    Page 2

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

Dronabinol is the United States Adopted Name (USAN) for the (-)-isomer of D[9]
-(trans)-tetrahydrocannabinol [(-)-D[9]-(trans)-THC], which is believed to be the
major psychoactive component of Cannibas sativa L. (marijuana).  On May 31, 1985,
FDA approved for marketing the product Marinol--which contains synthetic
dronabinol in sesame oil and encapsulated in soft gelatin capsules-- for the
treatment of nausea and vomiting associated with cancer chemotherapy. Following
this FDA approval, DEA issued a final rule on May 13, 1986, transferring
FDA-approved products of the same formulation as Marinol from schedule I to
schedule II of the CSA in accordance with 21 U.S.C. 811(a). (For simplicity within
this document, the term "Marinol" will be used hereafter to refer to Marinol and
any other products, which may by approved by FDA in the future, that have the same
formulation as Marinol.) The 1986 rescheduling of Marinol was based on a medical
and scientific evaluation and scheduling recommendation from the Assistant
Secretary for Health in accordance with 21 U.S.C. 811(b).  The transfer of Marinol
to schedule II did not affect the CSA classification of pure dronabinol, which--as
a tetrahydrocannabinol with no currently accepted medical use in treatment in the
United States--remains a schedule I controlled substance.  On December 22, 1992,
FDA expanded Marinol's indications to include the treatment of anorexia associated
with weight loss in patients with AIDS.

The Petition To Reschedule Marinol[R]

  On February 3, 1995, UNIMED Pharmaceuticals, Inc. petitioned the Administrator of
DEA to transfer Marinol[R] from schedule II to schedule III.  In response to this
petition, and in view of supplemental information that UNIMED provided to DEA on
December 11, 1996, DEA had to determine whether this proposed rescheduling of
Marinol[R] would comport with United States obligations under the Convention on
Psychotropic Substances, 1971 (Psychotropic Convention).  See 21 U.S.C. 811(d).
Under the Psychotropic Convention, dronabinol and all dronabinol-containing
products, such as Marinol[R], are listed in schedule II. As a result, the United
States is obligated under the Psychotropic Convention to impose certain
restrictions on the export and import of Marinol[R].  DEA has concluded that, in
order for the United States to continue to meet its obligations under the
Psychotropic Convention, DEA will continue to require import and export permits
for international transactions involving Marinol[R], even though Marinol[R] will
be transferred to schedule III of the CSA.  (As set forth below, to accomplish
this, DEA is hereby amending 21 CFR 1312.30 to require import and export permits
for international transactions involving Marinol[R].)

  After determining that Marinol[R] could be transferred to schedule III while
maintaining the controls required by the Psychotropic Convention, and after
gathering the necessary data, on August 7, 1997, DEA requested from the Acting
Assistant Secretary for Health, Department of Health and Human Services (DHHS), a
scientific and medical evaluation, and recommendation, as to whether Marinol[R]
should be rescheduled, in accordance with 21 U.S.C. 811(b).

  On September 11, 1998, the Acting Assistant Secretary for Health sent to DEA a
letter recommending that Marinol[R] be transferred from schedule II to schedule

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                    Page 3

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

      ....        .                      ._

III of the CSA. Enclosed with the September 11, 1998, letter was a document
prepared by the FDA entitled "Basis for the Recommendation for Rescheduling Marinol
[R] Capsules from schedule II to schedule III of the Controlled Substances Act
(CSA)." In this document, the FDA defines the Marinol[R] product as "an
FDA-approved drug product containing synthetically produced dronabinol dissolved
in sesame oil and encapsulated in soft *35929 gelatin capsules (2.5 mg, 5 mg, and
10 mg per dosage unit)." The document contained a review of the factors which the
CSA requires the Secretary to consider, which are set forth in 21 U.S.C. 811(c).

The Proposed Rule

  On November 7, 1998, the then-Acting Deputy Administrator of DEA published a
notice of proposed rule making in the Federal Register (63 FR 59751), proposing to
transfer Marinol[R] from schedule II to schedule III of the CSA. The proposed
rule was based on the DHHS scientific and medical evaluation and scheduling
recommendation and DEA's independent evaluation. Also under the proposed rule, 21
CFR 1312.30 would be amended to include Marinol[R] as a schedule III non-narcotic
controlled substance specifically designated as requiring import and export
permits pursuant to 21 U.S.C. 952(b)(2) and 953(e)(3). As discussed above, this
proposed amendment to 21 CFR 1312.30 is necessary for the United States to
continue to meet its obligations under the Psychotropic Convention. The notice of
proposed rule provided an opportunity for all interested persons to submit their
comments, objections, or requests for hearing in writing to DEA on or before
December 7, 1998.

Comments From the Public

  DEA received comments regarding the proposed rule from ten persons. Nine of the
commenters supported the proposed rule. One commenter objected to the proposed
rule and requested a hearing thereon. The comments are briefly summarized below.

  The nine commenters who supported the proposed rule included organizations,
physicians, and one individual. Eight of the nine commenters who supported the
proposed rule expressed the opinion that Marinol[R] is a safe and effective
alternative to smoking marijuana for treatment of nausea and loss of appetite and
has low abuse potential.

  One commenter who supported the proposed rule expressed the view that the
rescheduling of Marinol[R] should not serve as a substitute for making marijuana
legally available for medical use. This commenter stated that it supported the
use of marijuana for medical purposes and, therefore, wished to emphasize that the
proposed rule affected the CSA status of Marinol[R]--not that of marijuana, which
remains a schedule I controlled substance.

  The one commenter who objected to the proposed rule, and requested a hearing
thereon, asserted that Marinol[R] should not be transferred to schedule III unless
and until marijuana and all other THC-containing drugs are simultaneously and
likewise rescheduled. This commenter asserted that Marinol[R] has the same

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

potential for abuse as marijuana and all other THC-containing drugs.  This
commenter agreed with the proposed rule that Marinol[R]'s potential for abuse is
less than the "high potential for abuse" commensurate with schedules I and II of
the CSA.  Accordingly, this commenter agreed that Marinol[R] should be transferred
to a less restrictive schedule than schedule II. However, this commenter disagreed
with what would be the resultant status of Marinol[R] vis-al-vis marijuana and THC
if the NPRM becomes final: Marinol[R] would be in schedule III while marijuana and
THC would remain in schedule I. This commenter asserted that the CSA prohibited
transferring Marinol[R] to a less restrictive schedule unless marijuana and all
THC-containing drugs are simultaneously transferred to the same schedule. DEA has
determined that this commenter's objections are based on a misinterpretation of
the CSA, which can be addressed, as a matter of law, without conducting a
fact-finding hearing. Accordingly, as this commenter presented no material issues
of fact, DEA denied this commenter's request for a hearing.

Findings

  Relying on the scientific and medical evaluation and scheduling recommendations
of the Assistant Secretary for Health, and based on DEA's independent review
thereof, the Deputy Administrator of the DEA, pursuant to 21 U.S.C. 811(a) and
811(b), finds that:

  (1) Based on information now available, Marinol[R] has a potential for abuse less
than the drugs or other substances in schedules I and II.

  (2) Marinol[R] is a FDA-approved drug product and has a currently accepted
medical use in treatment in the United States; and

  (3) Abuse of Marinol[R] may lead to moderate of low physical dependence or high
psychological dependence.

Rescheduling Action

  Based on the above findings, the Deputy Administrator of the DEA concludes that
Marinol[R] should be transferred from schedule II to schedule III. Schedule III
regulations will, among other things, allow five prescription refills in six
months and lessen record keeping requirements and distribution restrictions.  The
schedule III control of Marinol[R] will become effective July 2, 1999, except that
certain regulatory provisions governing registrants who handle Marinol will take
effect as indicated below.  In the event that the regulations impose special
hardships on the registrants, the DEA will entertain any justified request for an
extension of time to comply with the schedule III regulations regarding Marinol[R]
. The applicable regulations are as follows.

  1. Registration. Any person who manufactures, distributes, dispenses, imports or
exports Marinol[R] or who engages in research or conducts instructional activities
with Marinol[R], or who proposes to engage in such activities, must be registered
to conduct such activities in accordance with part 1301 of Title 21 of the Code of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                                    Page 5

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)


Federal Regulations.

2. Security. Marinol[R] must be manufactured, distributed and stored in accordance with §§1301.71, 1301.72(b), (c), and (d), 1301.73, 1301.74, 1301.75(b) and (c) and 1301.76 of Title 21 of the Code of Federal Regulations.

3. Labeling and Packaging. All commercial containers of Marinol[R], which are packaged on or after January 3, 2000 must have the appropriate Schedule III labeling as required by §§1302.03-1302.07 of Title 21 of the Code of Federal Regulations. Commercial containers of Marinol[R] packaged before January 3, 2000. After April 3, 2000, all commercial containers of Marinol must bear the CIII labels as specified in §§1302.03-1302.07 of Title 21 of the Code of Federal Regulations.

4. Inventory. Registrants possessing Marinol[R] are required to take inventories pursuant to §§1304.03, 1304.04 and 1304.11 of Title 21 of the Code of Federal Regulations.

5. Records. All registrants must keep records pursuant to §§1304.03, 1304.04 and 1304.21-1304.23 of Title 21 of the Code of Federal Regulations.

6. Prescriptions. All prescriptions for Marinol[R] are to be issued pursuant to § §1306.03-1306.06 and 1306.21-1306.26 of Title 21 of the Code of Federal Regulations . All prescriptions for Marinol[R] issued on or after July 2, 1999, if authorized for refilling, shall as of that date be limited to five refills and shall not be refilled after January 2, 2000.

7. Importation and Exportation. Due to its international control status, import and export permits for Marinol[R] will be required in accordance with 21 CFR 1312.30. All importation and exportation of Marinol[R] shall be in compliance with part 1312 of Title 21 of the CFR.

8. Criminal Liability. Any activity with Marinol[R] not authorized by, or in violation of, the CSA or the Controlled *35930 Substances Import and Export Act shall continue to be unlawful.

In accordance with the provisions of the CSA (21 U.S.C. 811(a)), this action is a formal rule making "on the record after opportunity for a hearing." Such proceedings are conducted pursuant to the provisions of 5 U.S.C. 556 and 557 and, as such, are exempt from review by the Office of Management and Budget pursuant to Executive Order (E.O.) 12866, section 3(d)(1). The Deputy Administrator, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this final rule and by approving it certifies that it will not have a significant economic impact on a substantial number of small entities. Marinol[R] is a prescription drug used to treat nausea due to cancer chemotherapy and AIDS wasting. Handlers of Marinol[R] are likely to handle other controlled substances used to treat cancer or AIDS which are already subject to the regulatory requirements of the CSA. Further, placement of Marinol[R] in schedule III of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                                      Page 6

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

CSA will mean a significant decrease in the regulatory requirements for persons handling Marinol[R].

   This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments.  Therefore, no actions were deemed necessary under provisions of the Unfunded Mandates Reform Act of 1995.

   This rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Fairness Act of 1996.  This rule will not result in an annual effect on the economy of $100,000,000 or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

   This rule will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with E.O. 12612, it is determined that this rule, if finalized, will not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

*List of Subjects*

*21 CFR Part 1308*

   Administrative practice and procedure, Drug traffic control, Narcotics, Prescription drugs.

*21 CFR Part 1312*

   Administrative practice and procedure, Drug traffic control, Exports, Imports, Narcotics, Reporting requirements.

   Under the authority vested in the Attorney General by section 201(a) of the CSA ( 21 U.S.C. 811(a)), and delegated to the Administrator of the DEA by the Department of Justice regulations (28 CFR 0.100) and redelegated to the Deputy Administrator pursuant to 28 CFR 0.104, the Deputy Administrator hereby amends 21 CFR parts 1308 and 1312 as follows:

PART 1308-- [AMENDED]

   1.  The authority citation for 21 CFR part 1308 continues to read as follows:

Authority: 21 U.S.C. 811, 812, 871(b) unless otherwise noted.

21 CFR § 1308.12

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                    Page 7

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)


§1308.12 [Amended]

                    21 CFR § 1308.12

  2.  Section 1308.12 is amended by removing paragraph (f)(1) and redesignating the
existing paragraph (f)(2) as (f)(1).

                    21 CFR § 1308.13

  3.  Section 1308.13 is amended by adding a new paragraph (g) to read as follows:

                    21 CFR § 1308.13

§1308.13 Schedule III.

* * * * *
  (g) Hallucinogenic substances.

  (1) Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin
capsule in a U.S. Food and Drug Administration approved product--7369.

[Some other names for dronabinol: (6aR-trans)-6a,7,8,10a-tetrahydro-6,6,9-
trimethyl-3-pentyl-6H-dibenzo [b,d]pyran-1-ol) or (-)-delta-9-(trans)-
tetrahydrocannabinol]

  (2) [Reserved]

PART 1312--[AMENDED]

  1.  The authority citation for part 1312 continues to read as follows:

  Authority: 21 U.S.C. 952, 953, 954, 957, 958.

                    21 CFR § 1312.30

  2.  Section 1312.30 is amended by adding a new paragraph (a) and reserving
paragraph (b) to read as follows:

                    21 CFR § 1312.30

§1312.30 Schedule III, IV and V non-narcotic controlled substances requiring an
import and export permit.

* * * * *
  (a) Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin
capsule in a U.S. Food and Drug Administration approved product.

              © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

64 FR 35928-01                                                          Page 8

64 FR 35928-01, 1999 WL 445863 (F.R.)

(Cite as: 64 FR 35928)

  (b) [Reserved]

 Dated: June 28, 1999.

Donnie R. Marshall,

Deputy Administrator, Drug Enforcement Administration.

 [FR Doc. 99-16833 Filed 7-1-99; 8:45 am]

BILLING CODE 4410-09-M

 64 FR 35928-01, 1999 WL 445863 (F.R.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Drug Enforcement Administration, Justice**                    **Pt. 1301**

used for the compaction or molding of powdered or granular solids, or semi-solid material, to produce coherent solid tablets.

(31) The term ordinary over-the-counter pseudoephedrine or phenyl-propanolamine product means any product containing pseudoephedrine or phenylpropanolamine that is—

(i) Regulated pursuant to the Act; and

(ii)(A) Except for liquids, sold in package sizes of not more than 3.0 grams of pseudoephedrine base or 3.0 grams of phenylpropanolamine base, and that is packaged in blister packs, each blister containing not more than two dosage units, or where the use of blister packs is technically infeasible, that is packaged in unit dose packets or pouches, and

(B) For liquids, sold in package sizes of not more than 3.0 grams of pseudoephedrine base or 3.0 grams of phenylpropanolamine base.

(32) The term combination ephedrine product means a drug product containing ephedrine or its salts, optical isomers, or salts of optical isomers, and therapeutically significant quantities of another active medicinal ingredient.

(33) The term drug product means an active ingredient in dosage form that has been approved or otherwise may be lawfully marketed under the Food, Drug, and Cosmetic Act for distribution in the United States.

(34) The term valid prescription means a prescription that is issued for a legitimate medical purpose by an individual practitioner licensed by law to administer and prescribe the drugs concerned and acting in the usual course of the practitioner's professional practice.

[62 FR 13941, Mar. 24, 1997; 62 FR 15332, Apr. 1, 1997; 67 FR 14859, Mar. 28, 2002, as amended at 68 FR 23208, May 1, 2003; 68 FR 57803, Oct. 7, 2003]

## PART 1301—REGISTRATION OF MANUFACTURERS, DISTRIBUTORS, AND DISPENSERS OF CONTROLLED SUBSTANCES

### GENERAL INFORMATION

Sec.
1301.01  Scope of this part 1301.

1301.02  Definitions.
1301.03  Information; special instructions.

REGISTRATION

1301.11  Persons required to register.
1301.12  Separate registrations for separate locations.
1301.13  Application for registration; time for application; expiration date; registration for independent activities; application forms, fees, contents and signature; coincident activities.
1301.14  Filing of application; acceptance for filing; defective applications.
1301.15  Additional information.
1301.16  Amendments to and withdrawal of applications.
1301.17  Special procedures for certain applications.
1301.18  Research protocols.

EXCEPTIONS TO REGISTRATION AND FEES

1301.21  Exception from fees.
1301.22  Exemption of agents and employees; affiliated practitioners.
1301.23  Exemption of certain military and other personnel.
1301.24  Exemption of law enforcement officials.
1301.25  Registration regarding ocean vessels, aircraft, and other entities.
1301.26  Exemptions from import or export requirements for personal medical use.

ACTION ON APPLICATION FOR REGISTRATION: REVOCATION OR SUSPENSION OF REGISTRATION

1301.31  Administrative review generally.
1301.32  Action on applications for research in Schedule I substances.
1301.33  Application for bulk manufacture of Schedule I and II substances.
1301.34  Application for importation of Schedule I and II substances.
1301.35  Certificate of registration; denial of registration.
1301.36  Suspension or revocation of registration; suspension of registration pending final order; extension of registration pending final order.
1301.37  Order to show cause.

HEARINGS

1301.41  Hearings generally.
1301.42  Purpose of hearing.
1301.43  Request for hearing or appearance; waiver.
1301.44  Burden of proof.
1301.45  Time and place of hearing.
1301.46  Final order.

MODIFICATION, TRANSFER, AND TERMINATION OF REGISTRATION

1301.51  Modification in registration.

13

§ 1301.01

1301.52  Termination of registration; transfer of registration; distribution upon discontinuance of business.

SECURITY REQUIREMENTS

1301.71  Security requirements generally.
1301.72  Physical security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs; storage areas.
1301.73  Physical security controls for non-practitioners; compounders for narcotic treatment programs; manufacturing and compounding areas.
1301.74  Other security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs.
1301.75  Physical security controls for practitioners.
1301.76  Other security controls for practitioners.
1301.77  Security controls for freight forwarding facilities.

EMPLOYEE SCREENING—NON-PRACTITIONERS

1301.90  Employee screening procedures.
1301.91  Employee responsibility to report drug diversion.
1301.92  Illicit activities by employees.
1301.93  Sources of information for employee checks.

AUTHORITY: 21 U.S.C. 821, 822, 823, 824, 871(b), 875, 877, 951, 952, 953, 956, 957.

SOURCE: 36 FR 7778, Apr. 24, 1971, unless otherwise noted. Redesignated at 38 FR 26609, Sept. 24, 1973.

GENERAL INFORMATION

§ 1301.01  Scope of this part 1301.

Procedures governing the registration of manufacturers, distributors, dispensers, importers, and exporters of controlled substances pursuant to sections 301–304 and 1007–1008 of the Act (21 U.S.C. 821–824 and 957–958) are set forth generally by those sections and specifically by the sections of this part.

[62 FR 13945, Mar. 24, 1997]

§ 1301.02  Definitions.

Any term used in this part shall have the definition set forth in section 102 of the Act (21 U.S.C. 802) or part 1300 of this chapter.

[62 FR 13945, Mar. 24, 1997]

§ 1301.03  Information; special instructions.

Information regarding procedures under these rules and instructions supplementing these rules will be furnished upon request by writing to the Registration Unit, Drug Enforcement Administration, Department of Justice, Post Office Box 28083, Central Station, Washington, DC 20005.

[36 FR 7778, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 51 FR 5319, Feb. 13, 1986]

REGISTRATION

§ 1301.11  Persons required to register.

(a) Every person who manufactures, distributes, dispenses, imports, or exports any controlled substance or who proposes to engage in the manufacture, distribution, dispensing, importation or exportation of any controlled substance shall obtain a registration unless exempted by law or pursuant to §§ 1301.22–1301.26. Only persons actually engaged in such activities are required to obtain a registration; related or affiliated persons who are not engaged in such activities are not required to be registered. (For example, a stockholder or parent corporation of a corporation manufacturing controlled substances is not required to obtain a registration.)

(b) [Reserved]

[62 FR 13945, Mar. 24, 1997]

§ 1301.12  Separate registrations for separate locations.

(a) A separate registration is required for each principal place of business or professional practice at one general physical location where controlled substances are manufactured, distributed, imported, exported, or dispensed by a person.

(b) The following locations shall be deemed not to be places where controlled substances are manufactured, distributed, or dispensed:

(1) A warehouse where controlled substances are stored by or on behalf of a registered person, unless such substances are distributed directly from such warehouse to registered locations other than the registered location from which the substances were delivered or to persons not required to register by

14



**Drug Enforcement Administration, Justice**

§1301.13

virtue of subsection 302(c)(2) or subsection 1007(b)(1)(B) of the Act (21 U.S.C. 822(c)(2) or 957(b)(1)(B));

(2) An office used by agents of a registrant where sales of controlled substances are solicited, made, or supervised but which neither contains such substances (other than substances for display purposes or lawful distribution as samples only) nor serves as a distribution point for filling sales orders; and

(3) An office used by a practitioner (who is registered at another location) where controlled substances are prescribed but neither administered nor otherwise dispensed as a regular part of the professional practice of the practitioner at such office, and where no supplies of controlled substances are maintained.

(4) A freight forwarding facility, as defined in §1300.01 of this part, provided that the distributing registrant operating the facility has submitted written notice of intent to operate the facility by registered mail, return receipt requested (or other suitable means of documented delivery) and such notice has been approved. The notice shall be submitted to the Special Agent in Charge of the Administration's offices in both the area in which the facility is located and each area in which the distributing registrant maintains a registered location that will transfer controlled substances through the facility. The notice shall detail the registered locations that will utilize the facility, the location of the facility, the hours of operation, the individual(s) responsible for the controlled substances, the security and record-keeping procedures that will be employed, and whether controlled substances returns will be processed through the facility. The notice must also detail what state licensing requirements apply to the facility and the registrant's actions to comply with any such requirements. The Special Agent in Charge of the DEA Office in the area where the freight forwarding facility will be operated will provide written notice of approval or disapproval to the person within thirty days after confirmed receipt of the notice. Registrants that are currently operating freight forwarding facilities

under a memorandum of understanding with the Administration must provide notice as required by this section no later than September 18, 2000 and receive written approval from the Special Agent in Charge of the DEA Office in the area in which the freight forwarding facility is operated in order to continue operation of the facility.

[62 FR. 13945, Mar. 24, 1997, as amended at 65 FR. 44678, July 19, 2000; 65 FR. 45829, July 25, 2000]

§1301.13  Application for registration; time for application; expiration date; registration for independent activities; application forms, fees, contents and signature; coincident activities.

(a) Any person who is required to be registered and who is not so registered may apply for registration at any time. No person required to be registered shall engage in any activity for which registration is required until the application for registration is granted and a Certificate of Registration is issued by the Administrator to such person.

(b) Any person who is registered may apply to be reregistered not more than 60 days before the expiration date of his/her registration, except that a bulk manufacturer of Schedule I or II controlled substances or an importer of Schedule I or II controlled substances may apply to be reregistered no more than 120 days before the expiration date of their registration.

(c) At the time a manufacturer, distributor, reverse distributor, researcher, analytical lab, importer, exporter or narcotic treatment program is first registered, that business activity shall be assigned to one of twelve groups, which shall correspond to the months of the year. The expiration date of the registrations of all registrants within any group will be the last date of the month designated for that group. In assigning any of these business activities to a group, the Administration may select a group the expiration date of which is less than one year from the date such business activity was registered. If the business activity is assigned to a group which has an expiration date less than three months from the date of which the

15

business activity is registered, the registration shall not expire until one year from that expiration date; in all other cases, the registration shall expire on the expiration date following the date on which the business activity is registered.

(d) At the time a retail pharmacy, hospital/clinic, practitioner or teaching institution is first registered, that business activity shall be assigned to one of twelve groups, which shall correspond to the months of the year. The expiration date of the registrations of all registrants within any group will be the last day of the month designated for that group. In assigning any of the above business activities to a group, the Administration may select a group the expiration date of which is not less than 28 months nor more than 39 months from the date such business activity was registered. After the initial registration period, the registration shall expire 36 months from the initial expiration date.

(e) Any person who is required to be registered and who is not so registered, shall make application for registration for one of the following groups of controlled substances activities, which are deemed to be independent of each other. Application for each registration shall be made on the indicated form, and shall be accompanied by the indi-

cated fee. Fee payments shall be made in the form of a personal, certified, or cashier's check or money order made payable to the "Drug Enforcement Administration". The application fees are not refundable. Any person, when registered to engage in the activities described in each subparagraph in this paragraph, shall be authorized to engage in the coincident activities described without obtaining a registration to engage in such coincident activities, provided that, unless specifically exempted, he/she complies with all requirements and duties prescribed by law for persons registered to engage in such coincident activities. Any person who engages in more than one group of independent activities shall obtain a separate registration for each group of activities, except as provided in this paragraph under coincident activities. A single registration to engage in any group of independent activities listed below may include one or more controlled substances listed in the schedules authorized in that group of independent activities. A person registered to conduct research with controlled substances listed in Schedule I may conduct research with any substances listed in Schedule I for which he/she has filed and had approved a research protocol.

(1)

| Business activity | Controlled substances | DEA application forms | Application fee ($) | Registration period (years) | Coincident activities allowed |
|---|---|---|---|---|---|
| (i) Manufacturing | Schedules I–V | New—225 Renewal—225a | 1,625 1,625 | 1 | Schedules I–V: May distribute that substance or class for which registration was issued; may not distribute or dispose any substance or class for which not registered. Schedules II–V: except a person registered to dispose of any controlled substance may conduct chemical analysis and preclinical research (including quality control analysis) with substances listed in those schedules for which authorization as a mfg. Was issued. |
| (ii) Distributing | Schedules I–V | New—225 Renewal—225a | 813 813 | 1 | |
| (iii) Reverse distributing | Schedules I–V | New—225 Renewal 225a | 813 813 | 1 | |

16.

Drug Enforcement Administration, Justice

§ 1301.13

| Business activity | Controlled substances | DEA application forms | Application fee ($) | Registration period (years) | Coincident activities allowed |
|---|---|---|---|---|---|
| (iv) Dispensing or instructing (includes Practitioner, Hospital/Clinic, Retail Pharmacy, Central Fill Pharmacy, Teaching Institution) | Schedules II–V | New—224 Renewal—224a | 390 390 | 3 | May conduct research and instructional activities with those substances for which registration was granted, except that a mid-level practitioner may conduct such research only to the extent expressly authorized under state statute. A pharmacist may manufacture an aqueous or oleaginous solution or solid dosage form containing a narcotic controlled substance in Schedule II–V in a proportion not exceeding 20% of the complete solution, compound or mixture. A retail pharmacy may perform central fill pharmacy activities. |
| (v) Research | Schedule I | New—225 Renewal—225a | 130 130 | 1 | A researcher may manufacture or import the basic class of substance or substances for which registration was issued, provided that such manufacture or import is set forth in the protocol required in Section 1301.18 and to distribute such class to persons registered or authorized to conduct research with such class of substance or registered or authorized to conduct chemical analysis with controlled substances. |
| (vi) Research | Schedules II–V | New—225 Renewal—225a | 130 130 | 1 | May conduct chemical analysis with controlled substances in those schedules for which registration was issued; manufacture such substances if and to the extent that such manufacture is set forth in a statement filed with the application for registration or reregistration and provided that the manufacture is not for the purposes of dosage form development; import such substances for research purposes; distribute such substances to persons registered or authorized to conduct chemical analysis, instructional activities or research with such substances, and to persons exempted from registration pursuant to Section 1301.24; and conduct instructional activities with controlled substances. |
| (vii) Narcotic Treatment Program (including compounder) | Narcotic Drugs in Schedules II–V | New—363 Renewal 363a | 130 130 | 1 | |
| (viii) Importing | Schedules I–V | New—225 Renewal—225a | 813 813 | 1 | May distribute that substance or class for which registration was issued; may not distribute any substance or class for which not registered. |
| (ix) Exporting | Schedules I–V | New—225 Renewal—225a | 813 813 | 1 | |

17



| Business activity | Controlled substances | DEA application forms | Application fee ($) | Registration period (years) | Coincident activities allowed |
|---|---|---|---|---|---|
| (x) Chemical Analysis | Schedules I–V | New—225<br>Renewal—225a | 130<br>130 | 1 | May manufacture and import controlled substances for analytical or instructional activities; may distribute such substances to persons registered or authorized to conduct chemical analysis, instructional activities, or research with such substances and to persons exempted from registration pursuant to section 1301.24; may export such substances to persons in other countries performing chemical analysis or enforcing laws related to controlled substances or drugs in those countries; and may conduct instructional activities with controlled substances. |

(2) DEA Forms 224, 225, and 363 may be obtained at any area office of the Administration or by writing to the Registration Unit, Drug Enforcement Administration, Department of Justice, Post Office Box 28083, Central Station, Washington, DC 20005.

(3) DEA Forms 224a, 225a, and 363a will be mailed, as applicable, to each registered person approximately 60 days before the expiration date of his/her registration; if any registered person does not receive such forms within 45 days before the expiration date of his/her registration, he/she must promptly give notice of such fact and request such forms by writing to the Registration Unit of the Administration at the foregoing address.

(f) Each application for registration to handle any basic class of controlled substance listed in Schedule I (except to conduct chemical analysis with such classes), and each application for registration to manufacture a basic class of controlled substance listed in Schedule II shall include the Administration Controlled Substances Code Number, as set forth in part 1308 of this chapter, for each basic class to be covered by such registration.

(g) Each application for registration to import or export controlled substances shall include the Administration Controlled Substances Code Number, as set forth in part 1308 of this chapter, for each controlled substance whose importation or exportation is to be authorized by such registration.

Registration as an importer or exporter shall not entitle a registrant to import or export any controlled substance not specified in such registration.

(h) Each application for registration to conduct research with any basic class of controlled substance listed in Schedule II shall include the Administration Controlled Substances Code Number, as set forth in part 1308 of this chapter, for each such basic class to be manufactured or imported as a coincident activity of that registration. A statement listing the quantity of each such basic class of controlled substance to be imported or manufactured during the registration period for which application is being made shall be included with each such application. For purposes of this paragraph only, manufacturing is defined as the production of a controlled substance by synthesis, extraction or by agricultural/horticultural means.

(i) Each application shall include all information called for in the form, unless the item is not applicable, in which case this fact shall be indicated.

(j) Each application, attachment, or other document filed as part of an application, shall be signed by the applicant, if an individual; by a partner of the applicant, if a partnership; or by an officer of the applicant, if a corporation, corporate division, association, trust or other entity. An applicant may authorize one or more individuals, who would not otherwise be authorized to

18

Drug Enforcement Administration, Justice    §1301.17

do so, to sign applications for the applicant by filing with the Registration Unit of the Administration a power of attorney for each such individual. The power of attorney shall be signed by a person who is authorized to sign applications under this paragraph and shall contain the signature of the individual being authorized to sign applications. The power of attorney shall be valid until revoked by the applicant.

[62 FR 13948, Mar. 24, 1997, as amended at 68 FR 37409, June 24, 2003; 68 FR 41223, July 11, 2003; 68 FR 55598, Oct. 10, 2003]

§1301.14  Filing of application; acceptance for filing; defective applications.

(a) All applications for registration shall be submitted for filing to the Registration Unit, Drug Enforcement Administration, Department of Justice, Post Office Box 28083, Central Station, Washington, DC 20005. The appropriate registration fee and any required attachments must accompany the application.

(b) Any person required to obtain more than one registration may submit all applications in one package. Each application must be complete and should not refer to any accompanying application for required information.

(c) Applications submitted for filing are dated upon receipt. If found to be complete, the application will be accepted for filing. Applications failing to comply with the requirements of this part will not generally be accepted for filing. In the case of minor defects as to completeness, the Administrator may accept the application for filing with a request to the applicant for additional information. A defective application will be returned to the applicant within 10 days following its receipt with a statement of the reason for not accepting the application for filing. A defective application may be corrected and resubmitted for filing at any time; the Administrator shall accept for filing any application upon resubmission by the applicant, whether complete or not.

(d) Accepting an application for filing does not preclude any subsequent request for additional information pursuant to §1301.15 and has no bearing on

whether the application will be granted.

[62 FR 13948, Mar. 24, 1997]

§1301.15  Additional information.

The Administrator may require an applicant to submit such documents or written statements of fact relevant to the application as he/she deems necessary to determine whether the application should be granted. The failure of the applicant to provide such documents or statements within a reasonable time after being requested to do so shall be deemed to be a waiver by the applicant of an opportunity to present such documents or facts for consideration by the Administrator in granting or denying the application.

[62 FR 13948, Mar. 24, 1997]

§1301.16  Amendments to and withdrawal of applications.

(a) An application may be amended or withdrawn without permission of the Administrator at any time before the date on which the applicant receives an order to show cause pursuant to §1301.37. An application may be amended or withdrawn with permission of the Administrator at any time where good cause is shown by the applicant or where the amendment or withdrawal is in the public interest.

(b) After an application has been accepted for filing, the request by the applicant that it be returned or the failure of the applicant to respond to official correspondence regarding the application, when sent by registered or certified mail, return receipt requested, shall be deemed to be a withdrawal of the application.

[62 FR 13949, Mar. 24, 1997]

§1301.17  Special procedures for certain applications.

(a) If, at the time of application for registration of a new pharmacy, the pharmacy has been issued a license from the appropriate State licensing agency, the applicant may include with his/her application an affidavit as to the existence of the State license in the following form:

19

§ 1301.17

21 CFR Ch. II (4-1-05 Edition)

Affidavit for New Pharmacy

I, _____ the _____ (Title of officer, official, partner, or other position) of _____ (Corporation, partnership, or sole proprietor), doing business as _____ (Store name) at _____ (Number and Street), _____ (City) _____ (State) _____ (Zip Code), hereby certify that said store was issued a pharmacy permit No. _____ by the _____ (Board of Pharmacy or Licensing Agency) of the State of _____ (Date).

This statement is submitted in order to obtain a Drug Enforcement Administration registration number. I understand that if any information is false, the Administration may immediately suspend the registration for this store and commence proceedings to revoke under 21 U.S.C. 824(a) because of the danger to public health and safety. I further understand that any false information contained in this affidavit may subject me personally and the above-named corporation/partnership/business to prosecution under 21 U.S.C. 843, the penalties for conviction of which include imprisonment for up to 4 years, a fine of not more than $30,000 or both.

Signature (Person who signs Application for Registration)
State of _____
County of _____
Subscribed to and sworn before me this _____ day of _____, 19____.

Notary Public

(b) Whenever the ownership of a pharmacy is being transferred from one person to another, if the transferee owns at least one other pharmacy licensed in the same State as the one the ownership of which is being transferred, the transferee may apply for registration prior to the date of transfer. The Administrator may register the applicant and authorize him to obtain controlled substances at the time of transfer. Such registration shall not authorize the transferee to dispense controlled substances until the pharmacy has been issued a valid State license. The transferee shall include with his/her application the following affidavit:

Affidavit for Transfer of Pharmacy

I, _____ the _____ (Title of officer, official, partner or other position) of _____ (Corporation, partnership, or sole proprietor), doing business as

_____ (Store name) hereby certify:

(1) That said company was issued a pharmacy permit No. _____ by the _____ (Board of Pharmacy or Licensing Agency) of the State of _____ and a DEA Registration Number _____ for a pharmacy located at _____ (Number and Street), _____ (City) _____ (State) _____ (Zip Code); and

(2) That said company is acquiring the pharmacy business of _____ (Name of Seller) doing business as _____ with DEA Registration Number _____ on or about _____ (Date of Transfer) and that said company has applied (or will apply on _____ (Date) for a pharmacy permit from the board of pharmacy (or licensing agency) of the State of _____ to do business at _____ (Store name) at _____ (Number and Street) _____ (City) _____ (State) _____ (Zip Code).

This statement is submitted in order to obtain a Drug Enforcement Administration registration number.

I understand that if a DEA registration number is issued, the pharmacy may acquire controlled substances but may not dispense them until a pharmacy permit or license is issued by the State board of pharmacy or licensing agency.

I understand that if any information is false, the Administration may immediately suspend the registration for this store and commence proceedings to revoke under 21 U.S.C. 824(a) because of the danger to public health and safety. I further understand that any false information contained in this affidavit may subject me personally to prosecution under 21 U.S.C. 843, the penalties for conviction of which include imprisonment for up to 4 years, a fine of not more than $30,000 or both.

Signature (Person who signs Application for Registration)
State of _____
County of _____
Subscribed to and sworn before me this _____ day of _____, 19____.

Notary Public

(c) The Administrator shall follow the normal procedures for approving an application to verify the statements in the affidavit. If the statements prove to be false, the Administrator may revoke the registration on the basis of section 304(a)(1) of the Act (21 U.S.C. 824(a)(1)) and suspend the registration

20

**Drug Enforcement Administration, Justice**                                    **§1301.18**

immediately by pending revocation on the basis of section 304(d) of the Act (21 U.S.C. 824(d)). At the same time, the Administrator may seize and place under seal all controlled substances possessed by the applicant under section 304(f) of the Act (21 U.S.C. 824(f)). Intentional misuse of the affidavit procedure may subject the applicant to prosecution for fraud under section 403(a)(4) of the Act (21 U.S.C. 843(a)(4)), and obtaining controlled substances through registration by fraudulent means may subject the applicant to prosecution under section 403(a)(3) of the Act (21 U.S.C. 843(a)(3)). The penalties for conviction of either offense include imprisonment for up to 4 years, a fine not exceeding $30,000 or both.

[52 FR 13949, Mar. 24, 1997]

§1301.18  Research protocols.

(a) A protocol to conduct research with controlled substances listed in Schedule I shall be in the following form and contain the following information where applicable:

(1) Investigator:

(i) Name, address, and DEA registration number, if any.

(ii) Institutional affiliation.

(iii) Qualifications, including a curriculum vitae and an appropriate bibliography (list of publications).

(2) Research project:

(i) Title of project.

(ii) Statement of the purpose.

(iii) Name of the controlled substances or substances involved and the amount of each needed.

(iv) Description of the research to be conducted, including the number and species of research subjects, the dosage to be administered, the route and method of administration, and the duration of the project.

(v) Location where the research will be conducted.

(vi) Statement of the security provisions for storing the controlled substances (in accordance with §1301.75) and for dispensing the controlled substances in order to prevent diversion.

(vii) If the investigator desires to manufacture or import any controlled substance listed in paragraph (a)(2)(iii) of this section, a statement of the quantity to be manufactured or imported and the sources of the chemicals

to be used or the substance to be imported.

(3) Authority:

(i) Institutional approval.

(ii) Approval of a Human Research Committee for human studies.

(iii) Indication of an approved active Notice of Claimed Investigational Exemption for a New Drug (number).

(iv) Indication of an approved funded grant (number), if any.

(b) In the case of a clinical investigation with controlled substances listed in Schedule I, the applicant shall submit three copies of a Notice of Claimed Investigational Exemption for a New Drug (IND) together with a statement of the security provisions (as prescribed in paragraph (a)(2)(vi) of this section for a research protocol) to, and have such submission approved by, the Food and Drug Administration as required in 21 U.S.C. 355(i) and §130.3 of this title. Submission of this Notice and statement to the Food and Drug Administration shall be in lieu of a research protocol to the Administration as required in paragraph (a) of this section. The applicant, when applying for registration with the Administration, shall indicate that such notice has been submitted to the Food and Drug Administration by submitting to the Administration with his/her DEA Form 225 three copies of the following certificate:

I hereby certify that on _____ (Date), pursuant to 21 U.S.C. 355(i) and 21 CFR 130.3, I, _____ (Name and Address of IND Sponsor) submitted a Notice of Claimed Investigational Exemption for a New Drug (IND) to the Food and Drug Administration for:

_____
(Name of Investigational Drug).

_____
(Date)

_____
(Signature of Applicant).

(c) In the event that the registrant desires to increase the quantity of a controlled substance used for an approved research project, he/she shall submit a request to the Registration Unit, Drug Enforcement Administration, Post Office Box 28083, Central Station, Washington, DC 20005, by registered mail, return receipt requested. The request shall contain the following

21

information: DEA registration number; name of the controlled substance or substances and the quantity of each authorized in the approved protocol; and the additional quantity of each desired. Upon return of the receipt, the registrant shall be authorized to purchase the additional quantity of the controlled substance or substances specified in the request. The Administration shall review the letter and forward it to the Food and Drug Administration together with the Administration comments. The Food and Drug Administration shall approve or deny the request as an amendment to the protocol and so notify the registrant. Approval of the letter by the Food and Drug Administration shall authorize the registrant to use the additional quantity of the controlled substance in the research project.

(d) In the event the registrant desires to conduct research beyond the variations provided in the registrant's approved protocol (excluding any increase in the quantity of the controlled substance requested for his/her research project as outlined in paragraph (c) of this section), he/she shall submit three copies of a supplemental protocol in accordance with paragraph (a) of this section describing the new research and omitting information in the supplemental protocol which has been stated in the original protocol. Supplemental protocols shall be processed and approved or denied in the same manner as original research protocols.

[62 FR 13949, Mar. 24, 1997]

EXCEPTIONS TO REGISTRATION AND FEES

§ 1301.21   Exemption from fees.

(a) The Administrator shall exempt from payment of an application fee for registration or reregistration:

(1) Any hospital or other institution which is operated by an agency of the United States (including the U.S. Army, Navy, Marine Corps., Air Force, and Coast Guard), of any State, or any political subdivision or agency thereof.

(2) Any individual practitioner who is required to obtain an individual registration in order to carry out his or her duties as an official of an agency of the United States (including the U.S. Army, Navy, Marine Corps, Air Force,

and Coast Guard), of any State, or any political subdivision or agency thereof.

(b) In order to claim exemption from payment of a registration or reregistration application fee, the registrant shall have completed the certification on the appropriate application form, wherein the registrant's superior (if the registrant is an individual) or officer (if the registrant is an agency) certifies to the status and address of the registrant and to the authority of the registrant to acquire, possess, or handle controlled substances.

(c) Exemption from payment of a registration or reregistration application fee does not relieve the registrant of any other requirements or duties prescribed by law.

[62 FR 13960, Mar. 24, 1997]

§ 1301.22   Exemption of agents and employees; affiliated practitioners.

(a) The requirement of registration is waived for any agent or employee of a person who is registered to engage in any group of independent activities, if such agent or employee is acting in the usual course of his/her business or employment.

(b) An individual practitioner who is an agent or employee of another practitioner (other than a mid-level practitioner) registered to dispense controlled substances may, when acting in the normal course of business or employment, administer or dispense (other than by issuance of prescription) controlled substances if and to the extent that such individual practitioner is authorized or permitted to do so by the jurisdiction in which he or she practices, under the registration of the employer or principal practitioner in lieu of being registered him/herself.

(c) An individual practitioner who is an agent or employee of a hospital or other institution may, when acting in the normal course of business or employment, administer, dispense, or prescribe controlled substances under the registration of the hospital or other institution which is registered in lieu of being registered him/herself, provided that:

(1) Such dispensing, administering or prescribing is done in the usual course of his/her professional practice;

22



**Drug Enforcement Administration, Justice**    **§ 1301.24**

(2) Such individual practitioner is authorized or permitted to do so by the jurisdiction in which he/she is practicing;

(3) The hospital or other institution by which he/she is employed has verified that the individual practitioner is so permitted to dispense, administer, or prescribe drugs within the jurisdiction;

(4) Such individual practitioner is acting only within the scope of his/her employment in the hospital or institution;

(5) The hospital or other institution authorizes the individual practitioner to administer, dispense or prescribe under the hospital registration and designates a specific internal code number for each individual practitioner so authorized. The code number shall consist of numbers, letters, or a combination thereof and shall be a suffix to the institution's DEA registration number, preceded by a hyphen (e.g., APO123456-10 or APO123456-A12); and

(6) A current list of internal codes and the corresponding individual practitioners is kept by the hospital or other institution and is made available at all times to other registrants and law enforcement agencies upon request for the purpose of verifying the authority of the prescribing individual practitioner.

[62 FR 13950, Mar. 24, 1997]

**§ 1301.23 Exemption of certain military and other personnel.**

(a) The requirement of registration is waived for any official of the U.S. Army, Navy, Marine Corps, Air Force, Coast Guard, Public Health Service, or Bureau of Prisons who is authorized to prescribe, dispense, or administer, but not to procure or purchase, controlled substances in the course of his/her official duties. Such officials shall follow procedures set forth in part 1306 of this chapter regarding prescriptions, but shall state the branch of service or agency (e.g., "U.S. Army" or "Public Health Service") and the service identification number of the issuing official in lieu of the registration number required on prescription forms. The service identification number for a Public

Health Service employee is his/her Social Security identification number.

(b) The requirement of registration is waived for any official or agency of the U.S. Army, Navy, Marine Corps, Air Force, Coast Guard, or Public Health Service who or which is authorized to import or export controlled substances in the course of his/her official duties.

(c) If any official exempted by this section also engages as a private individual in any activity or group of activities for which registration is required, such official shall obtain a registration for such private activities.

[62 FR 13951, Mar. 24, 1997]

**§ 1301.24 Exemption of law enforcement officials.**

(a) The requirement of registration is waived for the following persons in the circumstances described in this section:

(1) Any officer or employee of the Administration, any officer of the U.S. Customs Service, any officer or employee of the United States Food and Drug Administration, and any other Federal officer who is lawfully engaged in the enforcement of any Federal law relating to controlled substances, drugs or customs, and is duly authorized to possess or to import or export controlled substances in the course of his/her official duties; and

(2) Any officer or employee of any State, or any political subdivision or agency thereof, who is engaged in the enforcement of any State or local law relating to controlled substances and is duly authorized to possess controlled substances in the course of his/her official duties.

(b) Any official exempted by this section may, when acting in the course of his/her official duties, procure any controlled substance in the course of an inspection, in accordance with § 1316.03(d) of this chapter, or in the course of any criminal investigation involving the person from whom the substance was procured, and may possess any controlled substance and distribute any such substance to any other official who is also exempted by this section and acting in the course of his/her official duties.

(c) In order to enable law enforcement agency laboratories, including

23    **A.R. 26**



§ 1301.25                                          21 CFR Ch. II (4-1-05 Edition)

laboratories of the Administration, to obtain and transfer controlled substances for use as standards in chemical analysis, such laboratories shall obtain annually a registration to conduct chemical analysis. Such laboratories shall be exempted from payment of a fee for registration. Laboratory personnel, when acting in the scope of their official duties, are deemed to be officials exempted by this section and within the activity described in section 515(d) of the Act (21 U.S.C. 885(d)). For purposes of this paragraph, laboratory activities shall not include field or other preliminary chemical tests by officials exempted by this section.

(d) In addition to the activities authorized under a registration to conduct chemical analysis pursuant to §1301.13(e)(1)(ix), laboratories of the Administration shall be authorized to manufacture or import controlled substances for any lawful purpose, to distribute or export such substances to any person, and to import and export such substances in emergencies without regard to the requirements of part 1312 of this chapter if a report concerning the importation or exportation is made to the Drug Operations Section of the Administration within 30 days of such importation or exportation.

[62 FR 13951, Mar. 24, 1997]

§ 1301.25   Registration regarding ocean vessels, aircraft, and other entities.

(a) If acquired by and dispensed under the general supervision of a medical officer described in paragraph (b) of this section, or the master or first officer of the vessel under the circumstances described in paragraph (d) of this section, controlled substances may be held for stocking, be maintained in, and dispensed from medicine chests, first aid packets, or dispensaries:

(1) On board any vessel engaged in international trade or in trade between ports of the United States and any merchant vessel belonging to the U.S. Government;

(2) On board any aircraft operated by an air carrier under a certificate of permit issued pursuant to the Federal Aviation Act of 1958 (49 U.S.C. 1301); and

(3) In any other entity of fixed or transient location approved by the Administrator as appropriate for application of this section (e.g., emergency kits at field sites of an industrial firm).

(b) A medical officer shall be:

(1) Licensed in a state as a physician;

(2) Employed by the owner or operator of the vessel, aircraft or other entity; and

(3) Registered under the Act at either of the following locations:

(i) The principal office of the owner or operator of the vessel, aircraft or other entity or

(ii) At any other location provided that the name, address, registration number and expiration date as they appear on his/her Certificate of Registration (DEA Form 223) for this location are maintained for inspection at said principal office in a readily retrievable manner.

(c) A registered medical officer may serve as medical officer for more than one vessel, aircraft, or other entity under a single registration, unless he/she serves as medical officer for more than one owner or operator, in which case he/she shall either maintain a separate registration at the location of the principal office of each such owner or operator or utilize one or more registrations pursuant to paragraph (b)(3)(ii) of this section.

(d) If no medical officer is employed by the owner or operator of a vessel, or in the event such medical officer is not accessible and the acquisition of controlled substances is required, the master or first officer of the vessel, who shall not be registered under the Act, may purchase controlled substances from a registered manufacturer or distributor, or from an authorized pharmacy as described in paragraph (f) of this section, by following the procedure outlined below:

(1) The master or first officer of the vessel must personally appear at the vendor's place of business, present proper identification (e.g., Seaman's photographic identification card) and a written requisition for the controlled substances.

(2) The written requisition must be on the vessel's official stationery or purchase order form and must include the name and address of the vendor, the name of the controlled substance, description of the controlled substance

24

**Drug Enforcement Administration, Justice**                    **§ 1301.25**

(dosage form, strength and number or volume per container) number of containers ordered, the name of the vessel, the vessel's official number and country of registry, the owner or operator of the vessel, the port at which the vessel is located, signature of the vessel's officer who is ordering the controlled substances and the date of the requisition.

(3) The vendor may, after verifying the identification of the vessel's officer requisitioning the controlled substances, deliver the control substances to that officer. The transaction shall be documented, in triplicate, on a record of sale in a format similar to that outlined in paragraph (d)(4) of this section. The vessel's requisition shall be attached to copy 1 of the record of sale and filed with the controlled substances records of the vendor, copy 2 of the record of sale shall be furnished to the officer of the vessel and retained aboard the vessel, copy 3 of the record of sale shall be forwarded to the nearest DEA Division Office within 15 days after the end of the month in which the sale is made.

(4) The vendor's record of sale should be similar to, and must include all the information contained in, the below listed format.

SALE OF CONTROLLED SUBSTANCES TO VESSELS

(Name of registrant) _____

(Address of registrant) _____

(DEA registration number) _____

| Line No. | Number of pack-ages ordered | Size of packages | Name of product | Packages distrib-uted | Date distributed |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |

FOOTNOTE: Line numbers may be continued according to needs of the vendor.

Number of lines completed _____
Name of vessel _____
Vessel's official number _____
Vessel's country of registry _____
Owner or operator of the vessel _____
Name and title of vessel's officer who presented the requisition _____
Signature of vessel's officer who presented the requisition _____

(e) Any medical officer described in paragraph (b) of this section shall, in addition to complying with all requirements and duties prescribed for registrants generally, prepare an annual report as of the date on which his/her registration expires, which shall give in detail an accounting for each vessel, aircraft, or other entity, and a summary accounting for all vessels, aircraft, or other entities under his/her supervision for all controlled substances purchased, dispensed or disposed of during the year. The medical officer shall maintain this report with other records required to be kept under the Act and, upon request, deliver a copy of the report to the Administration. The medical officer need not be present when controlled substances are dispensed, if the person who actually dispensed the controlled substances is responsible to the medical officer to justify his/her actions.

(f) Any registered pharmacy that wishes to distribute controlled substances pursuant to this section shall be authorized to do so, provided:

(1) The registered pharmacy notifies the nearest Division Office of the Administration of its intention to so distribute controlled substances prior to the initiation of such activity. This notification shall be by registered mail and shall contain the name, address, and registration number of the pharmacy as well as the date upon which such activity will commence; and

(2) Such activity is authorized by state law; and

(3) The total number of dosage units of all controlled substances distributed by the pharmacy during any calendar year in which the pharmacy is registered to dispense does not exceed the limitations imposed upon such distribution by § 1307.11(a)(4) and (b) of this chapter.

(g) Owners or operators of vessels, aircraft, or other entities described in this section shall not be deemed to possess or dispense any controlled substance acquired, stored and dispensed

25

§ 1301.26

in accordance with this section. Additionally, owners or operators of vessels, aircraft, or other entities described in this section or in Article 32 of the Single Convention on Narcotic Drugs, 1961, or in Article 14 of the Convention on Psychotropic Substances, 1971, shall not be deemed to import or export any controlled substances purchased and stored in accordance with that section or applicable article.

(h) The Master of a vessel shall prepare a report for each calendar year which shall give in detail an accounting for all controlled substances purchased, dispensed, or disposed of during the year. The Master shall file this report with the medical officer employed by the owner or operator of his/her vessel, if any, or, if not, he/she shall maintain this report with other records required to be kept under the Act and, upon request, deliver a copy of the report to the Administration.

(i) Controlled substances acquired and possessed in accordance with this section shall not be distributed to persons not under the general supervision of the medical officer employed by the owner or operator of the vessel, aircraft, or other entity, except in accordance with § 1307.21 of this chapter.

[62 FR 13951, Mar. 24, 1997]

§ 1301.26  Exemptions from import or export requirements for personal medical use.

Any individual who has in his/her possession a controlled substance listed in schedules II, III, IV, or V, which he/she has lawfully obtained for his/her personal medical use, or for administration to an animal accompanying him/her, may enter or depart the United States with such substance notwithstanding sections 1002–1005 of the Act (21 U.S.C. 952–955), provided the following conditions are met:

(a) The controlled substance is in the original container in which it was dispensed to the individual; and

(b) The individual makes a declaration to an appropriate official of the Bureau of Customs and Border Protection stating:

(1) That the controlled substance is possessed for his/her personal use, or for an animal accompanying him/her; and

(2) The trade or chemical name and the symbol designating the schedule of the controlled substance if it appears on the container label, or, if such name does not appear on the label, the name and address of the pharmacy or practitioner who dispensed the substance and the prescription number.

(c) In addition to (and not in lieu of) the foregoing requirements of this section, a United States resident may import into the United States no more than 50 dosage units combined of all such controlled substances in the individual's possession that were obtained abroad for personal medical use. (For purposes of this section, a United States resident is a person whose residence (i.e., place of general abode—meaning one's principal, actual dwelling place in fact, without regard to intent) is in the United States.) This 50 dosage unit limitation does not apply to controlled substances lawfully obtained in the United States pursuant to a prescription issued by a DEA registrant.

[69 FR 55347, Sept. 14, 2004]

ACTION ON APPLICATION FOR REGISTRATION: REVOCATION OR SUSPENSION OF REGISTRATION

§ 1301.31  Administrative review generally.

The Administrator may inspect, or cause to be inspected, the establishment of an applicant or registrant, pursuant to subpart A of part 1316 of this chapter. The Administrator shall review the application for registration and other information gathered by the Administrator regarding an applicant in order to determine whether the applicable standards of section 303 (21 U.S.C. 823) or section 1008 (21 U.S.C. 958) of the Act have been met by the applicant.

[62 FR 13953, Mar. 24, 1997]

§ 1301.32  Action on applications for research in Schedule I substances.

(a) In the case of an application for registration to conduct research with controlled substances listed in Schedule I, the Administrator shall process the application and protocol and forward a copy of each to the Secretary of Health and Human Services (Secretary)

26



**Drug Enforcement Administration, Justice**                                    **§ 1301.34**

within 7 days after receipt. The Secretary shall determine the qualifications and competency of the applicant, as well as the merits of the protocol (and shall notify the Administrator of his/her determination) within 21 days after receipt of the application and complete protocol, except that in the case of a clinical investigation, the Secretary shall have 30 days to make such determination and notify the Administrator. The Secretary, in determining the merits of the protocol, shall consult with the Administrator as to effective procedures to safeguard adequately against diversion of such controlled substances from legitimate medical or scientific use.

(b) An applicant whose protocol is defective shall be notified by the Secretary within 21 days after receipt of such protocol from the Administrator (or in the case of a clinical investigation within 30 days), and he/she shall be requested to correct the existing defects before consideration shall be given to his/her submission.

(c) If the Secretary determines the applicant qualified and competent and the research protocol meritorious, he/she shall notify the Administrator in writing of such determination. The Administrator shall issue a certificate of registration within 10 days after receipt of this notice, unless he/she determines that the certificate of registration should be denied on a ground specified in section 304(a) of the Act ('21 U.S.C. 824(a)). In the case of a supplemental protocol, a replacement certificate of registration shall be issued by the Administrator.

(d) If the Secretary determines that the protocol is not meritorious and/or the applicant is not qualified or competent, he/she shall notify the Administrator in writing setting forth the reasons for such determination. If the Administrator determines that grounds exist for the denial of the application, he/she shall within 10 days issue an order to show cause pursuant to § 1301.37 and, if requested by the applicant, hold a hearing on the application pursuant to § 1301.41. If the grounds for denial of the application include a determination by the Secretary, the Secretary or his duly authorized agent shall furnish testimony and documents

pertaining to his determination at such hearing.

(e) Supplemental protocols will be processed in the same manner as original research protocols. If the processing of an application or research protocol is delayed beyond the time limits imposed by this section, the applicant shall be so notified in writing.

[52 FR 13953, Mar. 24, 1997]

**§ 1301.33  Application for bulk manufacture of Schedule I and II substances.**

(a) In the case of an application for registration or reregistration to manufacture in bulk a basic class of controlled substance listed in Schedule I or II, the Administrator shall, upon the filing of such application, publish in the FEDERAL REGISTER a notice naming the applicant and stating that such applicant has applied to be registered as a bulk manufacturer of a basic class of narcotic or nonnarcotic controlled substance, which class shall be identified. A copy of said notice shall be mailed simultaneously to each person registered as a bulk manufacturer of that basic class and to any other applicant therefor. Any such person may, within 60 days from the date of publication of the notice in the FEDERAL REGISTER, file with the Administrator written comments on or objections to the issuance of the proposed registration.

(b) In order to provide adequate competition, the Administrator shall not be required to limit the number of manufacturers in any basic class to a number less than that consistent with maintenance of effective controls against diversion solely because a smaller number is capable of producing an adequate and uninterrupted supply.

(c) This section shall not apply to the manufacture of basic classes of controlled substances listed in Schedules I or II as an incident to research or chemical analysis as authorized in § 1301.13(e)(1).

[52 FR 13953, Mar. 24, 1997]

**§ 1301.34  Application for importation of Schedule I and II substances.**

(a) In the case of an application for registration or reregistration to import

27    A.R. 30

§ 1301.34

a controlled substance listed in Schedule I or II, under the authority of section 1002(a)(2)(B) of the Act (21 U.S.C. 952(a)(2)(B)), the Administrator shall, upon the filing of such application, publish in the FEDERAL REGISTER a notice naming the applicant and stating that such applicant has applied to be registered as an importer of a Schedule I or II controlled substance, which substance shall be identified. A copy of said notice shall be mailed simultaneously to each person registered as a bulk manufacturer of that controlled substance and to any other applicant therefor. Any such person may, within 30 days from the date of publication of the notice in the FEDERAL REGISTER, file written comments on or objections to the issuance of the proposed registration, and may, at the same time, file a written request for a hearing on the application pursuant to §1301.43. If a hearing is requested, the Administrator shall hold a hearing on the application in accordance with §1301.41. Notice of the hearing shall be published in the FEDERAL REGISTER, and shall be mailed simultaneously to the applicant and to all persons to whom notice of the application was mailed. Any such person may participate in the hearing by filing a notice of appearance in accordance with §1301.43 of this chapter. Notice of the hearing shall contain a summary of all comments and objections filed regarding the application and shall state the time and place for the hearing, which shall not be less than 30 days after the date of publication of such notice in the FEDERAL REGISTER. A hearing pursuant to this section may be consolidated with a hearing held pursuant to §1301.35 or §1301.36 of this part.

(b) The Administrator shall register an applicant to import a controlled substance listed in Schedule I or II if he/she determines that such registration is consistent with the public interest and with U.S. obligations under international treaties, conventions, or protocols in effect on May 1, 1971. In determining the public interest, the following factors shall be considered:

(1) Maintenance of effective controls against diversion of particular controlled substances and any controlled substance in Schedule I or II com-

pounded therefrom into other than legitimate medical, scientific research, or industrial channels, by limiting the importation and bulk manufacture of such controlled substances to a number of establishments which can produce an adequate and uninterrupted supply of these substances under adequately competitive conditions for legitimate medical, scientific, research, and industrial purposes;

(2) Compliance with applicable State and local law;

(3) Promotion of technical advances in the art of manufacturing these substances and the development of new substances;

(4) Prior conviction record of applicant under Federal and State laws relating to the manufacture, distribution, or dispensing of such substances;

(5) Past experience in the manufacture of controlled substances, and the existence in the establishment of effective control against diversion;

(6) That the applicant will be permitted to import only:

(i) Such amounts of crude opium, poppy straw, concentrate of poppy straw, and coca leaves as the Administrator finds to be necessary to provide for medical, scientific, or other legitimate purposes; or

(ii) Such amounts of any controlled substances listed in Schedule I or II as the Administrator shall find to be necessary to provide for the medical, scientific, or other legitimate needs of the United States during an emergency in which domestic supplies of such substances are found by the Administrator to be inadequate; or

(iii) Such amounts of any controlled substance listed in Schedule I or II as the Administrator shall find to be necessary to provide for the medical, scientific, or other legitimate needs of the United States in any case in which the Administrator finds that competition among domestic manufacturers of the controlled substance is inadequate and will not be rendered adequate by the registration of additional manufacturers under section 303 of the Act (21 U.S.C. 823); or

(iv) Such limited quantities of any controlled substance listed in Schedule I or II as the Administrator shall find

**Drug Enforcement Administration, Justice**    **§ 1301.35**

to be necessary for scientific, analytical or research uses; and .

(7) Such other factors as may be relevant to and consistent with the public health and safety.

(c) In determining whether the applicant can and will maintain effective controls against diversion within the meaning of paragraph (b) of this section, the Administrator shall consider among other factors:

(1) Compliance with the security requirements set forth in §§ 1301.71– 1301.76; and

(2) Employment of security procedures to guard against in-transit losses within and without the jurisdiction of the United States.

(d) In determining whether competition among the domestic manufacturers of a controlled substance is adequate within the meaning of paragraphs (b)(1) and (b)(6)(iii) of this section, as well as section 1002(a)(2)(B) of the Act (21 U.S.C. 952(a)(2)(B)), the Administrator shall consider:

(1) The extent of price rigidity in the light of changes in:

. (i) raw materials and other costs and

(ii) conditions of supply and demand;

(2) The extent of service and quality competition among the domestic manufacturers for shares of the domestic market including:

(i) Shifts in market shares and

(ii) Shifts in individual customers among domestic manufacturers;

(3) The existence of substantial differentials between domestic prices and the higher of prices generally prevailing in foreign markets or the prices at which the applicant for registration to import is committed to undertake to provide such products in the domestic market in conformity with the Act. In determining the existence of substantial differentials hereunder, appropriate consideration should be given to any additional costs imposed on domestic manufacturers by the requirements of the Act and such other cost-related and other factors as the Administrator may deem relevant. In no event shall an importer's offering prices in the United States be considered if they are lower than those prevailing in the foreign market or markets from which the importer is obtaining his/her supply;

(4) The existence of competitive restraints imposed upon domestic manufacturers by governmental regulations; and

(5) Such other factors as may be relevant to the determinations required under this paragraph.

(e) In considering the scope of the domestic market, consideration shall be given to substitute products which are reasonably interchangeable in terms of price, quality and use.

(f) The fact that the number of existing manufacturers is small shall not demonstrate, in and of itself, that adequate competition among them does not exist.

[62 FR 13953, Mar. 24, 1997]

**§ 1301.35  Certificate of registration; denial of registration.**

(a) The Administrator shall issue a Certificate of Registration (DEA Form 223) to an applicant if the issuance of registration or reregistration is required under the applicable provisions of sections 303 or 1008 of the Act (21 U.S.C. 823 and 958). In the event that the issuance of registration or reregistration is not required, the Administrator shall deny the application. Before denying any application, the Administrator shall issue an order to show cause pursuant to § 1301.37 and, if requested by the applicant, shall hold a hearing on the application pursuant to § 1301.41.

(b) If in response to a show cause order a hearing is requested by an applicant for registration or reregistration to manufacture in bulk a basic class of controlled substance listed in Schedule I or II, notice that a hearing has been requested shall be published in the FEDERAL REGISTER and shall be mailed simultaneously to the applicant and to all persons to whom notice of the application was mailed. Any person entitled to file comments or objections to the issuance of the proposed registration pursuant to § 1301.33(a) may participate in the hearing by filing notice of appearance in accordance with § 1301.43. Such persons shall have 30 days to file a notice of appearance after the date of publication of the notice of a request for a hearing in the FEDERAL REGISTER.

29



(c) The Certificate of Registration (DEA Form 223) shall contain the name, address, and registration number of the registrant, the activity authorized by the registration, the schedules and/or Administration Controlled Substances Code Number (as set forth in part 1308 of this chapter) the controlled substances which the registrant is authorized to handle, the amount of fee paid (or exemption), and the expiration date of the registration. The registrant shall maintain the certificate of registration at the registered location in a readily retrievable manner and shall permit inspection of the certificate by any official, agent or employee of the Administration or of any Federal, State, or local agency engaged in enforcement of laws relating to controlled substances.

[62 FR 13964, Mar. 24, 1997]

**§ 1301.36 Suspension or revocation of registration; suspension of registration pending final order; extension of registration pending final order.**

(a) For any registration issued under section 303 of the Act (21 U.S.C. 823), the Administrator may:

(1) Suspend the registration pursuant to section 304(a) of the Act (21 U.S.C. 824(a)) for any period of time.

(2) Revoke the registration pursuant to section 304(a) of the Act (21 U.S.C. 824(a)).

(b) For any registration issued under section 1008 of the Act (21 U.S.C. 958), the Administrator may:

(1) Suspend the registration pursuant to section 1008(d) of the Act (21 U.S.C. 958(d)) for any period of time.

(2) Revoke the registration pursuant to section 1008(d) of the Act (21 U.S.C. 958(d)) if he/she determines that such registration is inconsistent with the public interest as defined in section 1008 or with the United States obligations under international treaties, conventions, or protocols in effect on October 12, 1984.

(c) The Administrator may limit the revocation or suspension of a registration to the particular controlled substance, or substances, with respect to which grounds for revocation or suspension exist.

(d) Before revoking or suspending any registration, the Administrator

shall issue an order to show cause pursuant to § 1301.37 and, if requested by the registrant, shall hold a hearing pursuant to § 1301.41.

(e) The Administrator may suspend any registration simultaneously with or at any time subsequent to the service upon the registrant of an order to show cause why such registration should not be revoked or suspended, in any case where he/she finds that there is an imminent danger to the public health or safety. If the Administrator so suspends, he/she shall serve with the order to show cause pursuant to § 1301.37 an order of immediate suspension which shall contain a statement of his findings regarding the danger to public health or safety.

(f) Upon service of the order of the Administrator suspending or revoking registration, the registrant shall immediately deliver his/her Certificate of Registration, any order forms, and any import or export permits in his/her possession to the nearest office of the Administration. The suspension or revocation of a registration shall suspend or revoke any individual manufacturing or procurement quota fixed for the registrant pursuant to part 1303 of this chapter and any import or export permits issued to the registrant pursuant to part 1312 of this chapter. Also, upon service of the order of the Administrator revoking or suspending registration, the registrant shall, as instructed by the Administrator:

(1) Deliver all controlled substances in his/her possession to the nearest office of the Administration or to authorized agents of the Administration; or

(2) Place all controlled substances in his/her possession under seal as described in sections 304(f) or 1008(d)(6) of the Act (21 U.S.C. 824(f) or 958(d)(6)).

(g) In the event that revocation or suspension is limited to a particular controlled substance or substances, the registrant shall be given a new Certificate of Registration for all substances not affected by such revocation or suspension; no fee shall be required to be paid for the new Certificate of Registration. The registrant shall deliver the old Certificate of Registration and, if appropriate, any order forms in his/her possession to the nearest office of



Drug Enforcement Administration, Justice                    § 1301.37

the Administration. The suspension or revocation of a registration, when limited to a particular basic class or classes of controlled substances, shall suspend or revoke any individual manufacturing or procurement quota fixed for the registrant for such class or classes pursuant to part 1303 of this chapter and any import or export permits issued to the registrant for such class or classes pursuant to part 1312 of this chapter. Also, upon service of the order of the Administrator revoking or suspending registration, the registrant shall, as instructed by the Administrator:

(1) Deliver to the nearest office of the Administration or to authorized agents of the Administration all of the particular controlled substance or substances affected by the revocation or suspension which are in his/her possession; or

(2) Place all of such substances under seal as described in sections 304(f) or 958(d)(5) of the Act (21 U.S.C. 824(f) or 958(d)(5)).

(h) Any suspension shall continue in effect until the conclusion of all proceedings upon the revocation or suspension, including any judicial review thereof, unless sooner withdrawn by the Administrator or dissolved by a court of competent jurisdiction. Any registrant whose registration is suspended under paragraph (e) of this section may request a hearing on the revocation or suspension of his/her registration at a time earlier than specified in the order to show cause pursuant to § 1301.37. This request shall be granted by the Administrator, who shall fix a date for such hearing as early as reasonably possible.

(i) In the event that an applicant for reregistration (who is doing business under a registration previously granted and not revoked or suspended) has applied for reregistration at least 45 days before the date on which the existing registration is due to expire, and the Administrator has issued no order on the application on the date on which the existing registration is due to expire, the existing registration of the applicant shall automatically be extended and continue in effect until the date on which the Administrator so issues his/her order. The Administrator

may extend any other existing registration under the circumstances contemplated in this section even though the registrant failed to apply for reregistration at least 45 days before expiration of the existing registration, with or without request by the registrant, if the Administrator finds that such extension is not inconsistent with the public health and safety.

[62 FR 13965, Mar. 24, 1997]

§ 1301.37   Order to show cause.

(a) If, upon examination of the application for registration from any applicant and other information gathered by the Administration regarding the applicant, the Administrator is unable to make the determinations required by the applicable provisions of section 303 and/or section 1008 of the Act (21 U.S.C. 823 and 958) to register the applicant, the Administrator shall serve upon the applicant an order to show cause why the registration should not be denied.

(b) If, upon information gathered by the Administration regarding any registrant, the Administrator determines that the registration of such registrant is subject to suspension or revocation pursuant to section 304 or section 1008 of the Act (21 U.S.C. 824 and 958), the Administrator shall serve upon the registrant an order to show cause why the registration should not be revoked or suspended.

(c) The order to show cause shall call upon the applicant or registrant to appear before the Administrator at a time and place stated in the order, which shall not be less than 30 days after the date of receipt of the order. The order to show cause shall also contain a statement of the legal basis for such hearing and for the denial, revocation, or suspension of registration and a summary of the matters of fact and law asserted.

(d) Upon receipt of an order to show cause, the applicant or registrant must, if he/she desires a hearing, file a request for a hearing pursuant to § 1301.43. If a hearing is requested, the Administrator shall hold a hearing at the time and place stated in the order, pursuant to § 1301.41.

31

§ 1301.41                                                21 CFR Ch. II (4-1-05 Edition)

(e) When authorized by the Administrator, any agent of the Administration may serve the order to show cause.

[62 FR 13955, Mar. 24, 1997]

### HEARINGS

§ 1301.41  Hearings generally.

(a) In any case where the Administrator shall hold a hearing on any registration or application therefor, the procedures for such hearing shall be governed generally by the adjudication procedures set forth in the Administrative Procedure Act (5 U.S.C. 551-559) and specifically by sections 303, 304, and 1008 of the Act (21 U.S.C. 823-824 and 958), by §§ 1301.42-1301.46 of this part, and by the procedures for administrative hearings under the Act set forth in §§ 1316.41-1316.67 of this chapter.

(b) Any hearing under this part shall be independent of, and not in lieu of, criminal prosecutions or other proceedings under the Act or any other law of the United States.

[62 FR 13955, Mar. 24, 1997]

§ 1301.42  Purpose of hearing.

If requested by a person entitled to a hearing, the Administrator shall hold a hearing for the purpose of receiving factual evidence regarding the issues involved in the denial, revocation, or suspension of any registration, or the granting of any application for registration to import or to manufacture in bulk a basic class of controlled substance listed in Schedule I or II. Extensive argument should not be offered into evidence but rather presented in opening or closing statements of counsel or in memoranda or proposed findings of fact and conclusions of law.

[62 FR 13956, Mar. 24, 1997]

§ 1301.43  Request for hearing or appearance; waiver.

(a) Any person entitled to a hearing pursuant to § 1301.32 or §§ 1301.34-1301.36 and desiring a hearing shall, within 30 days after the date of receipt of the order to show cause (or the date of publication of notice of the application for registration in the FEDERAL REGISTER in the case of § 1301.34), file with the Administrator a written request for a hearing in the form prescribed in § 1316.47 of this chapter.

(b) Any person entitled to participate in a hearing pursuant to § 1301.34 or § 1301.35(b) and desiring to do so shall, within 30 days of the date of publication of notice of the request for a hearing in the FEDERAL REGISTER, file with the Administrator a written notice of intent to participate in such hearing in the form prescribed in § 1316.48 of this chapter. Any person filing a request for a hearing need not also file a notice of appearance.

(c) Any person entitled to a hearing or to participate in a hearing pursuant to § 1301.32 or §§ 1301.34-1301.36 may, within the period permitted for filing a request for a hearing or a notice of appearance, file with the Administrator a waiver of an opportunity for a hearing or to participate in a hearing, together with a written statement regarding such person's position on the matters of fact and law involved in such hearing. Such statement, if admissible, shall be made a part of the record and shall be considered in light of the lack of opportunity for cross-examination in determining the weight to be attached to matters of fact asserted therein.

(d) If any person entitled to a hearing or to participate in a hearing pursuant to § 1301.32 or §§ 1301.34-1301.36 fails to file a request for a hearing or a notice of appearance, or if such person so files and fails to appear at the hearing, such person shall be deemed to have waived the opportunity for a hearing or to participate in the hearing, unless such person shows good cause for such failure.

(e) If all persons entitled to a hearing or to participate in a hearing waive or are deemed to waive their opportunity for the hearing or to participate in the hearing, the Administrator may cancel the hearing, if scheduled, and issue his/her final order pursuant to § 1301.46 without a hearing.

[62 FR 13956, Mar. 24, 1997]





**Drug Enforcement Administration, Justice**

§ 1301.51

**§ 1301.44  Burden of proof.**

(a) At any hearing on an application to manufacture any controlled substance listed in Schedule I or II, the applicant shall have the burden of proving that the requirements for such registration pursuant to section 303(a) of the Act (21 U.S.C. 823(a)) are satisfied. Any other person participating in the hearing pursuant to § 1301.35(b) shall have the burden of proving any propositions of fact or law asserted by such person in the hearing.

(b) At any hearing on the granting or denial of an applicant to be registered to conduct a narcotic treatment program or as a compounder, the applicant shall have the burden of proving that the requirements for each registration pursuant to section 303(g) of the Act (21 U.S.C. 823(g)) are satisfied.

(c) At any hearing on the granting or denial of an application to be registered to import or export any controlled substance listed in Schedule I or II, the applicant shall have the burden of proving that the requirements for such registration pursuant to sections 1008(a) and (d) of the Act (21 U.S.C. 958 (a) and (d)) are satisfied. Any other person participating in the hearing pursuant to § 1301.34 shall have the burden of proving any propositions of fact or law asserted by him/her in the hearings.

(d) At any other hearing for the denial of a registration, the Administration shall have the burden of proving that the requirements for such registration pursuant to section 303 or section 1008(c) and (d) of the Act (21 U.S.C. 823 or 958(c) and (d)) are not satisfied.

(e) At any hearing for the revocation or suspension of a registration, the Administration shall have the burden of proving that the requirements for such revocation or suspension pursuant to section 304(a) or section 1008(d) of the Act (21 U.S.C. 824(a) or 958(d)) are satisfied.

[62 FR 13956, Mar. 24, 1997]

**§ 1301.45  Time and place of hearing.**

The hearing will commence at the place and time designated in the order to show cause or notice of hearing published in the FEDERAL REGISTER (unless expedited pursuant to § 1301.36(h)) but

thereafter it may be moved to a different place and may be continued from day to day or recessed to a later day without notice other than announcement thereof by the presiding officer at the hearing.

[62 FR 13956, Mar. 24, 1997]

**§ 1301.46  Final order.**

As soon as practicable after the presiding officer has certified the record to the Administrator, the Administrator shall issue his/her order on the granting, denial, revocation, or suspension of registration. In the event that an application for registration to import or to manufacture in bulk a basic class of any controlled substance listed in Schedule I or II is granted, or any application for registration is denied, or any registration is revoked or suspended, the order shall include the findings of fact and conclusions of law upon which the order is based. The order shall specify the date on which it shall take effect. The Administrator shall serve one copy of his/her order upon each party in the hearing.

[62 FR 13956, Mar. 24, 1997]

MODIFICATION, TRANSFER AND TERMINATION OF REGISTRATION

**§ 1301.51  Modification in registration.**

Any registrant may apply to modify his/her registration to authorize the handling of additional controlled substances or to change his/her name or address, by submitting a letter of request to the Registration Unit, Drug Enforcement Administration, Department of Justice, Post Office Box 28083, Central Station, Washington, DC 20005. The letter shall contain the registrant's name, address, and registration number as printed on the certificate of registration, and the substances and/or schedules to be added to his/her registration or the new name or address and shall be signed in accordance with § 1301.13(j). If the registrant is seeking to handle additional controlled substances listed in Schedule I for the purpose of research or instructional activities, he/she shall attach three copies of a research protocol describing each research project involving the additional substances, or two copies of a

33

§ 1301.52

21 CFR Ch. II (4-1-05 Edition)

statement describing the nature, extent, and duration of such instructional activities, as appropriate. No fee shall be required to be paid for the modification. The request for modification shall be handled in the same manner as an application for registration. If the modification in registration is approved, the Administrator shall issue a new certificate of registration (DEA Form 223) to the registrant, who shall maintain it with the old certificate of registration until expiration.

[62 FR 13956, Mar. 24, 1997]

§ 1301.52  Termination of registration; transfer of registration; distribution upon discontinuance of business.

(a) Except as provided in paragraph (b) of this section, the registration of any person shall terminate if and when such person dies, ceases legal existence, or discontinues business or professional practice. Any registrant who ceases legal existence or discontinues business or professional practice shall notify the Administrator promptly of such fact.

(b) No registration or any authority conferred thereby shall be assigned or otherwise transferred except upon such conditions as the Administration may specifically designate and then only pursuant to written consent. Any person seeking authority to transfer a registration shall submit a written request, providing full details regarding the proposed transfer of registration, to the Deputy Assistant Administrator, Office of Diversion Control, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(c) Any registrant desiring to discontinue business activities altogether or with respect to controlled substances (without transferring such business activities to another person) shall return for cancellation his/her certificate of registration, and any unexecuted order forms in his/her possession, to the Registration Unit, Drug Enforcement Administration, Department of Justice, Post Office Box 28083, Central Station, Washington, DC 20005. Any controlled substances in his/her possession may be disposed of in accordance with § 1307.21 of this chapter.

(d) Any registrant desiring to discontinue business activities altogether

or with respect to controlled substance (by transferring such business activities to another person) shall submit in person or by registered or certified mail, return receipt requested, to the Special Agent in Charge in his/her area, at least 14 days in advance of the date of the proposed transfer (unless the Special Agent in Charge waives this time limitation in individual instances), the following information:

(1) The name, address, registration number, and authorized business activity of the registrant discontinuing the business (registrant-transferor);

(2) The name, address, registration number, and authorized business activity of the person acquiring the business (registrant-transferee);

(3) Whether the business activities will be continued at the location registered by the person discontinuing business, or moved to another location (if the latter, the address of the new location should be listed);

(4) Whether the registrant-transferor has a quota to manufacture or procure any controlled substance listed in Schedule I or II (if so, the basic class or class of the substance should be indicated); and

(5) The date on which the transfer of controlled substances will occur.

(e) Unless the registrant-transferor is informed by the Special Agent in Charge, before the date on which the transfer was stated to occur, that the transfer may not occur, the registrant-transferor may distribute (without being registered to distribute) controlled substances in his/her possession to the registrant-transferee in accordance with the following:

(1) On the date of transfer of the controlled substances, a complete inventory of all controlled substances being transferred shall be taken in accordance with § 1304.11 of this chapter. This inventory shall serve as the final inventory of the registrant-transferor and the initial inventory of the registrant-transferee, and a copy of the inventory shall be included in the records of each person. It shall not be necessary to file a copy of the inventory with the Administration unless requested by the Special Agent in Charge. Transfers of any substances listed in Schedule I or II shall require

34

**Drug Enforcement Administration, Justice** §1301.71

the use of order forms in accordance with part 1305 of this chapter.

(2) On the date of transfer of the controlled substances, all records required to be kept by the registrant-transferor with reference to the controlled substances being transferred, under part 1304 of this chapter, shall be transferred to the registrant-transferee. Responsibility for the accuracy of records prior to the date of transfer remains with the transferor, but responsibility for custody and maintenance shall be upon the transferee.

(3) In the case of registrants required to make reports pursuant to part 1304 of this chapter, a report marked "Final" will be prepared and submitted by the registrant-transferor showing the disposition of all the controlled substances for which a report is required; no additional report will be required from him, if no further transactions involving controlled substances are consummated by him. The initial report of the registrant-transferee shall account for transactions beginning with the day next succeeding the date of discontinuance or transfer of business by the transferor-registrant and the substances transferred to him shall be reported as receipts in his/her initial report.

[62 FR 13957, Mar. 24, 1997]

## SECURITY REQUIREMENTS

### §1301.71 Security requirements generally.

(a) All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances. In order to determine whether a registrant has provided effective controls against diversion, the Administrator shall use the security requirements set forth in §§1301.72–1301.76 as standards for the physical security controls and operating procedures necessary to prevent diversion. Materials and construction which will provide a structural equivalent to the physical security controls set forth in §§1301.72, 1301.73 and 1301.75 may be used in lieu of the materials and construction described in those sections.

(b) Substantial compliance with the standards set forth in §§1301.72–1301.76

may be deemed sufficient by the Administrator after evaluation of the overall security system and needs of the applicant or registrant. In evaluating the overall security system of a registrant or applicant, the Administrator may consider any of the following factors as he may deem relevant to the need for strict compliance with security requirements:

(1) The type of activity conducted (e.g., processing of bulk chemicals, preparing dosage forms, packaging, labeling, cooperative buying, etc.);

(2) The type and form of controlled substances handled (e.g., bulk liquids or dosage units, usable powders or non-usable powders);

(3) The quantity of controlled substances handled;

(4) The location of the premises and the relationship such location bears on security needs;

(5) The type of building construction comprising the facility and the general characteristics of the building or buildings;

(6) The type of vault, safe, and secure enclosures or other storage system (e.g., automatic storage and retrieval system) used;

(7) The type of closures on vaults, safes, and secure enclosures;

(8) The adequacy of key control systems and/or combination lock control systems;

(9) The adequacy of electric detection and alarm systems, if any including use of supervised transmittal lines and standby power sources;

(10) The extent of unsupervised public access to the facility, including the presence and characteristics of perimeter fencing, if any;

(11) The adequacy of supervision over employees having access to manufacturing and storage areas;

(12) The procedures for handling business guests, visitors, maintenance personnel, and nonemployee service personnel;

(13) The availability of local police protection or of the registrant's or applicant's security personnel;

(14) The adequacy of the registrant's or applicant's system for monitoring the receipt, manufacture, distribution, and disposition of controlled substances in its operations; and

35

A.R. 38

(15) The applicability of the security requirements contained in all Federal, State, and local laws and regulations governing the management of waste.

(c) When physical security controls become inadequate as a result of a controlled substance being transferred to a different schedule, or as a result of a noncontrolled substance being listed on any schedule, or as a result of a significant increase in the quantity of controlled substances in the possession of the registrant during normal business operations, the physical security controls shall be expanded and extended accordingly. A registrant may adjust physical security controls within the requirements set forth in §§ 1301.72–1301.76 when the need for such controls decreases as a result of a controlled substance being transferred to a different schedule, or a result of a controlled substance being removed from control, or as a result of a significant decrease in the quantity of controlled substances in the possession of the registrant during normal business operations.

(d) Any registrant or applicant desiring to determine whether a proposed security system substantially complies with, or is the structural equivalent of, the requirements set forth in §§ 1301.72–1301.76 may submit any plans, blueprints, sketches or other materials regarding the proposed security system either to the Special Agent in Charge in the region in which the system will be used, or to the Diversion Operations Section, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(e) Physical security controls of locations registered under the Harrison Narcotic Act or the Narcotics Manufacturing Act of 1960 on April 30, 1971, shall be deemed to comply substantially with the standards set forth in §§ 1301.72, 1301.73 and 1301.75. Any new facilities or work or storage areas constructed or utilized for controlled substances, which facilities or work or storage areas have not been previously approved by the Administrator, shall not necessarily be deemed to comply substantially with the standards set forth in §§ 1301.72, 1301.73 and 1301.75, notwithstanding that such facilities or work or storage areas have physical se-

curity controls similar to those previously approved by the Administration.

[36 FR 18732, Sept. 21, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 46 FR 28841, May 29, 1981; 47 FR 41735, Sept. 22, 1982; 51 FR 5319, Feb. 13, 1986; 68 FR 41228, July 11, 2003]

§ 1301.72  Physical security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs; storage areas.

(a) *Schedules I and II.* Raw material, bulk materials awaiting further processing, and finished products which are controlled substances listed in Schedule I or II (except GHB that is manufactured or distributed in accordance with an exemption under section 505(1) of the FFDCA which shall be subject to the requirements of paragraph (b) of this section) shall be stored in one of the following secured areas:

(1) Where small quantities permit, a safe or steel cabinet;

(i) Which safe or steel cabinet shall have the following specifications or the equivalent: 30 man-minutes against surreptitious entry, 10 man-minutes against forced entry, 20 man-hours against lock manipulation, and 20 man-hours against radiological techniques;

(ii) Which safe or steel cabinet, if it weighs less than 750 pounds, is bolted or cemented to the floor or wall in such a way that it cannot be readily removed; and

(iii) Which safe or steel cabinet, if necessary, depending upon the quantities and type of controlled substances stored, is equipped with an alarm system which, upon attempted unauthorized entry, shall transmit a signal directly to a central protection company or a local or State police agency which has a legal duty to respond, or a 24-hour control station operated by the registrant, or such other protection as the Administrator may approve.

(2) A vault constructed before, or under construction on, September 1, 1971, which is of substantial construction with a steel door, combination or key lock, and an alarm system; or

(3) A vault constructed after September 1, 1971:

(i) The walls, floors, and ceilings of which vault are constructed of at least

36

**Drug Enforcement Administration, Justice**    **§ 1301.72**

8 inches of reinforced concrete or other substantial masonry, reinforced vertically and horizontally with ½-inch steel rods tied 6 inches on center, or the structural equivalent to such reinforced walls, floors, and ceilings;

(ii) The door and frame unit of which vault shall conform to the following specifications or the equivalent: 30 man-minutes against surreptitious entry, 10 man-minutes against forced entry, 20 man-hours against lock manipulation, and 20 man-hours against radiological techniques;

(iii) Which vault, if operations require it to remain open for frequent access, is equipped with a "day-gate" which is self-closing and self-locking, or the equivalent, for use during the hours of operation in which the vault door is open;

(iv) The walls or perimeter of which vault are equipped with an alarm, which upon unauthorized entry shall transmit a signal directly to a central station protection company, or a local or State police agency which has a legal duty to respond, or a 24-hour control station operated by the registrant, or such other protection as the Administrator may approve, and, if necessary, holdup buttons at strategic points of entry to the perimeter area of the vault;

(v) The door of which vault is equipped with contact switches; and

(vi) Which vault has one of the following: Complete electrical lacing of the walls, floor and ceilings; sensitive ultrasonic equipment within the vault; a sensitive sound accumulator system; or such other device designed to detect illegal entry as may be approved by the Administration.

(b) *Schedules III, IV and V.* Raw material, bulk materials awaiting further processing, and finished products which are controlled substances listed in Schedules III, IV, and V, and GHB when it is manufactured or distributed in accordance with an exemption under section 505(f) of the FFDCA, shall be stored in the following secure storage areas:

(1) A safe or steel cabinet as described in paragraph (a)(1) of this section;

(2) A vault as described in paragraph (a)(2) or (3) of this section equipped

with an alarm system as described in paragraph (b)(4)(v) of this section;

(3) A building used for storage of Schedules III through V controlled substances with perimeter security which limits access during working hours and provides security after working hours and meets the following specifications:

(i) Has an electronic alarm system as described in paragraph (b)(4)(v) of this section,

(ii) Is equipped with self-closing, self-locking doors constructed of substantial material commensurate with the type of building construction, provided, however, a door which is kept closed and locked at all times when not in use and when in use *is* kept under direct observation of a responsible employee or agent of the registrant is permitted in lieu of a self-closing, self-locking door. Doors may be sliding or hinged. Regarding hinged doors, where hinges are mounted on the outside, such hinges shall be sealed, welded or otherwise constructed to inhibit removal. Locking devices for such doors shall be either of the multiple-position combination or key lock type and:

(a) In the case of key locks, shall require key control which limits access to a limited number of employees, and

(b) In the case of combination locks, the combination shall be limited to a minimum number of employees and can be changed upon termination of employment of an employee having knowledge of the combination;

(4) A cage, located within a building on the premises, meeting the following specifications:

(i) Having walls constructed of not less than No. 10 gauge steel fabric mounted on steel posts, which posts are:

(a) At least one inch in diameter;

(b) Set in concrete or installed with lag bolts that are pinned or brazed; and

(c) Which are placed no more than ten feet apart with horizontal one and one-half inch reinforcements every sixty inches;

(ii) Having a mesh construction with openings of not more than two and one-half inches across the square;

(iii) Having a ceiling constructed of the same material, or in the alternative, a cage shall be erected which reaches and is securely attached to the

37

structural ceiling of the building. A lighter gauge mesh may be used for the ceilings of large enclosed areas if walls are at least 14 feet in height;

(iv) Is equipped with a door constructed of No. 10 gauge steel fabric on a metal door frame in a metal door flange, and in all other respects conforms to all the requirements of 21 CFR 1301.72(b)(3)(ii); and

(v) Is equipped with an alarm system which upon unauthorized entry shall transmit a signal directly to a central station protection agency or a local or state police agency, each having a legal duty to respond, or to a 24-hour control station operated by the registrant, or to such other source of protection as the Administrator may approve;

(5) An enclosure of masonry or other material, approved in writing by the Administrator as providing security comparable to a cage;

(6) A building or enclosure within a building which has been inspected and approved by DEA or its predecessor agency, BND, and continues to provide adequate security against the diversion of Schedule III through V controlled substances, of which fact written acknowledgment has been made by the Special Agent in Charge of DEA for the area in which such building or enclosure is situated;

(7) Such other secure storage areas as may be approved by the Administrator after considering the factors listed in § 1301.71(b);

(8)(i) Schedule III through V controlled substances may be stored with Schedules I and II controlled substances under security measures provided by 21 CFR 1301.72(a);

(ii) Non-controlled drugs, and other materials may be stored with Schedule III through V controlled substances in any of the secure storage areas required by 21 CFR 1301.72(b), provided that permission for such storage of non-controlled items is obtained in advance, in writing, from the Special Agent in Charge of DEA for the area in which such storage area is situated. Any such permission tendered must be upon the Special Agent in Charge's written determination that such non-segregated storage does not diminish security effectiveness for

Schedules III through V controlled substances.

(c) *Multiple storage areas.* Where several types or classes of controlled substances are handled separately by the registrant or applicant for different purposes (e.g., returned goods, or goods in process), the controlled substances may be stored separately, provided that each storage area complies with the requirements set forth in this section.

(d) *Accessibility to storage areas.* The controlled substances storage areas shall be accessible only to an absolute minimum number of specifically authorized employees. When it is necessary for employee maintenance personnel, nonemployee maintenance personnel, business guests, or visitors to be present in or pass through controlled substances storage areas, the registrant shall provide for adequate observation of the area by an employee specifically authorized in writing.

[36 FR 19730, Sept. 21, 1971, as amended at 37 FR 15919, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting § 1301.72, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and on GPO Access.

§ 1301.73  Physical security controls for non-practitioners; compounders for narcotic treatment programs; manufacturing and compounding labels.

All manufacturing activities (including processing, packaging and labeling) involving controlled substances listed in any schedule and all activities of compounders shall be conducted in accordance with the following:

(a) All in-process substances shall be returned to the controlled substances storage area at the termination of the process. If the process is not terminated at the end of a workday (except where a continuous process or other normal manufacturing operation should not be interrupted), the processing area or tanks, vessels, bins or bulk containers containing such substances shall be securely locked, with adequate security for the area or building. If such security requires an alarm, such alarm, upon unauthorized entry, shall transmit a signal directly to a

38



central station protection company, or local or state police agency which has a legal duty to respond, or a 24-hour control station operated by the registrant.

(b) Manufacturing activities with controlled substances shall be conducted in an area or areas of clearly defined limited access which is under surveillance by an employee or employees designated in writing as responsible for the area. "Limited access" may be provided, in the absence of physical dividers such as walls or partitions, by traffic control lines or restricted space designation. The employee designated as responsible for the area may be engaged in the particular manufacturing operation being conducted: *Provided,* That he is able to provide continuous surveillance of the area in order that unauthorized persons may not enter or leave the area without his knowledge.

(c) During the production of controlled substances, the manufacturing areas shall be accessible to only those employees required for efficient operation. When it is necessary for employee maintenance personnel, non-employee maintenance personnel, business guests, or visitors to be present in or pass through manufacturing areas during production of controlled substances, the registrant shall provide for adequate observation of the area by an employee specifically authorized in writing.

[36 FR. 18731, Sept. 21, 1971. Redesignated at 38 FR. 26609, Sept. 21, 1973 and amended at 39 FR.37984, Oct. 25, 1974]

§1301.74 Other security controls for non-practitioners; narcotic treatment programs and compounders for narcotic treatment programs.

(a) Before distributing a controlled substance to any person who the registrant does not know to be registered to possess the controlled substance, the registrant shall make a good faith inquiry either with the Administration or with the appropriate State controlled substances registration agency, if any, to determine that the person is registered to possess the controlled substance.

(b) The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

(c) The registrant shall notify the Field Division Office of the Administration in his area of any theft or significant loss of any controlled substances upon discovery of such theft or loss. The supplier shall be responsible for reporting in-transit losses of controlled substances by the common or contract carrier selected pursuant to §1301.74(e), upon discovery of such theft or loss. The registrant shall also complete DEA Form 106 regarding such theft or loss. Thefts must be reported whether or not the controlled substances are subsequently recovered and/or the responsible parties are identified and action taken against them.

(d) The registrant shall not distribute any controlled substance listed in Schedules II through V as a complimentary sample to any potential or current customer (1) without the prior written request of the customer, (2) to be used only for satisfying the legitimate medical needs of patients of the customer, and (3) only in reasonable quantities. Such request must contain the name, address, and registration number of the customer and the name and quantity of the specific controlled substance desired. The request shall be preserved by the registrant with other records of distribution of controlled substances. In addition, the requirements of part 1305 of the chapter shall be complied with for any distribution of a controlled substance listed in Schedule II. For purposes of this paragraph, the term "customer" includes a person to whom a complimentary sample of a substance is given in order to encourage the prescribing or recommending of the substance by the person.

(e) When shipping controlled substances, a registrant is responsible for selecting common or contract carriers which provide adequate security to guard against in-transit losses. When

39

§ 1301.75

storing controlled substances in a public warehouse, a registrant is responsible for selecting a warehouseman which will provide adequate security to guard against storage losses; wherever possible, the registrant shall store controlled substances in a public warehouse which complies with the requirements set forth in § 1301.72. In addition, the registrant shall employ precautions (e.g., assuring that shipping containers do not indicate that contents are controlled substances) to guard against storage or in-transit losses.

(f) When distributing controlled substances through agents (e.g., detailmen), a registrant is responsible for providing and requiring adequate security to guard against theft and diversion while the substances are being stored or handled by the agent or agents.

(g) Before the initial distribution of carfentanil etorphine hydrochloride and/or diprenorphine to any person, the registrant must verify that the person is authorized to handle the substances(s) by contacting the Drug Enforcement Administration.

(h) The acceptance of delivery of narcotic substances by a narcotic treatment program shall be made only by a licensed practitioner employed at the facility or other authorized individuals designated in writing. At the time of delivery, the licensed practitioner or other authorized individual designated in writing (excluding persons currently or previously dependent on narcotic drugs), shall sign for the narcotics and place his specific title (if any) on any invoice. Copies of these signed invoices shall be kept by the distributor.

(i) Narcotics dispensed or administered at a narcotic treatment program will be dispensed or administered directly to the patient by either (1) the licensed practitioner, (2) a registered nurse under the direction of the licensed practitioner, (3) a licensed practical nurse under the direction of the licensed practitioner, or (4) a pharmacist under the direction of the licensed practitioner.

(j) Persons enrolled in a narcotic treatment program will be required to wait in an area physically separated from the narcotic storage and dis-

21 CFR Ch. II (4–1–05 Edition)

pensing area. This requirement will be enforced by the program physician and employees.

(k) All narcotic treatment programs must comply with standards established by the Secretary of Health and Human Services (after consultation with the Administration) respecting the quantities of narcotic drugs which may be provided to persons enrolled in a narcotic treatment program for unsupervised use.

(l) DEA may exercise discretion regarding the degree of security required in narcotic treatment programs based on such factors as the location of a program, the number of patients enrolled in a program and the number of physicians, staff members and security guards. Similarly, such factors will be taken into consideration when evaluating existing security or requiring new security at a narcotic treatment program.

[36 FR 7778, Apr. 24, 1971; 36 FR 13386, July 21, 1971, as amended at 36 FR 18731, Sept. 21, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting § 1301.74, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and on GPO Access.

§ 1301.75 Physical security controls for practitioners.

(a) Controlled substances listed in Schedule I shall be stored in a securely locked, substantially constructed cabinet.

(b) Controlled substances listed in Schedules II, III, IV, and V shall be stored in a securely locked, substantially constructed cabinet. However, pharmacies and institutional practitioners may disperse such substances throughout the stock of noncontrolled substances in such a manner as to obstruct the theft or diversion of the controlled substances.

(c) This section shall also apply to nonpractitioners authorized to conduct research or chemical analysis under another registration.

(d) Carfentanil etorphine hydrochloride and diprenorphine shall be

40



**Drug Enforcement Administration, Justice**                    §1301.90

stored in a safe or steel cabinet equivalent to a U.S. Government Class V security container.

[39 FR 3674, Jan. 29, 1974, as amended at 39 FR 17838, May 21, 1974; 54 FR 33674, Aug. 16, 1989; 62 FR 13957, Mar. 24, 1997]

### §1301.76  Other security controls for practitioners.

(a) The registrant shall not employ, as an agent or employee who has access to controlled substances, any person who has been convicted of a felony offense relating to controlled substances or who, at any time, had an application for registration with the DEA denied, had a DEA registration revoked or has surrendered a DEA registration for cause. For purposes of this subsection, the term "for cause" means a surrender in lieu of, or as a consequence of, any federal or state administrative, civil or criminal action resulting from an investigation of the individual's handling of controlled substances.

(b) The registrant shall notify the Field Division Office of the Administration in his area of the theft or significant loss of any controlled substances upon discovery of such loss or theft. The registrant shall also complete DEA (or BND) Form 106 regarding such loss or theft.

(c) Whenever the registrant distributes a controlled substance (without being registered as a distributor, as permitted in §1301.13(e)(1) and/or §§1307.11–1307.12) he/she shall comply with the requirements imposed on non-practitioners in §1301.74 (a), (b), and (e).

(d) Central fill pharmacies must comply with §1301.74(e) when selecting private, common or contract carriers to transport filled prescriptions to a retail pharmacy for delivery to the ultimate user. When central fill pharmacies contract with private, common or contract carriers to transport filled prescriptions to a retail pharmacy, the central fill pharmacy is responsible for reporting in-transit losses upon discovery of such loss by use of a DEA Form 106. Retail pharmacies must comply with §1301.74(e) when selecting private, common or contract carriers to retrieve filled prescriptions from a central fill pharmacy. When retail pharmacies contract with private, common or contract carriers to retrieve filled prescriptions from a central fill pharmacy, the retail pharmacy is responsible for reporting in-transit losses upon discovery of such loss by use of a DEA Form 106.

[36 FR 7778, Apr. 24, 1971, as amended at 36 FR 13931, Sept. 21, 1971; 37 FR 15919, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973; 47 FR 41735, Sept. 22, 1982; 56 FR 36728, Aug. 1, 1991; 62 FR 13957, Mar. 24, 1997; 68 FR 37409, June 24, 2003]

### §1301.77  Security controls for freight forwarding facilities.

(a) All Schedule II–V controlled substances that will be temporarily stored at the freight forwarding facility must be either:

(1) stored in a segregated area under constant observation by designated responsible individual(s); or

(2) stored in a secured area that meets the requirements of Section 1301.72(b) of this Part. For purposes of this requirement, a facility that may be locked down (i.e., secured against physical entry in a manner consistent with requirements of Section 1301.72(b)(6)(ii) of this part) and has a monitored alarm system or is subject to continuous monitoring by security personnel will be deemed to meet the requirements of Section 1301.72(b)(3) of this Part.

(b) Access to controlled substances must be kept to an absolute minimum number of specifically authorized individuals. Non-authorized individuals may not be present in or pass through controlled substances storage areas without adequate observation provided by an individual authorized in writing by the registrant.

(c) Controlled substances being transferred through a freight forwarding facility must be packed in sealed, unmarked shipping containers.

[65 FR 44679, July 19, 2000; 65 FR 45829, July 25, 2000]

### EMPLOYEE SCREENING—NON-PRACTITIONERS

### §1301.90  Employee screening procedures.

It is the position of DEA that the obtaining of certain information by non-practitioners is vital to fairly assess



**§ 1301.91**

the likelihood of an employee committing a drug security breach. The need to know this information is a matter of business necessity, essential to overall controlled substances security. In this regard, it is believed that conviction of crimes and unauthorized use of controlled substances are activities that are proper subjects for inquiry. It is, therefore, assumed that the following questions will become a part of an employer's comprehensive employee screening program:

*Question.* Within the past five years, have you been convicted of a felony, or within the past two years, of any misdemeanor or are you presently formally charged with committing a criminal offense? (Do not include any traffic violations, juvenile offenses or military convictions, except by general court-martial.) If the answer is yes, furnish details of conviction, offense, location, date and sentence.

*Question.* In the past three years, have you ever knowingly used any narcotics, amphetamines or barbiturates, other than those prescribed to you by a physician? If the answer is yes, furnish details.

*Advice.* An authorization, in writing, that allows inquiries to be made of courts and law enforcement agencies for possible pending charges or convictions must be executed by a person who is allowed to work in an area where access to controlled substances clearly exists. A person must be advised that any false information or omission of information will jeopardize his or her position with respect to employment. The application for employment should inform a person that information furnished or recovered as a result of any inquiry will not necessarily preclude employment, but will be considered as part of an overall evaluation of the person's qualifications. The maintaining of fair employment practices, the protection of the person's right of privacy, and the assurance that the results of such inquiries will be treated by the employer in confidence will be explained to the employee.

[40 FR 17143, Apr. 17, 1975]

**§ 1301.91  Employee responsibility to report drug diversion.**

Reports of drug diversion by fellow employees is not only a necessary part of an overall employee security program but also serves the public interest at large. It is, therefore, the position of DEA that an employee who has knowledge of drug diversion from his employer by a fellow employee has an obligation to report such information

**21 CFR Ch. II (4-1-05 Edition)**

to a responsible security official of the employer. The employer shall treat such information as confidential and shall take all reasonable steps to protect the confidentiality of the information and the identity of the employee furnishing information. A failure to report information of drug diversion will be considered in determining the feasibility of continuing to allow an employee to work in a drug security area. The employer shall inform all employees concerning this policy.

[40 FR 17143, Apr. 17, 1975]

**§ 1301.92  Illicit activities by employees.**

It is the position of DEA that employees who possess, sell, use or divert controlled substances will subject themselves not only to State or Federal prosecution for any illicit activity, but shall also immediately become the subject of independent action regarding their continued employment. The employer will assess the seriousness of the employee's violation, the position of responsibility held by the employee, past record of employment, etc., in determining whether to suspend, transfer, terminate or take other action against the employee.

[40 FR 17143, Apr. 17, 1975]

**§ 1301.93  Sources of information for employee checks.**

DEA recommends that inquiries concerning employees' criminal records be made as follows:

*Local inquiries.* Inquiries should be made by name, date and place of birth, and other identifying information, to local courts and law enforcement agencies for records of pending charges and convictions. Local practice may require such inquiries to be made in person, rather than by mail, and a copy of an authorization from the employee may be required by certain law enforcement agencies.

*DEA inquiries.* Inquiries supplying identifying information should also be furnished to DEA Field Division Offices along with written consent from the concerned individual for a check of DEA files for records of convictions. The Regional check will result in a national check being made by the Field Division Office.

[40 FR 17143, Apr. 17, 1975, as amended at 47 FR 41735, Sept. 22, 1982]

42

Drug Enforcement Administration, Justice                    Pt. 1308

assure that the substance does not become available to unauthorized persons.

(c) In the event that a registrant is required regularly to *dispose of controlled substances*, the Special Agent in Charge may authorize the registrant to dispose of such substances, in accordance with paragraph (b) of this section, without prior approval of the Administration in each instance, on the condition that the registrant keep records of such disposals and file periodic reports with the Special Agent in Charge summarizing the disposals made by the registrant. In granting such authority, the Special Agent in Charge may place such conditions as he deems proper on the disposal of controlled substances, including the method *of disposal* and the frequency and detail of reports.

(d) This section shall not be construed as affecting or altering in any way the disposal of controlled substances through procedures provided in laws and regulations adopted by any State.

[36 FR 7801, Apr. 24, 1971, as amended at 37 FR 15922, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 47 FR 41735, Sept. 22, 1982; 62 FR 13967, Mar. 24, 1997]

§1307.22  Disposal of controlled substances by the Administration.

Any controlled substance delivered to the Administration under §1307.21 or forfeited pursuant to section 511 of the Act (21 U.S.C. 881) may be delivered to any department, bureau, or other agency of the United States or of any State upon proper application addressed to the Administrator, Drug Enforcement Administration, Department of Justice, Washington, DC 20537 The application shall show the name, address, and official title of the person or agency to whom the controlled drugs are to be delivered, including the name and quantity of the substances desired and the purpose for which intended. The delivery of such controlled drugs shall be ordered by the Administrator, if, in his opinion, there exists a medical or scientific need therefor.

[36 FR 7801, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, as amended at 62 FR 13967, Mar. 24, 1997]

SPECIAL EXEMPT PERSONS

§1307.31  Native American Church.

The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annually and to comply with all other requirements of law.

PART 1308—SCHEDULES OF CONTROLLED SUBSTANCES

GENERAL INFORMATION

Sec.
1308.01  Scope of part 1308.
1308.02  Definitions.
1308.03  Administration Controlled Substances Code Number.

SCHEDULES

1308.11  Schedule I.
1308.12  Schedule II.
1308.13  Schedule III.
1308.14  Schedule IV.
1308.15  Schedule V.

EXCLUDED NONNARCOTIC SUBSTANCES

1308.21  Application for exclusion of a nonnarcotic substance.
1308.22  Excluded substances.

EXEMPT CHEMICAL PREPARATIONS

1308.23  Exemption of certain chemical preparations; application.
1308.24  Exemption chemical preparations.

EXCLUDED VETERINARY ANABOLIC STEROID IMPLANT PRODUCTS

1308.25  Exclusion of a veterinary anabolic steroid implant product; application.
1308.26  Excluded veterinary anabolic steroid implant products.

EXEMPTED PRESCRIPTION PRODUCTS

1308.31  Application for exemption of a nonnarcotic prescription product.
1308.32  Exempted prescription products.

EXEMPT ANABOLIC STEROID PRODUCTS

1308.33  Exemption of certain anabolic steroid products; application.
1308.34  Exempt anabolic steroid products.

91

§ 1308.01                                    21 CFR Ch. II (4–1–05 Edition)

EXEMPT CANNABIS PLANT MATERIAL, AND
PRODUCTS MADE THEREFROM, THAT CONTAIN
TETRAHYDROCANNABINOLS

1308.35   Exemption of certain cannabis plant
material, and products made therefrom,
that contain tetrahydrocannabinols.

HEARINGS

1308.41   Hearings generally.
1308.42   Purpose of hearing.
1308.43   Initiation of proceedings for rule-
making.
1308.44   Request for hearing or appearance;
waiver.
1308.45   Final order.
1308.46   Control required under international
treaty.
1308.47   Control of immediate precursors.
1308.49   Emergency scheduling.

AUTHORITY: 21 U.S.C. 811, 812, 871(b), unless
otherwise noted.

SOURCE: 36 FR 8254, Mar. 30, 1978, unless
otherwise noted. Redesignated at 38 FR 26609,
Sept. 24, 1973.

GENERAL INFORMATION

§ 1308.01   Scope of part 1308.

Schedules of controlled substances
established by section 202 of the Act (21
U.S.C. 812), as they are changed, up-
dated, and republished from time to
time, are set forth in this part.

§ 1308.02   Definitions.

Any term contained in this part shall
have the definition set forth in section
102 of the Act (21 U.S.C. 802) or part
1300 of this chapter.

[62 FR 13957, Mar. 24, 1997]

§ 1308.03   Administration Controlled
Substances Code Number.

(a) Each controlled substance, or
basic class thereof, has been assigned
an "Administration Controlled Sub-
stances Code Number" for purposes of
identification of the substances or
class on certain Certificates of Reg-
istration issued by the Administration
pursuant to §§ 1301.35 of this chapter
and on certain order forms issued by
the Administration pursuant to
§ 1305.05(d) of this chapter. Applicants
for procurement and/or individual man-
ufacturing quotas must include the ap-
propriate code number on the applica-
tion as required in §§ 1303.12(b) and
1303.22(a) of this chapter. Applicants
for import and export permits must in-

clude the appropriate code number on
the application as required in
§§ 1312.12(a) and 1312.22(a) of this chap-
ter. Authorized registrants who desire
to import or export a controlled sub-
stance for which an import or export
permit is not required must include the
appropriate Administration Controlled
Substances Code Number beneath or
beside the name of each controlled sub-
stance listed on the DEA Form 236
(Controlled Substance Import/Export
Declaration) which is executed for such
importation or exportation as required
in §§ 1312.18(c) and 1312.27(b) of this
chapter.

(b) Except as stated in paragraph (a)
of this section, no applicant or reg-
istrant is required to use the Adminis-
tration Controlled Substances Code
Number for any purpose.

[36 FR 8254, Mar. 30, 1978. Redesignated at 38
FR 26609, Sept. 24, 1973 and amended at 61 FR
15315, Apr. 23, 1996; 62 FR 13968, Mar. 24, 1997]

SCHEDULES

§ 1308.11   Schedule I.

(a) Schedule I shall consist of the
drugs and other substances, by what-
ever official name, common or usual
name, chemical name, or brand name
designated, listed in this section. Each
drug or substance has been assigned
the DEA Controlled Substances Code
Number set forth opposite it.

(b) Opiates. Unless specifically ex-
cepted or unless listed in another
schedule, any of the following opiates,
including their isomers, esters, ethers,
salts, and salts of isomers, esters and
ethers, whenever the existence of such
isomers, esters, ethers and salts is pos-
sible within the specific chemical des-
ignation (for purposes of paragraph
(b)(34) only, the term isomer includes
the optical and geometric isomers):

| | | |
|---|---|---|
| (1) Acetyl-alpha-methylfentanyl    (N-[1-(1-methyl-2-phenethyl)-4-piperidinyl]-N-phenylacetamide) | 9815 |
| (2) Acetylmethadol | 9601 |
| (3) Allylprodine | 9602 |
| (4) Alphacetylmethadol (except levo-alphacetylmethadol also known as levo-alpha-acetylmethadol, levomethadyl acetate, or LAAM) | 9603 |
| (5) Alphameprodine | 9604 |
| (6) Alphamethadol | 9605 |
| (7) Alpha-methylfentanyl (N-[1-(alpha-methyl-beta-phenyl)ethyl-4-piperidyl] propionanilide; 1-(1-methyl-2-phenylethyl)-4-(N-propanilido) piperidine) | 9814 |
| (8) Alpha-methylthiofentanyl (N-[1-methyl-2-(2-thienyl)ethyl-4-piperidinyl]-N-phenylpropanamide) | 9832 |
| (9) Benzethidine | 9606 |
| (10) Betacetylmethadol | 9607 |

92

(11)  Beta-hy
phenethyl)-4-p
(12) Beta-hydro
(2-hydroxy-2-p
phenylpropane
(13) Betameprom
(14) Betamethad
(15) Betaprodine
(16) Clonitazene
(17) Dextromora
(18) Diampromid
(19) Diethylthiam
(20) Dimenin
(21) Dimenoxado
(22) Dimepheptan
(23) Dimethylthia
(24) Dioxaphetyl
(25) Dipipanone
(26) Ethylmethyl
(27) Etonitazene
(28) Etoxeridine
(29) Furethidine
(30) Hydroxypeth
(31) Ketobemido
(32) Levomoram
(33) Levophenac
(34) 3-Methylfer
piperidyl)-N-pl
(35)      3-met
thienyl)ethyl-4
(36) Morpheridir
(37) MPPP (1-m
(38) Noracymeth
(39) Norlevorpha
(40) Normethade
(41) Norpipanon
(42)    Para-fluo
phenethyl-4-
(43)        PEP
acetoxy)pipe
(44) Phenadoxo
(45) Phenampro
(46) Phenomorp
(47) Phenoperidi
(48) Piminodine
(49) Proheptazin
(50) Properidine
(51) Propiram ...
(52) Racemoram
(53)     Thiofent
piperidinyl)-pr
(54) Tilidine ....
(55) Trimeperidin

(c)   Opiu
orally exce
other sch
opium de
and salts
istence of
of isomer
cific chem
(1) Acetorphine
(2) Acetyldihyd
(3) Benzylmorp
(4) Codeine me
(5) Codeine-N-
(6) Cyprenorph
(7) Desomorph
(8) Dihydromor
(9) Drotebanol
(10) Etorphine
(11) Heroin ....
(12) Hydromorp

Drug Enforcement Administration, Justice

§ 1308.11

(11) Beta-hydroxyfentanyl    (N-[1-(2-hydroxy-2-phenethyl)-4-piperidinyl]-N-phenylpropanamide) .......... 9830
(12) Beta-hydroxy-3-methylfentanyl (other name: N-[1-(2-hydroxy-2-phenethyl)-3-methyl-4-piperidinyl]-N-phenylpropanamide .......... 9831
(13) Betameprodine .......... 9608
(14) Betamethadol .......... 9611
(15) Betaprodine .......... 9612
(16) Clonitazene .......... 9612
(17) Dextromoramide .......... 9613
(18) Diampromide .......... 9615
(19) Diethylthiambutene .......... 9168
(20) Difenoxin .......... 9617
(21) Dimenoxadol .......... 9618
(22) Dimepheptanol .......... 9619
(23) Dimethylthiambutene .......... 9619
(24) Dioxaphetyl butyrate .......... 9621
(25) Dipipanone .......... 9622
(26) Ethylmethylthiambutene .......... 9623
(27) Etonitazene .......... 9624
(28) Etoxeridine .......... 9625
(29) Furethidine .......... 9626
(30) Hydroxypethidine .......... 9627
(31) Ketobemidone .......... 9628
(32) Levomoramide .......... 9628
(33) Levophenacylmorphan .......... 9631
(34) 3-Methylfentanyl (N-[3-methyl-1-(2-phenylethyl)-4-piperidyl]-N-phenylpropanamide) .......... 9813
(35)  3-methylthiofentanyl    (N-[3-methyl-1-(2-thienyl)ethyl-4-piperidinyl]-N-phenylpropanamide) .......... 9833
(36) Morpheridine .......... 9632
(37) MPPP (1-methyl-4-phenyl-4-propionoxypiperidine) .......... 9661
(38) Noracymethadol .......... 9633
(39) Norlevorphanol .......... 9634
(40) Normethadone .......... 9635
(41) Norpipanone .......... 9636
(42)    Para-fluorofentanyl    (N-[4-fluorophenyl]-N-[1-(2-phenethyl)-4-piperidinyl] propanamide .......... 9812
(43)   PEPAP    (1-[2-phenethyl]-4-phenyl-4-acetoxypiperidine .......... 9663
(44) Phenadoxone .......... 9637
(45) Phenampromide .......... 9638
(46) Phenomorphan .......... 9647
(47) Phenoperidine .......... 9641
(48) Piritramide .......... 9642
(49) Proheptazine .......... 9643
(50) Properidine .......... 9644
(51) Propiram .......... 9649
(52) Racemoramide .......... 9645
(53)    Tilidine    (N-phenyl-N-[1-(2-thienyl)ethyl-4-piperidinyl)-propanamide .......... 9855
(54) Tilidine .......... 9750
(55) Trimeperidine .......... 9646

(c) *Opium derivatives.* Unless specifically excepted or unless listed in another schedule, any of the following opium derivatives, its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

(1) Acetorphine .......... 9319
(2) Acetyldihydrocodeine .......... 9051
(3) Benzylmorphine .......... 9052
(4) Codeine methylbromide .......... 9070
(5) Codeine-N-Oxide .......... 9053
(6) Cyprenorphine .......... 9054
(7) Desomorphine .......... 9055
(8) Dihydromorphine .......... 9145
(9) Drotebanol .......... 9335
(10) Etorphine (except hydrochloride salt) .......... 9056
(11) Heroin .......... 9200
(12) Hydromorphinol .......... 9301

(13) Methyldesorphine .......... 9302
(14) Methyldihydromorphine .......... 9304
(15) Morphine methylbromide .......... 9305
(16) Morphine methylsulfonate .......... 9306
(17) Morphine-N-Oxide .......... 9307
(18) Myrophine .......... 9308
(19) Nicocodeine .......... 9309
(20) Nicomorphine .......... 9312
(21) Normorphine .......... 9313
(22) Pholcodine .......... 9314
(23) Thebacon .......... 9315

(d) *Hallucinogenic substances.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation (for purposes of this paragraph only, the term "isomer" includes the optical, position and geometric isomers):

(1) Alpha-ethyltryptamine .......... 7249
Some trade or other names: etryptamine; Monase; a-ethyl-1H-indole-3-ethanamine; 3-(2-aminobutyl) indole; a-ET; and AET.
(2) 4-bromo-2,5-dimethoxy-amphetamine .......... 7391
Some trade or other names: 4-bromo-2,5-dimethoxy-a-methylphenethylamine; 4-bromo-2,5-DMA.
(3) 4-Bromo-2,5-dimethoxyphenethylamine .......... 7392
Some trade or other names: 2-(4-bromo-2,5-dimethoxyphenyl)-1-aminoethane; alpha-desmethyl DOB; 2C-B, Nexus.
(4) 2,5-dimethoxyamphetamine .......... 7396
Some trade or other names: 2,5-dimethoxy-a-methylphenethylamine; 2,5-DMA
(5) 2,5-dimethoxy-4-ethylamphet-amine .......... 7399
Some trade or other names: DOET
(6)    2,5-dimethoxy-4-(n)-propylthiophenethylamine    (other name: 2C-T-7) .......... 7348
(7) 4-methoxyamphetamine .......... 7411
Some trade or other names: 4-methoxy-a-methylphenethylamine; paramethoxyamphetamine, PMA
(8) 5-methoxy-3,4-methylenedioxy-amphetamine .......... 7401
(9) 4-methyl-2,5-dimethoxy-amphetamine .......... 7395
Some trade and other names: 4-methyl-2,5-dimethoxy-a-methylphenethylamine;   "DOM"; and "STP"
(10) 3,4-methylenedioxy amphetamine .......... 7400
(11) 3,4-methylenedioxymethamphetamine (MDMA) .......... 7405
(12)   3,4-methylenedioxy-N-ethylamphetamine    (also known    as    N-ethyl-alpha-methyl-3,4(methylenedioxy)phenethylamine, N-ethyl MDA, MDE, MDEA .......... 7404
(13)  N-hydroxy-3,4-methylenedioxyamphetamine (also known    as    N-hydroxy-alpha-methyl-3,4(methylenedioxy)phenethylamine, and N-hydroxy MDA .......... 7402
(14) 3,4,5-trimethoxy amphetamine .......... 7390
(15) Alpha-methyltryptamine (other name: AMT) .......... 7432
(16) Bufotenine .......... 7433
Some    trade    and    other    names: 3-(β-Dimethylaminoethyl)-5-hydroxyindole; 3-(2-dimethylaminoethyl)-5-indolol; N, N-dimethylserotonin; 5-hydroxy-N,N-dimethyltryptamine; mappine .......... 7434
(17) Diethyltryptamine .......... 7434

93

Case 1:06-cv-00966-CKK    Document 46    Filed 06/13/2006    Page 50 of 119   A.R. 49

designated, listed in this section. Each drug or substance has been assigned the Controlled Substances Code Number set forth opposite it.

(b) *Substances, vegetable origin or chemical synthesis.* Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(1) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate excluding apomorphine, thebaine-derived butorphanol, dextrorphan, nalbuphine, nalmefene, naloxone, and naltrexone, and their respective salts, but including the following:

| | |
|---|---|
| (1) Raw opium | 9600 |
| (2) Opium extracts | 9610 |
| (3) Opium fluid | 9620 |
| (4) Powdered opium | 9639 |
| (5) Granulated opium | 9640 |
| (6) Tincture of opium | 9630 |
| (7) Codeine | 9050 |
| (8) Dihydroetorphine | 9384 |
| (9) Ethylmorphine | 9190 |
| (10) Etorphine hydrochloride | 9059 |
| (11) Hydrocodone | 9193 |
| (12) Hydromorphone | 9150 |
| (13) Metopon | 9260 |
| (14) Morphine | 9300 |
| (15) Oxycodone | 9143 |
| (16) Oxymorphone | 9652 |
| (17) Thebaine | 9333 |

(2) Any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of the substances referred to in paragraph (b) (1) of this section, except that these substances shall not include the isoquinoline alkaloids of opium.

(3) Opium poppy and poppy straw.

(4) Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (*including cocaine* (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

(5) Concentrate of poppy straw (the crude extract of poppy straw in either liquid, solid or powder form which contains the phenanthrene alkaloids of the opium poppy), 9670.

(c) *Opiates.* Unless specifically excepted or unless in another schedule any of the following opiates, including its isomers, esters, ethers, salts and salts of isomers, esters and ethers whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation, dextrorphan and levopropoxyphene excepted:

| | |
|---|---|
| (1) Alfentanil | 9737 |
| (2) Alphaprodine | 9010 |
| (3) Anileridine | 9020 |
| (4) Bezitramide | 9800 |
| (5) Bulk dextropropoxyphene (non-dosage forms) | 9273 |
| (6) Carfentanil | 9743 |
| (7) Dihydrocodeine | 9120 |
| (8) Diphenoxylate | 9170 |
| (9) Fentanyl | 9801 |
| (10) Isomethadone | 9226 |
| (11) Levo-alphacetylmethadol | 9648 |
| [Some other names: levo-alpha-acetylmethadol, levomethadyl acetate, LAAM] | |
| (12) Levomethorphan | 9210 |
| (13) Levorphanol | 9220 |
| (14) Metazocine | 9240 |
| (15) Methadone | 9250 |
| (16) Methadone-Intermediate, 4-cyano-2-dimethylamino-4,4-diphenyl butane | 9254 |
| (17) Moramide-Intermediate, 2-methyl-3-morpholino-1, 1-diphenylpropane-carboxylic acid | 9802 |
| (18) Pethidine (meperidine) | 9230 |
| (19) Pethidine-Intermediate-A, 4-cyano-1-methyl-4-phenylpiperidine | 9232 |
| (20) Pethidine-Intermediate-B, ethyl-4-phenylpiperidine-4-carboxylate | 9233 |
| (21) Pethidine-Intermediate-C, 1-methyl-4-phenylpiperidine-4-carboxylic acid | 9234 |
| (22) Phenazocine | 9715 |
| (23) Piminodine | 9730 |
| (24) Racemethorphan | 9732 |
| (25) Racemorphan | 9733 |
| (26) Remifentanil | 9739 |
| (27) Sufentanil | 9740 |

(d) *Stimulants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:

| | |
|---|---|
| (1) Amphetamine, its salts, optical isomers, and salts of its optical isomers | 1100 |
| (2) Methamphetamine, its salts, isomers, and salts of its isomers | 1105 |
| (3) Phenmetrazine and its salts | 1631 |
| (4) Methylphenidate | 1724 |

(e) *Depressants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a depressant effect on the central nervous system, including

§ 1308.13                                    21 CFR Ch. II (4-1-05 Edition)

its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

| (1) Amobarbital | 2125 |
| (2) Glutethimide | 2550 |
| (3) Pentobarbital | 2270 |
| (4) Phencyclidine | 7471 |
| (5) Secobarbital | 2315 |

(f) *Hallucinogenic substances.*

(1) Nabilone _____ 7379
[Another name for nabilone: (±)-*trans*-3-(1,1-dimethylheptyl)-6,6a,7,8,10,10a-hexahydro-1-hydroxy-6,6-dimethyl-9H-dibenzo[b,d]pyran-9-one]

(g) *Immediate precursors.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances:

(1) Immediate precursor to amphetamine and methamphetamine:

(i) Phenylacetone _____ 8501
Some trade or other names: phenyl-2-propanone; P2P; benzyl methyl ketone; methyl benzyl ketone;

(2) Immediate precursors to phencyclidine (PCP):

(i) 1-phenylcyclohexylamine _____ 7460
(ii) 1-piperidinocyclohexanecarbonitrile (PCC) _____ 8603

[39 FR 22142, June 20, 1974]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting § 1308.12, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and on GPO Access.

§ 1308.13  Schedule III.

(a) Schedule III shall consist of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section. Each drug or substance has been assigned the DEA Controlled Substances Code Number set forth opposite it.

(b) *Stimulants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers (whether optical, position, or geometric), and salts of such isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

(1) Those compounds, mixtures, or preparations in dosage unit form containing any stimulant substances listed in schedule II which compounds, mixtures, or preparations were listed on August 25, 1971, as excepted compounds under § 1308.32, and any other drug of the quantitative composition shown in that list for those drugs or which is the same except that it contains a lesser quantity of controlled substances _____ 1405
(2) Benzphetamine _____ 1228
(3) Chlorphentermine _____ 1645
(4) Clortermine _____ 1647
(5) Phendimetrazine _____ 1615

(c) *Depressants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a depressant effect on the central nervous system:

(1) Any compound, mixture or preparation containing:

(i) Amobarbital _____ 2125
(ii) Secobarbital _____ 2316
(iii) Pentobarbital _____ 2271
or any salt thereof and one or more other active medicinal ingredients which are not listed in any schedule.

(2) Any suppository dosage form containing:

(i) Amobarbital _____ 2126
(ii) Secobarbital _____ 2316
(iii) Pentobarbital _____ 2271
or any salt of any of these drugs and approved by the Food and Drug Administration for marketing only as a suppository.

(3) Any substance which contains any quantity of a derivative of barbituric acid or any salt thereof _____ 2100
(4) Chlorhexadol _____ 2510
(5) Any drug product containing gamma hydroxybutyric acid, including its salts, isomers, and salts of isomers, for which an application is approved under section 505 of the Federal Food, Drug, and Cosmetic Act _____ 2012
(6) Ketamine, its salts, isomers, and salts of isomers _____ 7285
[Some other names for ketamine: (±)-2-(2-chlorophenyl)-2-(methylamino)-cyclohexanone]
(7) Lysergic acid _____ 7300
(8) Lysergic acid amide _____ 7310
(9) Methyprylon _____ 2575
(10) Sulfondiethylmethane _____ 2600
(11) Sulfonethylmethane _____ 2605
(12) Sulfonmethane _____ 2610
(13) Tiletamine and zolazepam or any salt thereof _____ 7295
Some trade or other names for a tiletamine-zolazepam combination product:
Telazol..
Some trade or other names for tiletamine:
2-(ethylamino)-2-(2-thienyl)-cyclohexanone..
Some trade or other names for zolazepam:
4-(2-fluorophenyl)-6,8-dihydro-1,3,8-trimethylpyrazolo-[3,4-e]  (1,4)-diazepin-7(1H)-one, flupyrazapon..

(d) Nalorphine 9400.

(e) *Narcotic drugs.* Unless specifically excepted or unless listed in another schedule:

96

Drug Enfor

(1) Any material
containing any
their salts subs
alkaloid, in limit
(i) Not 1
100 r
grams
greate
of opi
(ii) Not
100 r
grams
active
nized
(iii) Not
dihydr
milligr
per d
quant
opium
(iv) N
dihydr
millim
per d
nonna
therap
(v) N
dihydr
more
with d
dients
(vi) No
ethyd
more
with d
dients
(vii) No
per 1
more
with d
dients
(viii) No
per 1
one o
In rec
(2) Any mixtu
containing an
their salts, co
(i) Bupr
(ii) [Res

(f) *Anat
cally exce
other sch
pound, m
taining ar
substances
and salts
istence of
sible with
ignation:

(1) Anabolic

(g) *Ha
Dronabinc
and encap
sule in a l
tration ap

[Some oth
trans)-6a,7,8

**Drug Enforcement Administration, Justice**　　　　　　　　　　**§ 1308.14**

(1) Any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities as set forth below:

　(i) Not more than 1.8 grams of codeine per 100 milliliters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium .................................................. 9803

　(ii) Not more than 1.8 grams of codeine per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts .................. 9804

　(iii) Not more than 300 milligrams of dihydrocodeinone (hydrocodone) per 100 milliliters or not more than 15 milligrams per dosage unit, with a fourfold or greater quantity of an isoquinoline alkaloid of opium .................................................. 9805

　(iv) Not more than 300 milligrams of dihydrocodeinone (hydrocodone) per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active nonnarcotic ingredients in recognized therapeutic amounts .................................................. 9806

　(v) Not more than 1.8 grams of dihydrocodeine per 100 milliliters or not more than 90 milligrams per dosage unit, with one or more active nonnarcotic ingredients in recognized therapeutic amounts .... 9807

　(vi) Not more than 300 milligrams of ethylmorphine per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts .... 9808

　(vii) Not more than 500 milligrams of opium per 100 milliliters or per 100 grams or not more than 25 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts ... 9809

　(viii) Not more than 50 milligrams of morphine per 100 milliliters or per 100 grams, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts .................................................. 9810

(2) Any material, compound, mixture, or preparation containing any of the following narcotic drugs or their salts, as set forth below:

　(i) Buprenorphine .................................................. 9064

　(ii) [Reserved].

(f) *Anabolic steroids.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any quantity of the following substances, including its salts, isomers, and salts of isomers whenever the existence of such salts of isomers is possible within the specific chemical designation:

　(1) Anabolic Steroids .................................................. 4000

(g) *Hallucinogenic substances.* (1) Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a U.S. Food and Drug Administration approved product—7369.

[Some other names for dronabinol: (6aR-trans)-6a,7,8,10a-tetrahydro-6,6,9-trimethyl-3-

pentyl-6H-dibenzo [b,d]pyran-1-ol] or (-)-delta-9-(trans)-tetrahydrocannabinol]

　(2) [Reserved]

[39 FR 22142, June 20, 1974, as amended at 41 FR 43401, Oct. 1, 1976; 43 FR 3350, Jan. 25, 1978; 44 FR 40888, July 13, 1979; 46 FR 52335, Oct. 27, 1981; 51 FR 5320, Feb. 13, 1986; 52 FR 2222, Jan. 21, 1987; 52 FR 6852, Feb. 27, 1987; 56 FR 5754, Feb. 13, 1991; 56 FR 11832, Mar. 21, 1991; 62 FR 13966, Mar. 24, 1997; 64 FR 35930, July 2, 1999; 64 FR 37675, July 13, 1999; 65 FR 13235, Mar. 13, 2000; 65 FR 17440, Apr. 3, 2000; 67 FR 62370, Oct. 7, 2002]

**§ 1308.14  Schedule IV.**

(a) Schedule IV shall consist of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section. Each drug or substance has been assigned the DEA Controlled Substances Code Number set forth opposite it.

(b) *Narcotic drugs.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities as set forth below:

(1) Not more than 1 milligram of difenoxin and not less than 25 micrograms of atropine sulfate per dosage unit .................................................. 9167

(2) Dextropropoxyphene [alpha-(+)-4-dimethylamino-1,2-diphenyl-3-methyl-2-propionoxybutane] ........ 9278

(c) *Depressants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

| | |
|---|---|
| (1) Alprazolam | 2882 |
| (2) Barbital | 2145 |
| (3) Bromazepam | 2748 |
| (4) Camazepam | 2749 |
| (5) Chloral betaine | 2460 |
| (6) Chloral hydrate | 2465 |
| (7) Chlordiazepoxide | 2744 |
| (8) Clobazam | 2751 |
| (9) Clonazepam | 2737 |
| (10) Clorazepate | 2768 |
| (11) Clotiazepam | 2752 |
| (12) Cloxazolam | 2753 |
| (13) Delorazepam | 2754 |
| (14) Diazepam | 2765 |
| (15) Dichloralphenazone | 2467 |
| (16) Estazolam | 2768 |
| (17) Ethchlorvynol | 2540 |
| (18) Ethinamate | 2545 |

97

## §1308.15                                          21 CFR Ch. II (4–1–05 Edition)

| (19) Ethyl loflazepate | 2755 |
| (20) Fludiazepam | 2759 |
| (21) Flunitrazepam | 2763 |
| (22) Flurazepam | 2767 |
| (23) Halazepam | 2762 |
| (24) Haloxazolam | 2771 |
| (25) Ketazolam | 2772 |
| (26) Loprazolam | 2773 |
| (27) Lorazepam | 2885 |
| (28) Lormetazepam | 2774 |
| (29) Mebutamate | 2800 |
| (30) Medazepam | 2836 |
| (31) Meprobamate | 2820 |
| (32) Methohexital | 2264 |
| (33) Methylphenobarbital (mephobarbital) | 2250 |
| (34) Midazolam | 2884 |
| (35) Nimetazepam | 2837 |
| (36) Nitrazepam | 2834 |
| (37) Nordiazepam | 2838 |
| (38) Oxazepam | 2835 |
| (39) Oxazolam | 2839 |
| (40) Paraldehyde | 2585 |
| (41) Petrichloral | 2591 |
| (42) Phenobarbital | 2285 |
| (43) Pinazepam | 2883 |
| (44) Prazepam | 2764 |
| (45) Quazepam | 2881 |
| (46) Temazepam | 2925 |
| (47) Tetrazepam | 2886 |
| (48) Triazolam | 2887 |
| (49) Zaleplon | 2781 |
| (50) Zolpidem | 2783 |

(d) *Fenfluramine.* Any material, compound, mixture, or preparation which contains any quantity of the following substances, including its salts, isomers (whether optical, position, or geometric), and salts of such isomers, whenever the existence of such salts, isomers, and salts of isomers is possible:

| (1) Fenfluramine | 1670 |

(e) *Stimulants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers and salts of isomers:

| (1) Cathine ((+)-norpseudoephedrine) | 1230 |
| (2) Diethylpropion | 1610 |
| (3) Fencamfamin | 1760 |
| (4) Fenproporex | 1575 |
| (5) Mazindol | 1605 |
| (6) Mefenorex | 1580 |
| (7) Modafinil | 1680 |
| (8) Pemoline (including organometallic complexes and chelates thereof) | 1530 |
| (9) Phentermine | 1640 |
| (10) Pipradrol | 1750 |
| (11) Sibutramine | 1675 |
| (12) SPA ((−)-1-dimethylamino- 1,2-diphenylethane) | 1535 |

(f) *Other substances.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which

---

contains any quantity of the following substances, including its salts:

| (1) Pentazocine | 9709 |
| (2) Butorphanol (including its optical isomers) | 9720 |

[39 FR 22145, June 20, 1974]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting §1308.14, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and on GPO Access.

## §1308.15   Schedule V.

(a) Schedule V shall consist of the drugs and other substances, by whatever official name, common or usual name, chemical name, or brand name designated, listed in this section.

(b) *Narcotic drugs.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation containing any of the following narcotic drugs and their salts, as set forth below:

(1) [Reserved]

(c) *Narcotic drugs containing non-narcotic active medicinal ingredients.* Any compound, mixture, or preparation containing any of the following narcotic drugs, or their salts calculated as the free anhydrous base or alkaloid, in limited quantities as set forth below, which shall include one or more non-narcotic active medicinal ingredients in sufficient proportion to confer upon the compound, mixture, or preparation valuable medicinal qualities other than those possessed by narcotic drugs alone:

(1) Not more than 200 milligrams of codeine per 100 milliliters or per 100 grams.

(2) Not more than 100 milligrams of dihydrocodeine per 100 milliliters or per 100 grams.

(3) Not more than 100 milligrams of ethylmorphine per 100 milliliters or per 100 grams.

(4) Not more than 2.5 milligrams of diphenoxylate and not less than 25 micrograms of atropine sulfate per dosage unit.

(5) Not more than 100 milligrams of opium per 100 milliliters or per 100 grams.

(6) Not more than 0.5 milligram of difenoxin and not less than 25 micrograms of atropine sulfate per dosage unit.

98

---

Drug Enforc

(d) *Stimul...*
empted or
another sc
pound, mix
contains an
substances
on the cent
ing its salt
mers:

(1) Pyrovaler
(2) [Reserved]

[39 FR 22145,
FR 38893, Au
1979; 47 FR 49
28, 1985; 53 FF
Apr. 4, 1989;
62370, Oct. 7,

EXCLUDED

§1308.21   A
nonnar

(a) Any p
nonnarcotic
under the F
metic Act
sold over
scription, t
pursuant to
(21 U.S.C. 8
Administra
ministratio
Washingto

(b) An a
under this
lowing info
(1) The n
plicant;
(2) The
which excl
(3) The
position of

(c) With
time after
for an exclu
Administra
cant of hi
ance of hi
cepted, th
ministrato

---

Compa

Bioline Laborato
Goldline Laborat
Goldline Laborat
Hawthorne Prod
Parke-Davis & C

(d) *Stimulants.* Unless specifically exempted or excluded or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system, including its salts, isomers and salts of isomers:

(1) Pyrovalerone ......................................1485.
(2) [Reserved]

[39 FR 22143, June 20, 1974, as amended at 43 FR 38383, Aug. 28, 1978; 44 FR 40988, July 13, 1979; 47 FR 43941, Nov. 8, 1982; 50 FR 8108, Feb. 28, 1985; 52 FR 5952, Feb. 27, 1987; 53 FR 10870, Apr. 4, 1988; 56 FR 61372, Dec. 3, 1991; 67 FR 63370, Oct. 7, 2002]

EXCLUDED NONNARCOTIC SUBSTANCES

§ 1308.21  Application for exclusion of a nonnarcotic substance.

(a) Any person seeking to have any nonnarcotic substance which may, under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301), be lawfully sold over the counter without a prescription, excluded from any schedule, pursuant to section 201(g) (1) of the Act (21 U.S.C. 811 (g) (1)), may apply to the Administrator, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(b) An application for an exclusion under this section shall contain the following information:

(1) The name and address of the applicant;

(2) The name of the substance for which exclusion is sought; and

(3) The complete quantitative composition of the substance.

(c) Within a reasonable period of time after the receipt of an application for an exclusion under this section, the Administrator shall notify the applicant of his acceptance or nonacceptance of his application, and if not accepted, the reason therefore. The Administrator need not accept an applica-

tion for filing if any of the requirements prescribed in paragraph (b) of this section is lacking or is not set forth as to be readily understood. If the applicant desires, he may amend the application to meet the requirements of paragraph (b) of this section. If the application is accepted for filing, the Administrator shall issue and publish in the FEDERAL REGISTER his order on the application, which shall include a reference to the legal authority under which the order is issued and the findings of fact and conclusions of law upon which the order is based. This order shall specify the date on which it shall take effect. The Administrator shall permit any interested person to file written comments on or objections to the order within 60 days of the date of publication of his order in the FEDERAL REGISTER. If any such comments or objections raise significant issues regarding any finding of fact or conclusion of law upon which the order is based, the Administrator shall immediately suspend the effectiveness of the order until he may reconsider the application in light of the comments and objections filed. Thereafter, the Administrator shall reinstate, revoke, or amend his original order as he determines appropriate.

(d) The Administrator may at any time revoke any exclusion granted pursuant to section 201(g) of the Act (21 U.S.C. 811(g)) by following the procedures set forth in paragraph (c) of this section for handling an application for an exclusion which has been accepted for filing.

§ 1308.22  Excluded substances.

The following nonnarcotic substances which may, under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301), be lawfully sold over the counter without a prescription, are excluded from all schedules pursuant to section 201(g) (1) of the Act (21 U.S.C. 811(g) (1)):

EXCLUDED NONNARCOTIC PRODUCTS

| Company | Trade name | NDC code | Form | Controlled substance | (mg or mg/ ml) |
|---|---|---|---|---|---|
| Bioline Laboratories .......... | Theophed ............. | 00718-1045 | TB | Phenobarbital ..................... | 8.00 |
| Goldline Laboratories ........ | Guaphed Elixir ......... | 00182-1377 | EL | Phenobarbital ..................... | 4.00 |
| Goldline Laboratories ........ | Tedrigen Tablets ...... | 00182-0134 | TB | Phenobarbital ..................... | 8.00 |
| Hawthorne Products Inc .... | Choate's Leg Freeze ... | | LQ | Chloral hydrate ................... | 245.67 |
| Parke-Davis & Co ............ | Tedral ............... | 00071-0230 | TB | Phenobarbital ..................... | 8.00 |

99

-05 Edition)

§ 1308.23                                              21 CFR Ch. II (4-1-05 Edition)

EXCLUDED NONNARCOTIC PRODUCTS—Continued

| Company | Trade name | NDC code | Form | Controlled substance | (mg or mg/ml) |
|---|---|---|---|---|---|
| Parke-Davis & Co ............ | Tedral Elixir ................... | 00071-0242 | EX | Phenobarbital ............... | 40.00 |
| Parke-Davis & Co ............ | Tedral S.A. ..................... | 00071-0231 | TB | Phenobarbital ............... | 8.00 |
| Parke-Davis & Co ............ | Tedral Suspension .......... | 00071-0237 | SU | Phenobarbital ............... | 80.00 |
| Panned Pharmacy ............ | Asma-Ese ....................... | 00349-2019 | TB | Phenobarbital ............... | 8.10 |
| Rondex Labs ................... | Azma-Aids ...................... | 00367-3153 | TB | Phenobarbital ............... | 8.00 |
| Smith Kline Consumer ..... | Benzedrex ...................... | 49692-0028 | IN | Propylhexedrine ............ | 250.00 |
| Sterling Drug, Inc ........... | Bronkolixir ..................... | 00057-1004 | EL | Phenobarbital ............... | 0.80 |
| Sterling Drug, Inc ........... | Bronkotabs ..................... | 00057-1006 | TB | Phenobarbital ............... | 8.00 |
| Vicks Chemical Co ........... | Vicks Inhaler .................. | 23900-0010 | IN | l-Desoxyephedrine .......... | 113.00 |
| White Hall Labs .............. | Primatene (P-tablets) ..... | 00573-2940 | TB | Phenobarbital ............... | 8.00 |

[36 FR 8265, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 41 FR. 15553, Apr. 20, 1976; 41 FR 53677, Dec. 7, 1976; 46 FR 51603, Oct. 21, 1981; 47 FR 45667, Oct. 14, 1982; 54 FR 2100, Jan. 18, 1989; 55 FR 12162, Mar. 30, 1990; 62 FR 13963, Mar. 24, 1997]

EXEMPT CHEMICAL PREPARATIONS

§ 1308.23  Exemption of certain chemical preparations; application.

(a) The Administrator may, by regulation, exempt from the application of all or any part of the Act any chemical preparation or mixture containing one or more controlled substances listed in any schedule, which preparation or mixture is intended for laboratory, industrial, educational, or special research purposes and not for general administration to a human being or other animal, if the preparation or mixture either:

(1) Contains no narcotic controlled substance and is packaged in such a form or concentration that the packaged quantity does not present any significant potential for abuse (the type of packaging and the history of abuse of the same or similar preparations may be considered in determining the potential for abuse of the preparation or mixture); or

(2) Contains either a narcotic or nonnarcotic controlled substance and one or more adulterating or denaturing agents in such a manner, combination, quantity, proportion, or concentration, that the preparation or mixture does not present any potential for abuse. If the preparation or mixture contains a narcotic controlled substance, the preparation or mixture must be formulated in such a manner that it incorporates methods of denaturing or other means so that the preparation or mixture is not liable to be abused or have ill effects, if abused, and so that the

narcotic substance cannot in practice be removed.

(b) Any person seeking to have any preparation or mixture containing a controlled substance and one or more noncontrolled substances exempted from the application of all or any part of the Act, pursuant to paragraph (a) of this section, may apply to the Administrator, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(c) An application for an exemption under this section shall contain the following information:

(1) The name, address, and registration number, if any, of the applicant;

(2) The name, address, and registration number, if any, of the manufacturer or importer of the preparation or mixture, if not the applicant;

(3) The exact trade name or other designation of the preparation or mixture;

(4) The complete qualitative and quantitative composition of the preparation or mixture (including all active and inactive ingredients and all controlled and noncontrolled substances);

(5) The form of the immediate container in which the preparation or mixture will be distributed with sufficient descriptive detail to identify the preparation or mixture (e.g., bottle, packet, vial, soft plastic pillow, agar gel plate, etc.);

(6) The dimensions or capacity of the immediate container of the preparation or mixture;

(7) The :
in part 13
mediate c
containers
or mixture

(8) A b
which the
granting
paragraph
the use t
mixture w

(9) The c

(10) Wh
mitted or
deemed b;
secret or t
titled to
402(b)(8) o
or any oth
closure of

(d) The
the appli
ments or
relevant t
necessary
plication

(e) Wit
time after
for an ex
the Admi
plicant of
ance of h
cepted, t
ministrat
tion for
ments pre
quested
lacking c
readily u
sires, he r
meet the
(c) and (d
cation is
ministrat
the FEDE
applicatic
erence t
which th
shall spec
take effe
permit a
written c
the order
publicatic
REGISTER
jections r
ing any f
law upon
Administ

(7) The label and labeling, as defined in part 1300 of this chapter, of the immediate container and the commercial containers, if any, of the preparation or mixture;

(8) A brief statement of the facts which the applicant believes justify the granting of an exemption under this paragraph, including information on the use to which the preparation or mixture will be put;

(9) The date of the application; and

(10) Which of the information submitted on the application, if any, is deemed by the applicant to be a trade secret or otherwise confidential and entitled to protection under subsection 402(a)(8) of the Act (21 U.S.C. 842(a)(8)) or any other law restricting public disclosure of information.

(d) The Administrator may require the applicant to submit such documents or written statements of fact relevant to the application as he deems necessary to determine whether the application should be granted.

(e) Within a reasonable period of time after the receipt of an application for an exemption under this section, the Administrator shall notify the applicant of his acceptance or nonacceptance of his application, and if not accepted, the reason therefor. The Administrator need not accept an application for filing if any of the requirements prescribed in paragraph (c) or requested pursuant to paragraph (d) is lacking or is not set forth as to be readily understood. If the applicant desires, he may amend the application to meet the requirements of paragraphs (c) and (d) of this section. If the application is accepted for filing, the Administrator shall issue and publish in the FEDERAL REGISTER his order on the application, which shall include a reference to the legal authority under which the order is based. This order shall specify the date on which it shall take effect. The Administrator shall permit any interested person to file written comments on or objections to the order within 60 days of the date of publication of his order in the FEDERAL REGISTER. If any such comments or objections raise significant issues regarding any finding of fact or conclusion of law upon which the order is based, the Administrator shall immediately sus-

pend the effectiveness of the order until he may reconsider the application in light of the comments and objections filed. Thereafter, the Administrator shall reinstate, revoke, or amend his original order as he determines appropriate.

(f) The Administrator may at any time revoke or modify any exemption granted pursuant to this section by following the procedures set forth in paragraph (e) of this section for handling an application for an exemption which has been accepted for filing. The Administrator may also modify or revoke the criteria by which exemptions are granted (and thereby modify or revoke all preparations and mixtures granted under the old criteria) and modify the scope of exemptions at any time.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 46 FR 28841, May 29, 1981; 62 FR 13968, Mar. 24, 1997]

§ 1308.24   Exempt chemical preparations.

(a) The chemical preparations and mixtures approved pursuant to § 1308.23 are exempt from application of sections 302, 303, 305, 306, 307, 308, 309, 1002, 1003 and 1004 of the Act (21 U.S.C. 822–823, 825–829, 952–954) and § 1301.74 of this chapter, to the extent described in paragraphs (b) to (h) of this section. Substances set forth in paragraph (j) of this section shall be exempt from the application of sections 305, 306, 307, 308, 309, 1002, 1003 and 1004 of the Act (21 U.S.C. 825–829, 952–954) and §§ 1301.71–1301.73 and 1301.74 (a), (b), (d), (e) and (f) of this chapter to the extent as hereinafter may be provided.

(b) Registration and security: Any person who manufactures an exempt chemical preparation or mixture must be registered under the Act and comply with all relevant security requirements regarding controlled substances being used in the manufacturing process until the preparation or mixture is in the form described in paragraph (i) of this section. Any other person who handles an exempt chemical preparation after it is in the form described in paragraph (i) of this section is not required to be registered under the Act to handle that preparation, and the preparation is not required to be stored

101

**§ 1308.24**

in accordance with security requirements regarding controlled substances.

(c) Labeling: In lieu of the requirements set forth in part 1302 of this chapter, the label and the labeling of an exempt chemical preparation must be prominently marked with its full trade name or other description and the name of the manufacturer or supplier as set forth in paragraph (i) of this section, in such a way that the product can be readily identified as an exempt chemical preparation. The label and labeling must also include in a prominent manner the statement "For industrial use only" or "For chemical use only" or "For in vitro use only—not for human or animal use" or "Diagnostic reagent—for professional use only" or a comparable statement warning the person reading it that human or animal use is not intended. The symbol designating the schedule of the controlled substance is not required on either the label or the labeling of the exempt chemical preparation, nor is it necessary to list all ingredients of the preparation.

(d) Records and reports: Any person who manufactures an exempt chemical preparation or mixture must keep complete and accurate records and file all reports required under part 1304 of this chapter regarding all controlled substances being used in the manufacturing process until the preparation or mixture is in the form described in paragraph (i) of this section. In lieu of records and reports required under part 1304 of this chapter regarding exempt chemical preparations, the manufacturer need only record the name, address, and registration number, if any, of each person to whom the manufacturer distributes any exempt chemical preparation. Each importer or exporter of an exempt narcotic chemical preparation must submit a semiannual report of the total quantity of each substance imported or exported in each calendar half-year within 30 days of the close of the period to the Drug and Chemical Evaluation Section, Drug Enforcement Administration, Department of Justice, Washington, DC 20537. Any other person who handles an exempt chemical preparation after it is in the form described in paragraph (i) of this

section is not required to maintain records or file reports.

(e) Quotas, order forms, prescriptions, import, export, and transshipment requirements: Once an exempt chemical preparation is in the form described in paragraph (i) of this section, the requirements regarding quotas, order forms, prescriptions, import permits and declarations, export permit and declarations, and transshipment and intransit permits and declarations do not apply. These requirements do apply, however, to any controlled substances used in manufacturing the exempt chemical preparation before it is in the form described in paragraph (i) of this section.

(f) Criminal penalties: No exemption granted pursuant to § 1308.23 affects the criminal liability for illegal manufacture, distribution, or possession of controlled substances contained in the exempt chemical preparation. Distribution, possession, and use of an exempt chemical preparation are lawful for registrants and nonregistrants only as long as such distribution, possession, or use is intended for laboratory, industrial, or educational purposes and not for immediate or subsequent administration to a human being or other animal.

(g) Bulk materials: For materials exempted in bulk quantities, the Administrator may prescribe requirements other than those set forth in paragraphs (b) through (e) of this section on a case-by-case basis.

(h) Changes in chemical preparations: Any change in the quantitative or qualitative composition of the preparation or mixture after the date of application, or change in the trade name or other designation of the preparation or mixture, set forth in paragraph (i) of this section, requires a new application for exemption.

(i) A listing of exempt chemical preparations may be obtained by submitting a written request to the Drug and Chemical Evaluation Section, Drug Enforcement Administration, Washington, DC 20537.

(j) The following substances are designated as exempt chemical preparations for the purposes set forth in this section.

**Drug Enforcement Administration, Justice**                    **§ 1308.25**

(1) *Chloral.* When packaged in a sealed, oxygen-free environment under nitrogen pressure, safeguarded against exposure to the air.

(2) *Smith Phenobarbital Enzyme Reagent B.* In one liter quantities each with a 5 ml. retention sample for repackaging as an exempt chemical preparation only.

[38 FR 8255, Mar. 30, 1973]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting § 1308.24, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and on GPO Access.

EXCLUDED VETERINARY ANABOLIC STEROID IMPLANT PRODUCTS

**§ 1308.25  Exclusion of a veterinary anabolic steroid implant product; application.**

(a) Any person seeking to have any anabolic steroid product, which is expressly intended for administration through implants to cattle or other nonhuman species and which has been approved by the Secretary of Health and Human Services for such administration, identified as being excluded from any schedule, pursuant to section 102(41)(B)(i) of the Act (21 U.S.C. 802(41)(B)(i)), may apply to the Administrator, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(b) An application for any exclusion under this section shall be submitted in triplicate and contain the following information:

(1) The name and address of the applicant;

(2) The name of the product;

(3) The chemical structural formula or description for any anabolic steroid contained in the product;

(4) A complete description of dosage and quantitative composition of the dosage form;.

(5) The conditions of use including whether or not Federal law restricts this product to use by or on the order of a licensed veterinarian;

(6) A description of the delivery system in which the dosage form will be distributed with sufficient detail to identify the product (e.g. 20 cartridge brown plastic belt);

(7) The label and labeling of the immediate container and the commercial containers, if any, of the product;.

(8) The name and address of the manufacturer of the dosage form if different from that of the applicant; and

(9) Evidence that the product has been approved by the Secretary of Health and Human Services for administration through implant to cattle or other nonhuman species.

(c) Within a reasonable period of time after the receipt of an application for an exclusion under this section, the Administrator shall notify the applicant of his acceptance or nonacceptance of the application, and if not accepted, the reason therefore. The Administrator need not accept an application for filing if any of the requirements prescribed in paragraph (b) of this section is lacking or is not set forth as to be readily understood. The applicant may amend the application to meet the requirements of paragraph (b) of this section. If the application is accepted for filing, the Administrator shall issue and have published in the FEDERAL REGISTER his order on the application, which shall include a reference to the legal authority under which the order is issued and the findings of fact and conclusions of law upon which the order is based. This order shall specify the date on which it will take effect. The Administrator shall permit any interested person to file written comments on or objections to the order within 60 days of the date of publication in the FEDERAL REGISTER. If any such comments or objections raise significant issues regarding any finding of fact or conclusion of law upon which the order is based, the Administrator shall immediately suspend the effectiveness of the order until he may reconsider the application in light of the comments and objections filed. Thereafter, the Administrator shall reinstate, revoke, or amend his original order as he determines appropriate.

(d) The Administrator may at any time revoke or modify any designation of excluded status granted pursuant to this section by following the procedures set forth in paragraph (c) of this section for handling an application for

103

an exclusion which has been accepted for filing.

[56 FR 42686, Aug. 30, 1991]

§1308.26  Excluded veterinary anabolic steroid implant products.

(a) Products containing an anabolic steroid, that are expressly intended for administration through implants to cattle or other nonhuman species and which have been approved by the Secretary of Health and Human Services for such administration are excluded from all schedules pursuant to section 102(41)(B)(i) of the Act (21 U.S.C. 802(41)(B)(i)). A listing of the excluded products may be obtained by submitting a written request to the Drug and Chemical Evaluation Section, Drug Enforcement Administration, Washington DC 20537.

(b) In accordance with section 102(41)(B)(ii) of the Act (21 U.S.C. 802(41)(B)(ii)) if any person prescribes, dispenses, or distributes a product listed in paragraph (a) of this section for human use, such person shall be considered to have prescribed, dispensed, or distributed an anabolic steroid within the meaning of section 102(41)(A) of the Act (21 U.S.C. 802(41)(A)).

[56 FR 42686, Aug. 30, 1991, as amended at 57 FR 18634, May 7, 1992; 58 FR 15038, Mar. 19, 1993; 62 FR 13957, Mar. 24, 1997]

EXEMPTED PRESCRIPTION PRODUCTS

§1308.31  Application for exemption of a nonnarcotic prescription product.

(a) Any person seeking to have any compound, mixture, or preparation containing any nonnarcotic controlled substance listed in §1308.12(e), or in §1308.13 (b) or (c), or in §1308.14, or in §1308.15, exempted from application of all or any part of the Act pursuant to section 201(g)(3)(A), of the Act (21 U.S.C. 811(g)(3)(A)), may apply to the Administrator, Drug Enforcement Administration, Washington, DC 20537, for such exemption.

(b) An application for an exemption under this section shall contain the following information:

(1) The complete quantitative composition of the dosage form.

(2) Description of the unit dosage form together with complete labeling.

(3) A summary of the pharmacology of the product including animal investigations and clinical evaluations and studies, with emphasis on the psychic and/or physiological dependence liability (this must be done for each of the active ingredients separately and for the combination product).

(4) Details of synergisms and antagonisms among ingredients.

(5) Deterrent effects of the noncontrolled ingredients.

(6) Complete copies of all literature in support of claims.

(7) Reported instances of abuse.

(8) Reported and anticipated adverse effects.

(9) Number of dosage units produced for the past 2 years.

(c) Within a reasonable period of time after the receipt of an application for an exemption under this section, the Administrator shall notify the applicant of his acceptance or non-acceptance of the application, and if not accepted, the reason therefor. The Administrator need not accept an application for filing if any of the requirements prescribed in paragraph (b) of this section is lacking or is not set forth so as to be readily understood. If the applicant desires, he may amend the application to meet the requirements of paragraph (b) of this section. If accepted for filing, the Administrator shall publish in the FEDERAL REGISTER general notice of this proposed rulemaking in granting or denying the application. Such notice shall include a reference to the legal authority under which the rule is proposed, a statement of the proposed rule granting or denying an exemption, and, in the discretion of the Administrator, a summary of the subjects and issues involved. The Administrator shall permit any interested person to file written comments on or objections to the proposal and shall designate in the notice of proposed rule making the time during which such filings may be made. After consideration of the application and any comments on or objections to his proposed rulemaking, the Administrator shall issue and publish in the FEDERAL REGISTER his final order on the application, which shall set forth the findings of fact and conclusions of law upon which the order is based. This

Drug Enf

order sha
shall tal
less than
lication
less the
ditions o
stitute a
which e
specify i
such con

(d) Th
any exe
section 2
811(g)(3)(
dures set
section i
an exem
for filing

[38 FR 82
FR 28508,
19963, Mar

§1308.32
ucts.

The c
arations
controlle
§1308.12(
§1308.14
Table o
ucts ha
ministra
sections
909, 1001
U.S.C. 8
§§1308.13
1301.76 c
tive pur
above is
butalbit
requirem
cerning
transahi
of contr
from th
any of t
petition
product
the Exe
may be
ten requ
Evaluat
Admini

Drug Enforcement Administration, Justice

§ 1308.33

order shall specify the date on which it shall take effect, which shall not be less than 30 days from the date of publication in the FEDERAL REGISTER unless the Administrator finds that conditions of public health or safety necessitate an earlier effective date, in which event the Administrator shall specify in the order his findings as to such conditions.

(d) The Administrator may revoke any exemption granted pursuant to section 201(g)(3)(A) of the Act (21 U.S.C. 811(g)(3)(A)) by following the procedures set forth in paragraph (c) of this section for handling an application for an exemption which has been accepted for filing.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, as amended at 44 FR 18865, Mar. 30, 1976; 52 FR 9603, Mar. 27, 1987]

§ 1308.32  Exempted prescription products.

The compounds, mixtures, or preparations that contain a nonnarcotic controlled substance listed in § 1308.12(e) or in § 1308.13 (b) or (c) or in § 1308.14 or in § 1308.15 listed in the Table of Exempted Prescription Products have been exempted by the Administrator from the application of sections 302 through 305, 307 through 309, 1002 through 1004 of the Act (21 U.S.C. 822–825, 827–829, and 952–954) and §§ 1301.13, 1301.22, and §§ 1301.71 through 1301.76 of this chapter for administrative purposes only. An exception to the above is that these products containing butalbital shall not be exempt from the requirement of 21 U.S.C. 952–954 concerning importation, exportation, transshipment and in-transit shipment of controlled substances. Any deviation from the quantitative composition of any of the listed drugs shall require a petition of exemption in order for the product to be exempted. A listing of the Exempted Prescription Products may be obtained by submitting a written request to the Drug and Chemical Evaluation Section, Drug Enforcement Administration, Washington, DC 20537.

[62 FR 13967, Mar. 24, 1997]

EXEMPT ANABOLIC STEROID PRODUCTS

§ 1308.33  Exemption of certain anabolic steroid products; application.

(a) The Administrator, upon the recommendation of the Secretary of Health and Human Services, may, by regulation, exempt from the application of all or any part of the Act any compound, mixture, or preparation containing an anabolic steroid as defined in part 1300 of this chapter if, because of its concentration, preparation, mixture or delivery system, it has no significant potential for abuse (Pub. L. 101–647 section 1903(a)).

(b) Any person seeking to have any compound, mixture, or preparation containing an anabolic steroid as defined in part 1300 of this chapter exempted from the application of all or any part of the Act, pursuant to paragraph (a) of this section, may apply to the Administrator, Drug Enforcement Administration, Department of Justice, Washington, DC 20537.

(c) An application for an exemption under this section shall be submitted in triplicate and contain the following information:

(1) The name and address of the applicant;

(2) The name of the product;

(3) The chemical structural formula or description for any anabolic steroid contained in the product;

(4) The complete description of dosage and quantitative composition of the dosage form;

(5) A description of the delivery system, if applicable;

(6) The indications and conditions for use in which species, including whether or not this product is a prescription drug;

(7) Information to facilitate identification of the dosage form, such as shape, color, coating, and scoring;

(8) The label and labeling of the immediate container and the commercial containers, if any, of the product;

(9) The units in which the dosage form is ordinarily available; and

(10) The facts which the applicant believes justify:

(i) A determination that the product has no significant potential for abuse and

105

§ 1308.34    21 CFR Ch. II (4–1–05 Edition)

(ii) a granting of an exemption under this section.

(d) Within a reasonable period of time after the receipt of the application for an exemption under this section, the Administrator shall notify the applicant of his acceptance or non-acceptance of the application, and if not accepted, the reason therefor. The Administrator need not accept an application for filing if any of the requirements prescribed in paragraph (c) of this section is lacking or is not set forth so as to be readily understood. The applicant may amend the application to meet the requirements of paragraph (c) of this section. If accepted for filing, the Administrator will request from the Secretary for Health and Human Services his recommendation, as to whether such product which contains an anabolic steroid should be considered for exemption from certain portions of the Controlled Substances Act. On receipt of the recommendation of the Secretary, the Administrator shall make a determination as to whether the evidence submitted or otherwise available sufficiently establishes that the product possesses no significant potential for abuse. The Administrator shall issue and publish in the FEDERAL REGISTER his order on the application, which shall include a reference to the legal authority under which the order is issued, and the findings of fact and conclusions of law upon which the order is based. This order shall specify the date on which it will take effect. The Administrator shall permit any interested person to file written comments on or objections to the order within 60 days of the date of publication of his order in the FEDERAL REGISTER. If any such comments or objections raise significant issues regarding any finding of fact or conclusion of law upon which the order is based, the Administrator shall immediately suspend the effectiveness of the order until he may reconsider the application in light of the comments and objections filed. Thereafter, the Administrator shall reinstate, revoke, or amend his original order as he determines appropriate.

(e) The Administrator may revoke any exemption granted pursuant to section 1903(a) of Public Law 101–647 by following the procedures set forth in paragraph (d) of this section for handling an application for an exemption which has been accepted for filing.

[66 FR 42995, Aug. 20, 1991; 57 FR 10815, Mar. 31, 1992, as amended at 62 FR 13966, Mar. 24, 1997]

§ 1308.34   Exempt anabolic steroid products.

The list of compounds, mixtures, or preparations that contain an anabolic steroid that have been exempted by the Administrator from application of sections 302 through 309 and 1002 through 1004 of the Act (21 U.S.C. 822–829 and 952–954) and §§ 1301.13, 1301.22, and 1301.71 through 1301.76 of this chapter for administrative purposes only may be obtained by submitting a written request to the Drug and Chemical Evaluation Section, Drug Enforcement Administration, Washington, DC 20537.

[62 FR 13967, Mar. 24, 1997]

EXEMPT CANNABIS PLANT MATERIAL, AND PRODUCTS MADE THEREFROM, THAT CONTAIN TETRAHYDROCANNABINOLS

§ 1308.35   Exemption of certain cannabis plant material, and products made therefrom, that contain tetrahydrocannabinols.

(a) Any processed plant material or animal feed mixture containing any amount of tetrahydrocannabinols (THC) that is both:

(1) Made from any portion of a plant of the genus Cannabis excluded from the definition of marijuana under the Act [i.e., the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil; or cake, or the sterilized seed of such plant which is incapable of germination] and

(2) Not used, or intended for use, for human consumption, has been exempted by the Administrator from the application of the Act and this chapter.

(b) As used in this section, the following terms shall have the meanings specified:

(1) The term *processed plant material* means cannabis plant material that

106

**Left margin (partially legible):**

section for harfor an exemption
for filing.

57 FR 10815, Mar.
FR 13958, Mar. 24,

**anabolic steroid**

ds, mixtures, or
in an anabolic
exempted by the
ication of sec-
1002 through
.C. 822-829 and
1901.22, and
this chapter
n only may
a written re-
emical Evalrcement Ad
DO 20537.

MATERIAL,
THEREFROM,
CONTAIN

ertain canproducts
contain

material or
ining any
nnabinols

a plant
ed from
der the
of such
stalks,
of such
manufacprep-
except
fiber,
sed of
ermi

e, for
empt-
ap-
r.
fol-
ings

erial
hat

has been subject to industrial processes, or mixed with other ingredients, such that it cannot readily be converted into any form that can be used for human consumption.

(2) The term *animal feed mixture* means sterilized cannabis seeds mixed with other ingredients (not derived from the cannabis plant) in a formulation that is designed, marketed, and distributed for animal consumption (and not for human consumption).

(3) The term *used for human consumption* means either:

(i) Ingested orally or

(ii) Applied by any means such that THC enters the human body.

(4) The term *intended for use for human consumption* means any of the following:

(i) Designed by the manufacturer for human consumption;

(ii) Marketed for human consumption; or

(iii) Distributed, exported, or imported, with the intent that it be used for human consumption.

(c) In any proceeding arising under the Act or this chapter, the burden of going forward with the evidence that a material, compound, mixture, or preparation containing THC is exempt from control pursuant to this section shall be upon the person claiming such exemption, as set forth in section 515(a)(1) of the Act (21 U.S.C. 885(a)(1)). In order to meet this burden with respect to a product or plant material that has not been expressly exempted from control by the Administrator pursuant to §1308.23, the person claiming the exemption must present rigorous scientific evidence, including well-documented scientific studies by experts trained and qualified to evaluate the effects of drugs on humans.

[66 FR 51564, Oct. 9, 2001]

**HEARINGS**

**§1308.41  Hearings generally.**

In any case where the Administrator shall hold a hearing on the issuance, amendment, or repeal of rules pursuant to section 201 of the Act, the procedures for such hearing and accompanying proceedings shall be governed generally by the rulemaking procedures set forth in the Administrative

Procedure Act (5 U.S.C. 551-559) and specifically by section 201 of the Act (21 U.S.C. 811), by §§1308.42-1308.51, and by §§1316.41-1316.67 of this chapter.

**§1308.42  Purpose of hearing.**

If requested by any interested person after proceedings are initiated pursuant to §1308.43, the Administrator shall hold a hearing for the purpose of receiving factual evidence and expert opinion regarding the issues involved in the issuance, amendment or repeal of a rule issuable pursuant to section 201(a) of the Act (21 U.S.C. 811(a)). Extensive argument should not be offered into evidence but rather presented in opening or closing statements of counsel or in memoranda or proposed findings of fact and conclusions of law. Additional information relating to hearings to include waivers or modification of rules, request for hearing, burden of proof, time and place, and final order are set forth in part 1316 of this chapter.

[62 FR 13966, Mar. 24, 1997]

**§1308.43  Initiation of proceedings for rulemaking.**

(a) Any interested person may submit a petition to initiate proceedings for the issuance, amendment, or repeal of any rule or regulation issuable pursuant to the provisions of section 201 of the Act.

(b) Petitions shall be submitted in quintuplicate to the Administrator in the following form:

(Date)
ADMINISTRATOR, DRUG ENFORCEMENT
ADMINISTRATION
*Department of Justice,*
*Washington, DC 20537.*

DEAR SIR: The undersigned hereby petitions the Administrator to initiate proceedings for the issuance (amendment or repeal) of a rule or regulation pursuant to section 201 of the Controlled Substances Act.

Attached hereto and constituting a part of this petition are the following:

(A) The proposed rule in the form proposed by the petitioner. (If the petitioner seeks the amendment or repeal of an existing rule, the existing rule, together with a reference to the section in the Code of Federal Regulations where it appears, should be included.)

§ 1308.44

21 CFR Ch. II (4–1–05 Edition)

(B) A statement of the grounds which the petitioner relies for the issuance (amendment or repeal) of the rule. (Such grounds shall include a reasonably concise statement of the facts relied upon by the petitioner, including a summary of any relevant medical or scientific evidence known to the petitioner.)

All notices to be sent regarding this petition should be addressed to:

_____

(Name)

_____

(Street Address)

_____

(City and State)

Respectfully yours,

_____

(Signature of petitioner)

(c) Within a reasonable period of time after the receipt of a petition, the Administrator shall notify the petitioner of his acceptance or nonacceptance of the petition, and if not accepted, the reason therefor. The Administrator need not accept a petition for filing if any of the requirements prescribed in paragraph (b) of this section is lacking or is not set forth so as to be readily understood. If the petitioner desires, he may amend the petition to meet the requirements of paragraph (b) of this section. If accepted for filing, a petition may be denied by the Administrator within a reasonable period of time thereafter if he finds the grounds upon which the petitioner relies are not sufficient to justify the initiation of proceedings.

(d) The Administrator shall, before initiating proceedings for the issuance, amendment, or repeal of any rule either to control a drug or other substance, or to transfer a drug or other substance from one schedule to another, or to remove a drug or other substance entirely from the schedules, and after gathering the necessary data, request from the Secretary a scientific and medical evaluation and the Secretary's recommendations as to whether such drug or other substance should be so controlled, transferred, or removed as a controlled substance. The recommendations of the Secretary to

the Administrator shall be binding on the Administrator as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Administrator shall not control that drug or other substance.

(e) If the Administrator determines that the scientific and medical evaluation and recommendations of the Secretary and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control or additional control over the drug or other substance, or substantial evidence that the drug or other substances should be subjected to lesser control or removed entirely from the schedules, he shall initiate proceedings for control, transfer, or removal as the case may be.

(f) If and when the Administrator determines to initiate proceedings, he shall publish in the FEDERAL REGISTER general notice of any proposed rule making to issue, amend, or repeal any rule pursuant to section 201 of the Act. Such published notice shall include a statement of the time, place, and nature of any hearings on the proposal in the event a hearing is requested pursuant to § 1308.44. Such hearings may not be commenced until after the expiration of at least 30 days from the date the general notice is published in the FEDERAL REGISTER. Such published notice shall also include a reference to the legal authority under which the rule is proposed, a statement of the proposed rule, and, in the discretion of the Administrator, a summary of the subjects and issues involved.

(g) The Administrator may permit any interested persons to file written comments on or objections to the proposal and shall designate in the notice of proposed rule making the time during which such filings may be made.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and further redesignated and amended at 62 FR 13968, Mar. 24, 1897]

§ 1308.44  Request for hearing or appearance; waiver.

(a) Any interested person desiring a hearing on a proposed rulemaking, shall, within 30 days after the date of publication of notice of the proposed

108

rulemaking in the FEDERAL REGISTER, file with the Administrator a written request for a hearing in the form prescribed in §1316.47 of this chapter.

(b) Any interested person desiring to participate in a hearing pursuant to §1308.41 shall, within 30 days after the date of publication of the notice of hearing in the FEDERAL REGISTER, file with the Administrator a written notice of his intention to participate in such hearing in the form prescribed in §1316.48 of this chapter. Any person filing a request for a hearing need not also file a notice of appearance; the request for a hearing shall be deemed to be a notice of appearance.

(c) Any interested person may, within the period permitted for filing a request for a hearing, file with the Administrator a waiver of an opportunity for a hearing or to participate in a hearing, together with a written statement regarding his position on the matters of fact and law involved in such hearing. Such statement, if admissible, shall be made a part of the record and shall be considered in light of the lack of opportunity for cross-examination in determining the weight to be attached to matters of fact asserted therein.

(d) If any interested person fails to file a request for a hearing; or if he so files and fails to appear at the hearing, he shall be deemed to have waived his opportunity for the hearing or to participate in the hearing, unless he shows good cause for such failure.

(e) If all interested persons waive or are deemed to waive their opportunity for the hearing or to participate in the hearing, the Administrator may cancel the hearing, if scheduled, and issue his final order pursuant to §1308.45 without a hearing.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and further redesignated and amended at 62 FR 13968, Mar. 24, 1997]

§1308.45 Final order.

As soon as practicable after the presiding officer has certified the record to the Administrator, the Administrator shall cause to be published in the FEDERAL REGISTER his order in the proceeding, which shall set forth the final rule and the findings of fact and conclusions of law upon which the rule is based. This order shall specify the date on which it shall take effect, which shall not be less than 30 days from the date of publication in the FEDERAL REGISTER unless the Administrator finds that conditions of public health or safety necessitate an earlier effective date, in which event the Administrator shall specify in the order his findings as to such conditions.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and further redesignated at 62 FR 13968, Mar. 24, 1997]

§1308.46 Control required under international treaty.

Pursuant to section 201(d) of the Act (21 U.S.C. 811(d)), where control of a substance is required by U.S. obligations under international treaties, conventions, or protocols in effect on May 1, 1971, the Administrator shall issue and publish in the FEDERAL REGISTER an order controlling such substance under the schedule he deems most appropriate to carry out obligations. Issuance of such an order shall be without regard to the findings required by subsections 201(a) or 202(b) of the Act (21 U.S.C. 811(a) or 812(b)) and without regard to the procedures prescribed by §1308.41 or subsections 201 (a) and (b) of the Act (21 U.S.C. 811 (a) and (b)). An order controlling a substance shall become effective 30 days from the date of publication in the FEDERAL REGISTER, unless the Administrator finds that conditions of public health or safety necessitate an earlier effective date, in which event the Administrator shall specify in the order his findings as to such conditions.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 26609, Sept. 24, 1973, and further redesignated at 62 FR 13968, Mar. 24, 1997]

§1308.47 Control of immediate precursors.

Pursuant to section 201(e) of the Act (21 U.S.C. 811(e)), the Administrator may, without regard to the findings required by subsection 201(a) or 202 (b) of the Act (21 U.S.C. 811(a) or 812(b)) and without regard to the procedures prescribed by §1308.41 or subsections 201 (a) and (b) of the Act (21 U.S.C. 811(a) and (b)), issue and publish in the FEDERAL REGISTER an order controlling an

§ 1308.49    21 CFR Ch. II (4–1–05 Edition)

immediate precursor. The order shall designate the schedule in which the immediate precursor is to be placed, which shall be the same schedule in which the controlled substance of which it is an immediate precursor is placed or any other schedule with a higher numerical designation. An order controlling an immediate precursor shall become effective 30 days from the date of publication in the FEDERAL REGISTER, unless the Administrator finds that conditions of public health or safety necessitate an earlier effective date, in which event the Administrator shall specify in the order his findings as to such conditions.

[38 FR 8254, Mar. 30, 1973. Redesignated at 38 FR 22699, Sept. 24, 1973, and further redesignated at 62 FR 13968, Mar. 24, 1997]

§ 1308.49    Emergency scheduling.

Pursuant to 21 U.S.C. 811(h) and without regard to the requirements of 21 U.S.C. 811(b) relating to the scientific and medical evaluation of the Secretary of Health and Human Services, the Administrator may place a substance into Schedule I on a temporary basis, if he determines that such action is necessary to avoid an imminent hazard to the public safety. An order issued under this section may not be effective before the expiration of 30 days from:

(a) The date of publication by the Administrator of a notice in the FEDERAL REGISTER of his intention to issue such order and the grounds upon which such order is to be issued; and

(b) The date the Administrator has transmitted notification to the Secretary of Health and Human Services of his intention to issue such order. An order issued under this section shall be vacated upon the conclusion of a subsequent rulemaking proceeding initiated under section 201(a) (21 U.S.C. 811(a)) with respect to such substance or at the end of one year from the effective date of the order scheduling the substance, except that during the pendency of proceedings under section 201(a) (21 U.S.C. 811(a)) with respect to the substance, the Administrator may extend the temporary scheduling for up to six months.

[61 FR 15318, Apr. 23, 1986. Redesignated and amended at 62 FR 13968, Mar. 24, 1997]

PART 1309—REGISTRATION OF MANUFACTURERS, DISTRIBUTORS, IMPORTERS AND EXPORTERS OF LIST I CHEMICALS

GENERAL INFORMATION

Sec.
1309.01  Scope of part 1309.
1309.02  Definitions.
1309.03  Information; special instructions.

FEES FOR REGISTRATION AND REREGISTRATION

1309.11  Fee amounts.
1309.12  Time and method of payment; refund.

REQUIREMENTS FOR REGISTRATION

1309.21  Persons required to register.
1309.22  Separate registration for independent activities.
1309.23  Separate registration for separate locations.
1309.24  Waiver of registration requirement for certain activities.
1309.25  Temporary exemption from registration for chemical registration applicants.
1309.26  Exemption of law enforcement officials.

APPLICATION FOR REGISTRATION

1309.31  Time for application for registration; expiration date.
1309.32  Application forms; contents, signature.
1309.33  Filing of application; joint filings.
1309.34  Acceptance for filing; defective applications.
1309.35  Additional information.
1309.36  Amendments to and withdrawals of applications.

ACTION ON APPLICATIONS FOR REGISTRATION; REVOCATION OR SUSPENSION OF REGISTRATION

1309.41  Administrative review generally.
1309.42  Certificate of registration; denial of registration.
1309.43  Suspension or revocation of registration.
1309.44  Suspension of registration pending final order.
1309.45  Extension of registration pending final order.
1309.46  Order to show cause.

HEARINGS

1309.51  Hearings generally.
1309.52  Purpose of hearing.
1309.53  Request for hearing or appearance; waiver.
1309.54  Burden of proof.
1309.55  Time and place of hearing.

110



equal the system must invalidate the order.

(6) The system must check the Certificate Revocation List automatically and invalidate any order with a certificate listed on the Certificate Revocation List.

(7) The system must check the validity of the certificate and the Certification Authority certificate and invalidate any order that fails these validity checks.

(8) The system must have a time system that is within five minutes of the official National Institute of Standards and Technology time source.

(9) The system must check the substances ordered against the schedules that the registrant is allowed to order and invalidate any order that includes substances the registrant is not allowed to order.

(10) The system must ensure that an invalid finding cannot be bypassed or ignored and the order filled.

(11) The system must archive the order and associate with it the digital certificates received with the order.

(12) If a registrant sends reports on orders to DEA, the system must create a report in the format DEA specifies, as provided in §1305.29 of this chapter.

(d) For systems used to process CSOS orders, the system developer or vendor must have an initial independent third-party audit of the system and an additional independent third-party audit whenever the signing or verifying functionality is changed to determine whether it correctly performs the functions listed under paragraphs (b) and (c) of this section. The system developer must retain the most recent audit results and retain the results of any other audits of the software completed within the previous two years.

§1311.80  Recordkeeping.

(a) A supplier and purchaser must maintain records of CSOS electronic orders and any linked records for two years. Records may be maintained electronically. Records regarding controlled substances that are maintained electronically must be readily retrievable from all other records.

(b) Electronic records must be easily readable or easily rendered into a format that a person can read. They must

be made available to the Administration upon request.

(c) CSOS certificate holders must maintain a copy of the subscriber agreement that the Certification Authority provides for the life of the certificate.

## PART 1312—IMPORTATION AND EXPORTATION OF CONTROLLED SUBSTANCES

Sec.
1312.01  Scope of part 1312.
1312.02  Definitions.

IMPORTATION OF CONTROLLED SUBSTANCES

1312.11  Requirement of authorization to import.
1312.12  Application for import permit.
1312.13  Issuance of import permit.
1312.14  Distribution of copies of import permit.
1312.15  Shipments in greater or less amount than authorized.
1312.16  Cancellation of permit; expiration date.
1312.17  Special report from importers.
1312.18  Contents of import declaration.
1312.19  Distribution of import declaration.

EXPORTATION OF CONTROLLED SUBSTANCES

1312.21  Requirement of authorization to export.
1312.22  Application for export permit.
1312.23  Issuance of export permit.
1312.24  Distribution of copies of export permit.
1312.25  Expiration date.
1312.26  Records required of exporter.
1312.27  Contents of special controlled substances invoice.
1312.28  Distribution of special controlled substances invoice.
1312.29  Domestic release prohibited.
1312.30  Schedule III, IV, and V non-narcotic controlled substances requiring an import and export permit.

TRANSSHIPMENT AND IN-TRANSIT SHIPMENT OF CONTROLLED SUBSTANCES

1312.31  Schedule I: Application for prior written approval.
1312.32  Schedules II, III, IV: Advance notice.

HEARINGS

1312.41  Hearings generally.
1312.42  Purpose of hearing.
1312.43  Waiver or modification of rules.
1312.44  Request for hearing or appearance; waiver.
1312.45  Burden of proof.
1312.46  Time and place of hearing.
1312.47  Final order.

§ 1312.01                                    21 CFR Ch. II (4-1-05 Edition)

AUTHORITY: 21 U.S.C. 952, 953, 954, 957, 958.

SOURCE: 36 FR 7815, Apr. 24, 1971, unless otherwise noted. Redesignated at 38 FR 26609, Sept. 24, 1973.

§ 1312.01  Scope of part 1312.

Procedures governing the importation, exportation, transshipment and intransit shipment of controlled substances pursuant to section 1002, 1003, and 1004 of the Act (21 U.S.C. 952, 953, and 954) are governed generally by those sections and specifically by the sections of this part.

§ 1312.02  Definitions.

Any term contained in this part shall have the definition set forth in section 102 of the Act (21 U.S.C. 802) or part 1300 of this chapter.

[62 FR 13968, Mar. 24, 1997]

IMPORTATION OF CONTROLLED SUBSTANCES

§ 1312.11  Requirement of authorization to import.

(a) No person shall import or cause to be imported any controlled substance listed in Schedule I or II or any narcotic controlled substance listed in Schedule III, IV or V or any non-narcotic controlled substance in Schedule III which the Administrator has specifically designated by regulation in § 1312.30 of this part or any non-narcotic controlled substance in Schedule IV or V which is also listed in Schedule I or II of the Convention on Psychotropic Substances unless and until such person is properly registered under the Act (or exempt from registration) and the Administrator has issued him a permit to do so pursuant to § 1312.13 of this part.

(b) No person shall import or cause to be imported any non-narcotic controlled substance listed in Schedule III, IV or V, excluding those described in paragraph (a) of this section, unless and until such person is properly registered under the Act (or exempt from registration) and has filed an import declaration to do so with the Administrator, pursuant to § 1312.18 of this part.

(c) When an import permit or declaration is required, a separate permit or declaration must be obtained for each consignment of controlled substances to be imported.

[36 FR 7815, Apr. 24, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 52 FR 17289, May 7, 1987]

§ 1312.12  Application for import permit.

(a) An application for a permit to import controlled substances shall be made on DEA Form 357. DEA Form 357 may be obtained from, and shall be filed with, the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537. Each application shall show the date of execution; the registration number of the importer; a detailed description of each controlled substance to be imported including the drug name, dosage form, National Drug Code (NDC) number, the Administration Controlled Substance Code Number as set forth in part 1308 of this chapter, the number and size of packages or containers, the name and quantity of the controlled substance contained in any finished dosage units, and the net quantity of any controlled substance (expressed in anhydrous acid, base or alkaloid) given in kilograms or parts thereof. The application shall also include the following:

(1) The name, address, and business of the consignor, if known at the time application is submitted, but if unknown at that time, the fact should be indicated and the name and address afterwards furnished to the Administrator as soon as ascertained by the importer;

(2) The foreign port of exportation (i.e., the place where the article will begin its journey of exportation to the United States);

(3) The port of entry into the United States;

(4) The latest date said shipment will leave said foreign port;

(5) The stock on hand of the controlled substance desired to be imported;

(6) The name of the importing carrier or vessel (if known, or if unknown it should be stated whether shipment will be made by express, freight, or otherwise, imports of controlled substances in Schedules I or II and narcotic drugs

148

Drug Enforcement Administration, Justice                    § 1312.13

in Schedules III, IV, or V by mail being
prohibited);

(7) The total tentative allotment to
the importer of such controlled sub-
stance for the current calendar year;

(8) The total number of kilograms of
said allotment for which permits have
previously been issued and the total
quantity of controlled substance actu-
ally imported during the current year
to date.

(b) If desired, alternative foreign
ports of exportation within the same
country may be indicated upon the ap-
plication (e.g., (1) Calcutta; (2) Bom-
bay). If a formal permit is issued pursu-
ant to such application, it will bear the
names of the two ports in the order
given in the application and will au-
thorize shipment from either port. Al-
ternate ports in different countries will
not be authorized in the same permit.

[36 FR 7815, Apr. 24, 1971, as amended at 36
FR 13387, July 21, 1971. Redesignated at 38 FR
26609, Sept. 24, 1973, and amended at 39 FR
43318, Dec. 11, 1974; 45 FR 74715, Nov. 12, 1980;
51 FR 5319 and 5320, Feb. 13, 1986; 52 FR 17289,
May 7, 1987; 62 FR 13969, Mar. 24, 1997]

§ 1312.13  Issuance of import permit.

(a) The Administrator may authorize
importation of any controlled sub-
stance listed in Schedule I or II or any
narcotic drug listed in Schedule III, IV,
or V if he finds:

(1) That the substance is crude
opium, poppy straw, concentrate of
poppy straw, or coca leaves, in such
quantity as the Administrator finds
necessary to provide for medical, sci-
entific, or other legitimate purposes;

(2) That the substance is necessary to
provide for medical and scientific needs
or other legitimate needs of the United
States during an emergency where do-
mestic supplies of such substance or
drug are found to be inadequate, or in
any case in which the Administrator
finds that competition among domestic
manufacturers of the controlled sub-
stance is inadequate and will not be
rendered adequate by the registration
of additional manufacturers under sec-
tion 303 of the Controlled Substances
Act (21 U.S.C. 823); or

(3) That the domestic supply of any
controlled substance is inadequate for
scientific studies, and that the impor-
tation of that substance for scientific

purposes is only for delivery to offi-
cials of the United Nations, of the
United States, or of any State, or to
any person registered or exempted
from registration under sections 1007
and 1008 of the Act (21 U.S.C. 957 and
958).

(4) That the importation of the con-
trolled substance is for ballistics or
other analytical or scientific purposes,
and that the importation of that sub-
stance is only for delivery to officials
of the United Nations, of the United
States, or of any State, or to any per-
son registered or exempted from reg-
istration under sections 1007 and 1008 of
the Act (21 U.S.C. 957 and 958).

(b) The Administrator may require
that such non-narcotic controlled sub-
stances in Schedule III as he shall des-
ignate by regulation in § 1312.30 of this
part be imported only pursuant to the
issuance of an import permit. The Ad-
ministrator may authorize the importa-
tion of such substances if he finds
that the substance is being imported
for medical, scientific or other legiti-
mate uses.

(c) If a non-narcotic substance listed
in Schedule IV or V is also listed in
Schedule I or II of the Convention on
Psychotropic Substances, 1971, it shall
be imported only pursuant to the
issuance of an import permit. The Ad-
ministrator may authorize the importa-
tion of such substances if it is found
that the substance is being imported
for medical, scientific or other legiti-
mate uses.

(d) The Administrator may require
an applicant to submit such documents
or written statements of fact relevant
to the application as he deems nec-
essary to determine whether the appli-
cation should be granted. The failure of
the applicant to provide such docu-
ments or statements within a reason-
able time after being requested to do so
shall be deemed to be a waiver by the
applicant of an opportunity to present
such documents or facts for consider-
ation by the Administrator in granting
or denying the application.

(e) Each import permit shall be
issued in sextuplet and serially num-
bered, with all six copies bearing the
same serial number and being des-
ignated "original" (Copy 1), "dupli-
cate" (Copy 2), etc., respectively. All

149                    A.R.  68



copies of import permits shall bear the signature of the Director or his delegate, and facsimiles of signatures shall not be used. No permit shall be altered or changed by any person after being signed by the Administrator or his delegate and any change or alteration upon the face of any permit after it shall have been signed by the Administrator or his delegate shall render it void and of no effect. Permits are not transferable. Each copy of the permit shall have printed or stamped thereon the disposition to be made thereof. Each permit shall be dated and shall certify that the importer named therein is thereby permitted as a registrant under the Act, to import, through the port named, one shipment of not to exceed the specified quantity of the named controlled substances, shipment to be made before a specified date. Not more than one shipment shall be made on a single import permit. The permit shall state that the Administrator is satisfied that the consignment proposed to be imported is required for legitimate purposes.

(f) Notwithstanding paragraphs (a)(1) and (a)(2) of this section, the Administrator shall permit, pursuant to 21 U.S.C. 952(a)(1) or (a)(2)(A), the importation of approved narcotic raw material (opium, poppy straw and concentrate of poppy straw) having as its source:

(1) Turkey,
(2) India,
(3) Yugoslavia,
(4) France,
(5) Poland,
(6) Hungary, and
(7) Australia.

(g) At least eighty (80) percent of the narcotic raw material imported into the United States shall have as its original source Turkey and India. Except under conditions of insufficient supplies of narcotic raw materials, not more than twenty (20) percent of the narcotic raw material imported into the United States annually shall have as its source Yugoslavia, France, Poland, Hungary and Australia.

[36 FR 23624, Dec. 11, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 46 FR 41776, Aug. 18, 1981; 62 FR 17289, May 7, 1997]

§ 1312.14 Distribution of copies of import permit.

Copies of the import permit shall be distributed and serve purposes as follows:

(a) The original and quintuplet copies (Copy 1 and Copy 5) shall be transmitted by the Administration to the importer, who shall retain the quintuplet copy (Copy 5) on file as his record of authority for the importation, and shall transmit the original copy (Copy 1) to the foreign exporter. The foreign exporter will submit the original copy (Copy 1) to the proper governmental authority in the exporting country, if required, as a prerequisite to the issuance of an export authorization. This copy of the permit will accompany the shipment. Upon arrival of the imported merchandise, the District Director of the U.S. Customs Service at the port of entry will, after appraising the merchandise, forward the original copy (Copy 1) to the Drug Operations Section with a report on the reverse side of such copy, showing the name of the port of importation, date prepared, name and net quantity of each substance, and report of analysis of the merchandise entered.

(b) The duplicate copy (Copy 2) shall be forwarded by the Administration to the proper governmental authorities of the exporting country.

(c) The quadruplet copy (Copy 4) shall be forwarded by the Administration to the District Director of the U.S. Customs Service at the U.S. port of entry, which shall be the customs port of destination in the case of shipments transported under immediate transportation entries, in order that the District Director may compare it with the original copy (Copy 1) and the bill of lading upon arrival of the merchandise. If a discrepancy is noted between corresponding items upon different copies of a permit bearing the same serial number when compared by the District Director, he shall refuse to permit entry of the merchandise until the facts are communicated to the Administration and further instructions are received.



**Drug Enforcement Administration, Justice .**  §1312.18

(d) The triplicate copy (Copy 3) and sextuplet copy (Copy 6) shall be retained by the Administration.

[36 FR 7815, Apr. 24, 1971, as amended at 36 FR 13387, July 21, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and further amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13963, Mar. 24, 1997]

§1312.15  Shipments in greater or less amount than authorized.

(a) If the shipment made under an import permit is greater than the maximum amount authorized to be imported under the permit, as determined at the weighing by the District Director of the U.S. Customs Service, such difference shall be seized subject to forfeiture, pending an explanation; except that shipments of substances exceeding the maximum authorized amount by less than 1 percent may be released to the importer upon the filing by him of an amended import permit. If the substance is included in Schedule I, it will be summarily forfeited to the Government.

(b) If the shipment made under the permit is less than the maximum amount authorized to be imported under the permit as determined at the weighing by the U.S. Customs Service, such difference, when ascertained by the Administration, shall be recredited to the tentative allotment against which the quantity covered by the permit was charged, and the balance of any such tentative allotment with any such recredits will remain available to the importer to whom made (unless previously revoked in whole or in part), for importations pursuant to any permit or permits as are requested and issued during the remainder of the calendar year to which the allotment is applicable. No permit shall be issued for importation of a quantity of controlled substances as a charge against the tentative allotment for a given calendar year, after the close of such calendar year, unless the Director of the Administration decides to make an exception for good cause shown.

[36 FR 7815, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 46 FR 23941, May 29, 1981]

§1312.16  Cancellation of permit; expiration date.

(a) A permit may be canceled after being issued, at the request of the importer, provided no shipment has been made thereunder. In the event that a permit is lost, the Administrator may, upon the production by the importer of satisfactory proof, by affidavit or otherwise, issue a duplicate permit. Nothing in this part shall affect the right, hereby reserved by the Administrator, to cancel a permit at any time for proper cause.

(b) An import permit shall not be valid after the date specified therein, and in no event shall the date be subsequent to 6 months after the date the permit is issued. Any unused import permit shall be returned for cancellation by the registrant to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537.

[36 FR 7815, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13969, Mar. 24, 1997]

§1312.17  Special report from importers.

Whenever requested by the Administrator, importers shall render to him not later than 30 days after receipt of the request therefor a statement under oath of the stocks of controlled substances on hand as of the date specified by the Administrator in his request, and, if desired by the Administrator, an estimate of the probable requirements for legitimate uses of the importer for any subsequent period that may be designated by the Administrator. In lieu of any special statement that may be considered necessary, the Administrator may accept the figures given upon the reports subsequent by said importer under part 1304 of this chapter.

[36 FR 7815, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, as amended at 62 FR 13969, Mar. 24, 1997]

§1312.18  Contents of import declaration.

(a) Any non-narcotic controlled substance listed in Schedule III, IV, or V, not subject to the requirement of an import permit pursuant to §1312.13 (b)

151

A. R. 70

or (c) of this chapter, may be imported if that substance is needed for medical, scientific or other legitimate uses in the United States, and will be imported pursuant to a controlled substances import declaration.

(b) Any person registered or authorized to import and desiring to import any non-narcotic controlled substance in Schedules III, IV, or V which is not subject to the requirement of an import permit as described in paragraph (a) of this section, must furnish a controlled substances import declaration on DEA Form 236 to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537, not later than 15 calendar days prior to the proposed date of importation and distribute four copies of same as hereinafter directed in § 1312.19.

(c) DEA Form 236 must be executed in quintuplicate and will include the following information:

(1) The name, address, and registration number of the importer; and the name and address and registration number of the import broker, if any; and

(2) A complete description of the controlled substances to be imported, including drug name, dosage form, National Drug Code (NDC) number, the Administration Controlled Substances Code Number as set forth in part 1308 of this chapter, the number and size of packages or containers, the name and quantity of the controlled substance contained in any finished dosage units, and the net quantity of any controlled substance (expressed in anhydrous acid, base, or alkaloid) given in kilograms or parts thereof; and

(3) The proposed import date, the foreign port of exportation to the United States, the port of entry, and the name, address, and registration number of the recipient in the United States; and

(4) The name and address of the consignor in the foreign country of exportation, and any registration or license numbers if the consignee is required to have such numbers either by the country of exportation or under U.S. law.

(d) Notwithstanding the time limitations included in paragraph (a) of this section, an applicant may obtain a special waiver of these time limitations in emergency or unusual instances, provided that a specific confirmation is received from the Administrator or his delegate advising the registrant to proceed pursuant to the special waiver.

[36 FR 7815, Apr. 24, 1971, as amended at 37 FR 15923, Aug. 6, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 52 FR 17290, May 7, 1987; 62 FR 13969, Mar. 24, 1997]

§ 1312.19   Distribution of import declaration.

The required five copies of the controlled substances import declaration will be distributed as follows:

(a) Copy 1, Copy 2, and Copy 3 shall be transmitted to the foreign shipper. The foreign shipper will submit Copy 1 to the proper governmental authority in the foreign country, if required as a prerequisite to export authorization. Copy 1 will then accompany the shipment to its destination, and shall be retained on file by the importer. Copy 2 shall be detached and retained by the appropriate customs official of the foreign country. Copy 3 shall be removed by the District Director of the U.S. Customs Service at the port of entry, who shall sign and date the certification of customs on Copy 3, noting any changes from the entries made by the importer, and shall then forward that copy to the Drug Operations Section of the Administration.

(b) Copy 4 shall be forwarded, within the time limit required in § 1312.18, directly to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537.

(c) Copy 5 shall be retained by the importer on file as his record of authority for the importation.

[36 FR 7815, Apr. 24, 1971, as amended at 36 FR 13387, July 21, 1971; 37 FR 15923, Aug. 6, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and further amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 52 FR 45244, Nov. 30, 1988; 62 FR 13969, Mar. 24, 1997]

EXPORTATION OF CONTROLLED SUBSTANCES

§ 1312.21   Requirement of authorization to export.

(a) No person shall in any manner export or cause to be exported from the United States any controlled substance

152



listed in Schedule I or II, or any narcotic substance listed in Schedule III or IV, or any non-narcotic substance in Schedule III which the Administrator has specifically designated by regulation in § 1312.30 of this part or any non-narcotic substance in Schedule IV or V which is also listed in Schedule I or II of the Convention on Psychotropic Substances unless and until such person is properly registered under the Act (or exempted from registration) and the Administrator has issued a permit pursuant to § 1312.23 of this part.

(b) No person shall in any manner export or cause to be exported from the United States any controlled substance listed in Schedule III, IV, or V, excluding those described in paragraph (a) of this section, or any narcotic controlled substance listed in Schedule V, unless and until such person is properly registered under the Act (or exempted from registration) and has furnished a special controlled substance export invoice as provided by section 1003 of the Act (21 U.S.C. 953(e)) to the Administrator pursuant to § 1312.23 of this part.

(c) A separate authorization request is obtained for each consignment of such controlled substances to be exported.

[36 FR 7815, Apr. 24, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 52 FR 17290, May 7, 1987]

§ 1312.22   Application for export permit.

(a) An application for a permit to export controlled substances shall be made on DEA Form 161 which may be obtained from, and shall be filed with, the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537. Each application shall show the exporter's name, address, and registration number; a detailed description of each controlled substance desired to be exported including the drug name, dosage form, National Drug Code (NDC) number, the Administration Controlled Substance Code Number as set forth in part 1308 of this chapter, the number and size of packages or containers, the name and quantity of the controlled substance contained in any finished dosage units, and the

quantity of any controlled substance (expressed in anhydrous acid, base, or alkaloid) given in kilograms or parts thereof. The application shall include the name, address, and business of the consignee, foreign port of entry, the port of exportation, the approximate date of exportation, the name of the exporting carrier or vessel (if known, or if unknown it should be stated whether shipment will be made by express, freight, or otherwise, exports of controlled substances by mail being prohibited), the date and number, if any, of the supporting foreign import license or permit accompanying the application, and the authority by whom such foreign license or permit was issued. The application shall also contain an affidavit that the packages are labeled in conformance with obligations of the United States under international treaties, conventions, or protocols in effect on May 1, 1971, and that, to the best of affiant's knowledge and belief, the controlled substances therein are to be applied exclusively to medical or scientific uses within the country to which exported, will not be reexported therefrom and that there is an actual need for the controlled substance for medical or scientific uses within such country. In the case of exportation of crude cocaine, the affidavit may state that to the best of knowledge and belief, the controlled substances will be processed within the country to which exported, either for medical or scientific use within that country or for reexportation in accordance with the laws of that country to another for medical or scientific use within that country. The application shall be signed and dated by the exporter and shall contain the address from which the substances will be shipped for exportation.

(b) There shall also be submitted with the application any import license or permit (and a translation thereof if in a foreign language) or a certified copy of any such license or permit issued by competent authorities in the country of destination, or other documentary evidence deemed adequate by the Administrator, showing that the merchandise is consigned to an authorized permittee, that is to be applied exclusively to medical or scientific use



§ 1312.23

within the country of destination, that it will not be reexported from such country, and that there is an actual need for the controlled substance for medical or scientific use within such country. (In the case of exportation of bulk coca leaf alkaloid, the submitted evidence need only show the material outlined in paragraph (a) of this section for such exportations.)

[36 FR 7815, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 52 FR 17290, May 7, 1987; 62 FR 13969, Mar. 24, 1997]

§ 1312.23   Issuance of export permit.

(a) The Administrator may authorize exportation of any controlled substance listed in Schedule I or II or any narcotic controlled substance listed in Schedule III or IV if he finds that such exportation is permitted by subsections 1003(a), (b), (c), or (d) of the Act (21 U.S.C. 953 (a), (b), (c), or (d).

(b) The Administrator may require that such non-narcotic controlled substances in Schedule III as shall be designated by regulation in § 1312.30 of this part be exported only pursuant to the issuance of an export permit. The Administrator may authorize the exportation of such substances if he finds that such exportation is permitted by section 1003(e) of the Act (21 U.S.C. 953(e)).

(c) If a non-narcotic substance listed in Schedule IV or V is also listed in Schedule I or II of the Convention on Psychotropic Substances, it shall be exported only pursuant to the issuance of an export permit. The Administrator may authorize the exportation of such substances if he finds that such exportation is permitted by section 1003(e) of the Act (21 U.S.C. 953(e)).

(d) The Administrator may require an applicant to submit such documents or written statements of fact relevant to the application as he deems necessary to determine whether the application should be granted. The failure of the applicant to provide such documents or statements within a reasonable time after being requested to do so shall be deemed to be a waiver by the applicant of an opportunity to present such documents or facts for consideration by the Administrator in granting or denying the application.

21 CFR Ch. II (4-1-05 Edition)

(e) Each export permit shall be issued in septuplet and serially numbered, with all seven copies bearing the same serial number and being designated "original" (Copy 1), "duplicate" (Copy 2), etc., respectively. Each export permit shall be predicated upon an import certificate or other documentary evidence. Export permits are not transferable.

(f) No export permit shall be issued for the exportation of any narcotic drug to any country when the Administrator has information to know that the estimates submitted with respect to that country for the current period, under the Narcotic Limitation Convention of 1931, or the Single Convention on Narcotic Drugs of 1961, have been, or, considering the quantity proposed to be imported, will be exceeded. If it shall appear through subsequent advice received from the International Narcotic Control Board of the United Nations that the estimates of the country of destination have been adjusted to permit further importation of the narcotic drug, an export permit may then be issued if otherwise permissible.

[36 FR 33825, Dec. 11, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 52 FR 17290, May 7, 1987]

§ 1312.24   Distribution of copies of export permit.

Copies of the export permit shall be distributed and serve purposes as follows:

(a) The original, duplicate, and triplicate copies (Copy 1, Copy 2, and Copy 3) shall be transmitted by the Administration to the exporter who will retain the triplicate copy (Copy 3) as his record of authority for the exportation. The exporter shall present to the District Director of the U.S. Customs Service at the port of export and at the time of shipment, the original and duplicate copies (Copy 1 and Copy 2), After endorsing the port of export on the reverse side of the original and duplicate copies (Copy 1 and Copy 2) the District Director shall forward the endorsed original copy (Copy 1) with the shipment, and return the endorsed duplicate copy (Copy 2) to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537.

154

Drug Enforcement Administration, Justice　　　　　§1312.27

(b) The quadruplet copy (Copy 4) shall be forwarded by the Administrator to the District Director of the U.S. Customs Service at the port of export for comparison with the original copy (Copy 1) and for retention for the customs record.

(c) The quintuplet copy (Copy 5) shall be forwarded by the Administration to the officer in the country of destination who issued the import certificate, or other documentary evidence upon which the export permit is founded.

(d) The sextuplet and septuplet copies (Copy 6 and Copy 7) shall be retained by the Administration.

[36 FR 7815, Apr. 24, 1971, as amended at 36 FR 13387, July 21, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13963, Mar. 24, 1997]

§1312.25  Expiration date.

An export permit shall not be valid after the date specified therein, which date shall conform to the expiration date specified in the supporting import certificate or other documentary evidence upon which the export permit is founded, but in no event shall the date be subsequent to 6 months after the date the permit is issued. Any unused export permit shall be returned by the permittee to the Drug Operations Section for cancellation.

[36 FR 7815, Apr. 24, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13963, Mar. 24, 1997]

§1312.26  Records required of exporter.

The exporter shall keep a record of any serial numbers that might appear on packages of narcotic drugs in quantities of one ounce or more in such a manner as will identify the foreign consignee, along with Copy 3 of the export permit.

§1312.27  Contents of special controlled substances invoice.

(a) A person registered or authorized to export any non-narcotic controlled substance listed in Schedule III, IV, or V, which is not subject to the requirement of an export permit pursuant to §1312.23 (b) or (c), or any person reg-

istered or authorized to export any controlled substance in Schedule V, must furnish a special controlled substances export invoice on DEA Form 236 to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537, not less than 15 calendar days prior to the proposed date of exportation, and distribute four copies of same as hereinafter directed in §1312.28 of this part.

(b) This invoice must be executed by the exporter in quintuplicate and include the following information.

(1) The name, address, and registration number, if any, of the exporter; and the name, address and registration number of the exporter broker, if any; and

(2) A complete description of the controlled substances to be exported including the drug name, dosage form, National Drug Code (NDC) number, the Administration Controlled Substances Code Number as set forth in part 1308 of this chapter, the number and size of packages or containers, the name and quantity of the controlled substance contained in finished dosage units, and the net quantity of any controlled substance (expressed in anhydrous acid, base, or alkaloid) given in kilograms or parts thereof; and

(3) The proposed export date, the port of exportation, the foreign port of entry, the carriers and shippers involved, method of shipment, the name of the vessel if applicable, and the name, address, and registration number, if any, of any forwarding agent utilized; and

(4) The name and address of the consignee in the country of destination, and any registration or license number if the consignee is required to have such numbers either by the country of destination or under United States law. In addition, documentation must be provided to show that:

(i) The consignee is authorized under the laws and regulations of the country of destination to receive the controlled substances, and that

(ii) The substance is being imported for consumption within the importing country to satisfy medical, scientific or other legitimate purposes, and that

(5) The reexport of non-narcotic controlled substances in Schedules III and

155　　　A.R. 74

§ 1312.28                                                 21 CFR Ch. II (4-1-05 Edition)

IV, and controlled substances in Schedule V is not permitted under the authority of 21 U.S.C. 953(e), except as provided below:

(i) Bulk substances will not be reexported in the same form as exported from the United States, i.e, the material must undergo further manufacturing process. This further manufactured material may only be reexported to a country of ultimate consumption.

(ii) Finished dosage units, if reexported, will be in a commercial package, properly sealed and labeled for legitimate medical use in the country of destination.

(iii) Any reexportation be made known to DEA at the time the initial DEA Form 236, Controlled Substances Import/Export Declaration is completed, by checking the box marked "other" on the certification. The following information will be furnished in the remarks section:

(A) Indicate "for reexport".

(B) Indicate if reexport is bulk or finished dosage units.

(C) Indicate product name, dosage strength, commercial package size, and quantity.

(D) Indicate name of consignee, complete address, and expected shipment date, as well as, the name and address of the ultimate consignee in the country to where the substances will be reexported.

(E) A statement that the consignee in the country of ultimate destination is authorized under the laws and regulations of the country of ultimate destination to receive the controlled substances.

(iv) Shipments which have been exported from the United States and are refused by the consignee in the country of destination, or are otherwise unacceptable or undeliverable, may be returned to the registered exporter in the United States upon authorization of the Drug Enforcement Administration. In this circumstance, the exporter in the United States shall file a written request for reexport, along with a completed DEA Form 236, Import Declaration with the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537. A brief summary of the facts that warrant the return of the substance to the United States

along with an authorization from the country of export will be included with the request. DEA will evaluate the request after considering all the facts as well as the exporter's registration status with DEA. The substance may be returned to the United States only after affirmative authorization is issued in writing by DEA.

(c) Notwithstanding the time limitations included in paragraph (a) of this section, a registrant may obtain a special waiver of these time limitations in emergency or unusual instances; provided that a specific confirmation is received from the Administrator or his delegate advising the registrant to proceed pursuant to the special waiver.

[36 FR 7815, Apr. 24, 1971, as amended at 37 FR 15923, Aug. 5, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 52 FR 17290, May 7, 1987; 62 FR 13969, Mar. 24, 1997]

§ 1312.28  Distribution of special controlled substances invoice.

The required five copies of the special controlled substances export invoice, DEA (or BND) Form 236, will be distributed as follows:

(a) Copy 1 shall accompany the shipment and remain with the shipment to its destination.

(b) Copy 2 shall accompany the shipment and will be detached and retained by appropriate customs officials at the foreign country of destination.

(c) Copy 3 shall accompany the shipment and will be detached by the District Director of the U.S. Customs Service at the port of exportation, who shall sign and date the certification of customs on such Copy 3, noting any changes from the entries made by the exporter, and shall then promptly forward Copy 3 to the Drug Control Section of the Administration.

(d) Copy 4 shall be forwarded, within the time limit required in § 1312.27 of this part, directly to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537. The documentation required by § 1312.27(b)(4) of this part must be attached to this copy.

156

**Drug Enforcement Administration, Justice**    **§1312.31**

(e) Copy 5 shall be retained by the exporter on file as his record of authority for the exportation.

[36 FR 7815, Apr. 24, 1971, as amended at 36 FR 13387, July 21, 1971. Redesignated at 36 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5318, Feb. 13, 1986; 52 FR 17291, May 7, 1987; 53 FR 45244; Nov. 30, 1988; 62 FR 13969, Mar. 24, 1997]

§1312.29  Domestic release prohibited.

An exporter or a forwarding agent acting for an exporter must either deliver the controlled substances to the port or border, or deliver the controlled substances to a bonded carrier approved by the consignor for delivery to the port or border, and may not, under any other circumstances, release a shipment of controlled substances to anyone, including the foreign consignee or his agent, within the United States.

§1312.30  Schedule III, IV, and V nonnarcotic controlled substances requiring an import and export permit.

The following Schedule III, IV, and V non-narcotic controlled substances have been specifically designated by the Administrator of the Drug Enforcement Administration as requiring import and export permits pursuant to sections 1002(b)(2) and 1003(e)(3) of the Act (21 U.S.C. 952(b)(2) and 953(e)(3)):

(a) Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a U.S. Food and Drug Administration approved product.

(b) [Reserved]

[52 FR 17291, May 7, 1987, as amended at 64 FR 35930, July 2, 1999]

TRANSSHIPMENT AND IN-TRANSIT SHIPMENT OF CONTROLLED SUBSTANCES

§1312.31  Schedule I: Application for prior written approval.

(a) A controlled substance listed in schedule I may be imported into the United States for transshipment, or may be transferred or transshipped within the United States for immediate exportation, provided that:

(1) The controlled substance is necessary for scientific, medical, or other legitimate purposes in the country of destination, and

(2) A transshipment permit has been issued by the Administrator.

(b) An application for a transshipment permit must be submitted to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537, at least 30 days, or in the case of an emergency as soon as practicable, prior to the expected date of importation, transfer or transshipment. Each application shall contain the following:

(1) The date of execution;

(2) The identification and description of the controlled substance;

(3) The net quantity thereof;

(4) The number and size of the controlled substance containers;

(5) The name, address, and business of the foreign exporter;

(6) The foreign port of exportation;

(7) The approximate date of exportation;

(8) The identification of the exporting carrier;

(9) The name, address and business of the importer, transferor, or transshipper;

(10) The registration number, if any, of the importer, transferor or transshipper;

(11) The U.S. port of entry;

(12) The approximate date of entry;

(13) The name, address and business of the consignee at the foreign port of entry;

(14) The shipping route from the U.S. port of exportation to the foreign port of entry;

(15) The approximate date of receipt by the consignee at the foreign port of entry; and

(16) The signature of the importer, transferor or transshipper, or his agent accompanied by the agent's title.

(c) An application shall be accompanied by an export license, permit, or a certified copy of the export license, permit, or other authorization, issued by a competent authority of the country of origin (or other documentary evidence deemed adequate by the Administrator)

(d) An application shall be accompanied by an import license or permit or a certified copy of such license or permit issued by a competent authority of the country of destination (or other documentary evidence deemed

(left margin fragments)
tion)
, the
with
s re-
ts as
sta-
y be
only
is
mita-
this
spe-
ms in
pro-
is re-
r his
pro-
r.
at 37
98 FR
45 FR
8, 1986;
Mar. 24,
con-
e spe-
rt in-
vill be
ship-
ent to
ship-
tained
at the
ship-
e Dis-
istoms
n, who
tion of
g any
by the
ly for-
ol Sec-
within
12.27 of
nforce-
rations
7. The
by
be at-



**§ 1312.32**

adequate by the Administrator), indicating that the controlled substance:

(1) Is to be applied exclusively to scientific, medical or other legitimate uses within the country of destination;

(2) Will not be exported from such country; and

(3) Is needed therein because there is an actual shortage thereof and a demand therefor for scientific, medical or other legitimate uses within such country.

(e) Verification by an American consular officer of the signatures on a foreign import license or permit shall be required, if such license or permit does not bear the seal of the authority signing them.

(f) The Administrator may require an applicant to submit such documents or written statements of fact relevant to the application as he deems necessary to determine whether the application should be granted. The failure of the applicant to provide such documents or statements within a reasonable time after being requested to do so shall be deemed to be a waiver by the applicant of an opportunity to present such documents or facts for consideration by the Administrator in granting or denying the application.

(g) The Administrator shall, within 21 days from the date of receipt of the application, either grant or deny the application. The applicant shall be accorded an opportunity to amend the application, with the Administrator either granting or denying the amended application within 7 days of its receipt. If the Administrator does not grant or deny the application within 21 days of its receipt, or in the case of an amended application, within 7 days of its receipt, the application shall be deemed approved and the applicant may proceed.

[36 FR 7815, Apr. 24, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973, and further amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13969, Mar. 24, 1997]

**§ 1312.32  Schedules II, III, IV: Advance notice.**

(a) A controlled substance listed in Schedules II, III, or IV may be imported into the United States for trans-

**21 CFR Ch. II (4-1-05 Edition)**

shipment, or may be transferred or transshipped within the United States for immediate exportation, provided that written notice is submitted to the Drug Enforcement Administration, Drug Operations Section, Washington, DC 20537, at least 15 days prior to the expected date of importation, transfer or transshipment.

(b) Each advance notice shall contain those items required by § 1312.31 (b) and (c).

[36 FR 7815, Apr. 24, 1971, Redesignated at 38 FR 26609, Sept. 24, 1973, and amended at 45 FR 74715, Nov. 12, 1980; 51 FR 5319, Feb. 13, 1986; 53 FR 48244, Nov. 30, 1988; 62 FR 13969, Mar. 24, 1997]

### HEARINGS

**§ 1312.41  Hearings generally.**

(a) In any case where the Administrator shall hold a hearing regarding the denial of an application for an import, export or transshipment permit, the procedures for such hearing shall be governed generally by the adjudication procedures set forth in the Administrative Procedure Act (5 U.S.C. 551–559) and specifically by sections 1002 and 1003 of the Act (21 U.S.C. 952 and 953), by §§ 1312.42–1312.47, and by the procedures for administrative hearings under the Act set forth in §§ 1316.41–1316.67 of this chapter.

(b) [Reserved]

[36 FR 23625, Dec. 11, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

**§ 1312.42  Purpose of hearing.**

(a) If requested by a person applying for an import, export, or transshipment permit, the Administrator shall hold a hearing for the purpose of receiving factual evidence regarding the issues involved in the issuance or denial of such permit to such person.

(b) Extensive argument should not be offered into evidence but rather presented in opening or closing statements of counsel or in memoranda or proposed findings of fact and conclusions of law.

[36 FR 23625, Dec. 11, 1971, as amended at 37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

158

Drug Enforcement Administration, Justice                    §1312.47

§1312.43  Waiver or modification of rules.

The Administrator or the presiding officer (with respect to matters pending before him) may modify or waive any rule in this part by notice in advance of the hearing, if he determines that no party in the hearing will be unduly prejudiced and the ends of justice will thereby be served. Such notice of modification or waiver shall be made a part of the record of the hearing.

[36 FR 23625, Dec. 11, 1971. Redesignated at 38 FR 26609, Sept. 24, 1973]

§1312.44  Request for hearing or appearance; waiver.

(a) Any applicant entitled to a hearing pursuant to §1312.42 and who desires a hearing on the denial of his application for an import, export, or transshipment permit shall, within 30 days after the date of receipt of the denial of his application, file with the Administrator a written request for a hearing in the form prescribed in §1316.47 of this chapter.

(b) Any applicant entitled to a hearing pursuant to §1312.42 may, within the period permitted for filing a request for a hearing, file with the Administrator a waiver of an opportunity for a hearing, together with a written statement regarding his position on the matters of fact and law involved in such hearing. Such statement, if admissible, shall be made a part of the record and shall be considered in light of the lack of opportunity for cross-examination in determining the weight to be attached to matters of fact asserted therein.

(c) If any applicant entitled to a hearing pursuant to §1312.42 fails to appear at the hearing, he shall be deemed to have waived his opportunity for the hearing unless he shows good cause for such failure.

(d) If the applicant waives or is deemed to have waived this opportunity for the hearing, the Administrator may cancel the hearing, if scheduled, and issue his final order pursuant to §1312.47 without a hearing.

[37 FR 15923, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

§1312.45  Burden of proof.

At any hearing on the denial of an application for an import, export, or transshipment permit, the Administrator shall have the burden of proving that the requirements for such permit pursuant to sections 1002, 1003, and 1004 of the Act (21 U.S.C. 952, 953, and 954) are not satisfied.

[37 FR 15924, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

§1312.46  Time and place of hearing.

(a) If any applicant for an import, export, or transshipment permit requests a hearing on the issuance or denial of his application, the Administrator shall hold such hearing. Notice of the hearing shall be given to the applicant of the time and place at least 30 days prior to the hearing, unless the applicant waives such notice and requests the hearing be held at an earlier time, in which case the Administrator shall fix a date for such hearing as early as reasonably possible.

(b) The hearing will commence at the place and time designated in the notice given pursuant to paragraph (a) of this section but thereafter it may be moved to a different place and may be continued from day to day or recessed to a later day without notice other than announcement thereof by the presiding officer at the hearing.

[37 FR 15924, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]

§1312.47  Final order.

As soon as practicable after the presiding officer has certified the record to the Administrator, the Administrator shall issue his order on the issuance or denial of the application for and import, export, or transshipment permit. The order shall include the findings of fact and conclusions of law upon which the order is based. The Administrator shall serve one copy of his order upon the applicant.

[37 FR 15924, Aug. 8, 1972. Redesignated at 38 FR 26609, Sept. 24, 1973]



**U. S. Department of Justice**
Drug Enforcement Administration

---

*www.dea.gov*                    Washington, D.C. 20537

JUL 21 2003

This letter is in response to your correspondence regarding your firm's plans to market a generic dronabinol product in the United States. You have requested a response in the form of a letter of non-objection from the Drug Enforcement Administration (DEA) for the importation of such product, given the drug product's approval by the Food and Drug Administration (FDA) and application to permit its importation by a DEA registered importer. The following provides an overview of the control status of the substances that you may be handling along with the appropriate import requirements.

Tetrahydrocannabinols (THC) and all of its isomers (including the active pharmaceutical ingredient in dronabinol, synthetic delta-9-THC) are classified as Schedule I controlled substances under the Controlled Substances Act (CSA, 21 U.S.C. §812 Schedule I (c)). The Food and Drug Administration (FDA) is responsible for the approval of drug products. When dronabinol is formulated into the FDA-approved drug product known as Marinol™, it is controlled in Schedule III. Your proposed project would involve the manufacture of a drug product that is not yet approved by the FDA, thus it would be controlled in Schedule I of the CSA. Therefore, at this time, any import of the proposed material would require an import permit for a Schedule I substance. If your drug product is approved by the FDA in the future and placed into Schedule III of the CSA, then an import permit for a Schedule III substance would be required.

Should you require any further assistance, please contact me at (202)307-7183.

Sincerely,

Frank L. Sapienza, Chief
Drug and Chemical Evaluation Section

Enclosure

A.R. 79

cc:    ODE Subject
       ODE Chron
       ODE Strait
ODE:CAS___
ODE:MJS___:jlm:307-7183:05/02/03



**U. S. Department of Justice**
Drug Enforcement Administration

---

*www.dea.gov*                    Washington, D.C.  20537

NOV 21 2003

This letter is in response to your correspondence re⬛⬛⬛⬛plans to develop a generic dronabinol product at a ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛proposes to complete required bio-equivalence studies in the United States, thus requiring importation of the substance prior to such approval by the Food and Drug Administration (FDA). The following provides an overview of the control status of the substances that you may be handling along with the appropriate import requirements.

Tetrahydrocannabinols (THC) and all of its isomers including the active pharmaceutical ingredient in dronabinol (synthetic delta-9-THC), are classified as Schedule I controlled substances under the Controlled Substances Act (CSA, 21 U.S.C. §812 Schedule I (c)). The FDA is responsible for the approval of drug products. When dronabinol is formulated into the FDA-approved drug product known as Marinol™, it is controlled in Schedule III. Your proposal involves the manufacture of a drug product that is not yet approved by the FDA, thus it would be controlled in Schedule I. Therefore, the proposed importation required for research purposes prior to its approval by the FDA will require an import permit for a Schedule I substance. If your drug product is subsequently approved by the FDA in the future and placed into Schedule III of the CSA, then an import permit for a Schedule III substance would be required.

Should you require any further assistance, please contact me at (202)307-7183.

Sincerely,

Frank L. Sapienza, Chief
Drug and Chemical Evaluation Section

Enclosure
cc:      ODE Subject
         ODE Chron
         ODE Strait
ODE:CAS___
ODE:MJS___:jlm:307-7183:11-20-03

A.R. 81

**U. S. Department of Justice**
Drug Enforcement Administration
Washington, D.C. 20537

_www.dea.gov_

**JUN – 9 2004**

I am writing in response to your letters dated March 8, 2004 and May 11, 2004 (enclosed). Based on the information you provided, it appears that your firm, ████████ ████████ are ultimately seeking from the Food and Drug Administration (FDA) approval to market a generic form of Marinol™. As part of that FDA approval·process, you indicate that████ ████████wish to import the "finished dosage" of the drug into the United States to conduct "biostudies for the ANDA" (Abbreviated New Drug Application) pursuant to a Drug Enforcement Administration (DEA) research registration. You ask that DEA provide you with the "exact rules and regulations" that are applicable to this situation. While we appreciate your efforts to ensure that the proposed activity will be conducted in a legally permissible manner, please be advised that it is not within DEA's authority to respond to an individual request to conduct a legal evaluation of a proposed business venture and enumerate all the corresponding statutory and regulatory provisions. We can, however, provide you with the following information.

If a drug product contains any quantity of tetrahydrocannabinols (THC), such product is a schedule I controlled substance unless and until the FDA has approved the product for marketing in the United States. If and when a product is approved by the FDA as a generic form of Marinol™ (synthetic dronabinol in sesame oil and encapsulated in a soft gelatin capsule in an FDA-approved product), the current DEA regulations provide that such product is a schedule III controlled substance. 21 CFR 1308.13(g)(1).

As set forth in the Controlled Substances Act (CSA), a schedule I controlled substance may be imported into the United States in limited quantities exclusively for research purposes. 21 USC 952(a)(2)(C). Additional requirements for importation of schedule I controlled substances are set forth in the corresponding provisions of the DEA regulations, 21 CFR 1312.11 to 1312.17. As.these provisions indicate, such importation is permissible only by a person or entity that has obtained the appropriate DEA registration and import permit. A person who is registered to conduct research with a schedule I controlled substance may import that substance, provided that such import is set forth in the protocol submitted to DEA along with the application for registration. 21 CFR 1301.13(e)(1). The schedule I research protocol requirements are set forth in 21 CFR 1301.18.

███████████████                                          Page Two

Once imported into the United States, the importer may only distribute the schedule I controlled substance to other persons registered to conduct research with such substance, provided such distribution is pursuant to a DEA order form and otherwise complies with the CSA and DEA regulations.

Should the product be approved by the FDA and meet the criteria for placement in schedule III, please note that the CSA requirements for importation of a schedule III nonnarcotic controlled substance are set forth in 21 USC 952(b) and the corresponding DEA regulatory requirements can be found in 21 CFR 1312.11 to 1312.19.

With regard to a meeting in ███████████ the DEA will not be able to support your request. As a matter of policy, the DEA abstains from activities which may appear as an endorsement of the product development efforts of a private firm.

If you require any further assistance, please contact me at (202)307-7183.

Sincerely,

Christine A. Sannerud, Ph.D., Chief
Drug and Chemical Evaluation Section

Enclosures

cc: ODE Chron
    ODE Subject
    ODE Strait
ODE:SMC___
ODE:MJS___:mjs:353-7895:06/06/2004

APPROVED OMB NO. 1117-0012

**A.R. 84**

READ INSTRUCTIONS BEFORE COMPLETING
USE BLACK INK

**RENEWAL**

**APPLICATION FOR DEA REGISTRATION
UNDER CONTROLLED SUBSTANCES ACT OF 1970**

FORM DEA-225a (11-00)
*Previous editions are obsolete*

No registration will be issued unless a
completed application form has been received
(21 CFR 1301.13).

| | |
|---|---|
| **1. DRUG SCHEDULES:** (Fill-in all circles that apply) | ● SCHEDULE I   ● SCHEDULE III NARCOTIC   ○ SCHEDULE IV |
| | ● SCHEDULE II   ● SCHEDULE III NON NARCOTIC   ○ SCHEDULE V |

**2. INDICATE HERE IF YOU REQUIRE ORDER FORM BOOKS.**  ○

**3. SUPPLY ANY OTHER DEA REGISTRATION NUMBERS FOR ANY CLASS OF BUSINESS AT THE ADDRESS SHOWN ON THIS APPLICATION**

**4. MANUFACTURERS ONLY**
Mark Categories and Schedules applicable in the circles to the right. (Definitions on reverse of instruction sheet.)

| | MANUFACTURERS CATEGORIES | SCHEDULES |
|---|---|---|
| | | I   II   III-Non   IV   V |
| A | ○ Bulk, Synthesizer - Extractor | ○ ○ ○ ○ ○ ○ |
| B | ○ Dosage Form | ● ● ● ● ● ● |
| C | ○ Repacker - Relabeler | ○ ○ ○ ○ ○ ○ |
| D | ○ Non-Human Consumption | ○ ○ ○ ○ ○ ○ |

**5. ALL APPLICANTS MUST ANSWER THE FOLLOWING:**

(a) Are you currently authorized to prescribe, distribute, dispense, conduct research, or otherwise handle the controlled substances in the schedules for which you are applying under the laws of the state or jurisdiction in which you are operating or propose to operate?

● YES - STATE LICENSE NO.                    ○ N/A Dist. -

○ YES - STATE CONTROLLED SUBSTANCE NO.           ● N/A

If you have answered yes to the following question(s) on previous applications, you **must** continue to answer yes and provide a statement of explanation.

(b) Has the applicant ever been convicted of a crime in connection with controlled substances under state or federal law?  ○ YES  ● NO

(c) Has the applicant ever surrendered or had a federal controlled substance registration revoked, suspended, restricted or denied?  ○ YES  ● NO

(d) Has the applicant ever surrendered or ever had a state professional license or controlled substance registration revoked, suspended, denied, restricted, or placed on probation? Is any such action pending?  ○ YES  ● NO

(e) If the applicant is a corporation (other than a corporation whose stock is owned and traded by the public), association, partnership, or pharmacy, has any officer, partner, stockholder or proprietor been convicted of a crime in connection with controlled substances under state or federal law, or ever surrendered or had a federal controlled substance registration revoked, suspended, restricted or denied, or ever had a state professional license or controlled substance registration revoked, suspended, denied, restricted, or placed on probation?  ○ YES  ● NO  ○ N/A

**6. EXPLANATION FOR ANSWERING "YES" TO ITEM(S) 5(b), (c), (d), or (e).**
Applicants who have answered "yes" to item(s) 5 (b), (c), (d), or (e) are required to submit a statement explaining such response(s). The space provided below should be used for this purpose. If additional space is needed, use a separate sheet and return with application.

ATTACH CHECK HERE

DEA REGISTRATION NUMBER.

YOUR CURRENT REGISTRATION EXPIRES ON

**ATTENTION**

1, 2, 3, 3N, 4, 5

CURRENT RENEWAL FREE $125 FOR ONE YEAR

7. DRUG CODE NUMBERS must coincide with the schedules requested. Listed below are the drug code requirements for each business activity. (If additional space is needed, use a separate sheet and return with application.)

Analytical LAB - Not required to list drug codes
Distributor - Schedule I
Importer - Schedule I thru V
Exporter - Schedule I thru V

Researcher - Schedule I and II (See item I, Researcher on Instruction Sheet)
Manufacturer - Schedule I, II, III, IIIN in addition to codes furnished, bulk manufacturer (symbolized/version) applicants MUST circle below those "Basic Classes" of controlled substances in Schedule I and II which you propose to "Manufacture in Bulk." (If additional space is required, use a separate sheet and return with application.)

See Additional Sheet

| 2465 | 9273 | 9193 | 9220 | 9143 | 1100 | 9800 | 7000 | 2262 |
| 9050 | 9170 | 9150 | 9300 | 9652 | 1640 | 9810 | 2100 | 9210 |

8. MAKE AN ADDRESS CHANGE, IF NECESSARY. INCLUDE TAXPAYER IDENTIFYING NUMBER AND/OR SOCIAL SECURITY NUMBER.

NAME: APPLICANT OR BUSINESS (Last)

(First, MI)

TAXPAYER IDENTIFYING NUMBER    and/or    SOCIAL SECURITY NUMBER

The Debt Collection Improvement Act of 1996 (PL 104-134) requires that you furnish your Taxpayer Identifying Number and/or Social Security Number to DEA. This number is required for debt collection procedures should your fee become uncollectable.

PROPOSED BUSINESS ADDRESS (When using a P.O. Box you must also provide a street address)

CITY    STATE    ZIP CODE

APPLICANTS BUSINESS PHONE NUMBER    APPLICANT'S FAX NUMBER

9. PAYMENT METHOD (Fill-in only one circle)

○ VISA    ○ MASTER CARD    ● CHECK    FEES ARE NOT REFUNDABLE

CREDIT CARD NUMBER    EXPIRATION DATE

SIGNATURE OF CARD HOLDER

10. CERTIFICATION FOR FEE EXEMPTION (Fill-in Circle)
○ FILL-IN CIRCLE IF APPLICANT NAMED HERON IS A FEDERAL, STATE, OR LOCAL GOVERNMENT OPERATED ANALYTICAL LAB OR RESEARCHER. The undersigned hereby certifies that the applicant named hereon is a federal, state, or local government operated analytical lab or researcher, and is exempt from the payment of the application fee.

SIGNATURE OF CERTIFYING OFFICIAL (other than applicant)    DATE

PRINT OR TYPE NAME OF CERTIFYING OFFICIAL    PRINT OR TYPE TITLE OF CERTIFYING OFFICIAL

11. APPLICANT SIGNATURE (must be an original signature in ink) ► Remove form from package before signing.

SIGNATURE    DATE

I hereby certify that the foregoing information furnished on this application is true and correct.

PRINT OR TYPE NAME

PRINT OR TYPE TITLE (e.g., President, Dean, Procurement Officer, etc.....)

FORM DEA-225a (11-00)

RETURN COMPLETED APPLICATION
WITH FEE IN ATTACHED ENVELOPE

MAKE CHECK OR MONEY ORDER
PAYABLE TO:

DRUG ENFORCEMENT ADMINISTRATION

UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
CENTRAL STATION
P.O. BOX 28083
WASHINGTON, D.C. 20038-8083

For information, call 1 (800) 882-9539
See "Privacy Act" information on last page of application

MAKE A COPY FOR YOUR RECORDS.

April 12, 2005

Dear Mr. Dubai:

Included in this letter, is the information you requested to complete the registration for #

Code 2783- Zolpidem API; ███████ supplier needs export license only

Code 2781 – Zaleplon API; ███████████ supplier needs export license only

Code 7369, 7370 – Dronabinol API; ██████████ supplier required to have an export license only

Code 9810 – Morphine; ███████████████ DEA #███████

Code 4000 – Esterified Estrogens API and Methyltestosterone API; ████████ DEA #███████

████████ intends to distribute the finished product Morphine Sulfate to wholesalers like Cardinal and McKesson as well as chains like Walgren's and CVS.

Please see page 2 which includes a list of all codes that we need to register for both #████████ and #████████

Sincerely,

A.R. 86



DEA Registration #

**Additional Drug Codes**

(9168)

(9801)

(7369)

(7370)

(2781)

(2783)

Apr.18. 2005  5:06PM    No.2951   P. 2

*Attachment 2*
*DOR 4/20/05*
*SECR-05-9111*

April 18, 2005

Dear Mr. Doubet:

Please ignor the following codes from the application for [ ] registration #[ ]
They were included in error.

Code 2783 - Zolpidem, Schedule 4

Code 2781 – Zaleplon, Schedule 4

Code 7370 – Tetrahydrocannabinols, Schedule 1

Code 7369 – Dronabinol, Schedule 3

Code 9810 – Morphine, Schedule 3

Code 2467 – Dichloralphenazone, Schedule 4

Sincerely,



Meeting with DEA
Ms. Ann Carter
July 6, 2005


AGENDA


- Production – Direction we are taking

- List of Narcotics as tabs caps or liquids

- Packaging of hydromorphone

- The keeping of DEA narcotic samples – 2 dosage units (Century Safe)

- Security Issues
    (a)      Armed Robberies
    (b)      Hijackings

- Import

- Export

- Relationship with

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | | 4. G-DEP Identifier |
|---|---|---|---|---|---|
| 5. By: John Robertson, D/I At: ▮▮▮▮, FD | ☒ ☒ ☐ ☐ ☐ | ▮▮▮▮▮▮ | 6. File Title ▮▮▮▮▮▮▮▮▮ | | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 07/06/05 | | |
| 9. Other Officers: DPM Ann Carter, G/S Cheryle E. Brown | | | | | |
| 10. Report Re: MEETING WITH MANAGEMENT DEA ▮▮▮▮ (MR00) | | | | | |

### DETAILS

1. On 07/06/05, Diversion Program Manager Ann Carter, Group Supervisor Cheryl E. Brown, and Diversion Investigator John Robertson met with ▮▮▮▮▮▮▮▮ officials; ▮▮▮▮▮▮▮▮▮▮▮▮. The ▮▮▮▮▮ officials requested the meeting with DEA to discuss future plans the company intends to implement. Agenda items presented by the ▮▮▮▮▮ officials included a list of controlled substances the firm plans to start importing, manufacturing, distributing, and exporting. (July 6, 2005 ▮▮▮▮▮ ▮▮▮▮▮▮ Agenda, attachment #1).

2. The ▮▮▮▮▮ officials explained problems they had been having with a poorly functioning filling machine which resulted in the over-filling and under-filling of 3 lots of hydromorphone. The officials explained that they have since discontinued the use of the machine, and have reconciled the remaining inventory to the best of their knowledge.

3. The ▮▮▮▮▮ officials requested permission to keep controlled substance samples, (small quantities) in a wall safe located in the president's office. The request was taken under consideration and a determination will be forwarded to ▮▮▮▮▮ from the DEA.

4. The ▮▮▮▮▮ officials also discussed several security issues and solicited suggestions to improve security at the firm's two

| 11. Distribution: Division | 12. Signature (Agent) John Robertson, Diversion Investigator | | 13. Date |
|---|---|---|---|
| District | 14. Approved (Name and Title) Cheryle E. Brown Group Supervisor | | 15. Date |
| Other   ODO/SARI | | | |

DEA Form   - 6
(Jul. 1996)
JWR

**DEA SENSITIVE**
Drug Enforcement Administration

A.R.  90

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 1. File No. ██████████ | 2. G-DEP Identifier |
| | 3. File Title ███████████████ | |
| 4.<br>Page  2  of  2 | | |
| 5. Program Code | 6. Date Prepared<br>07/06/05 | |

locations. It was suggested that the firm, when transporting
controlled substances between their ███████ site and their
████████████████ site, should ███████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
where offered only as suggestions' for consideration by the firm.

5. The ████████ officials also discussed their future plans to obtain
Import and Export registrations, and ████████ capital loan to ████
████████████ and the firm's potential business association with ████
████████████████████████████████████████

6. The DEA representatives advised the company that its plan to import
and then re-export a controlled product without the company making
any changes to the product would probably not be approved by DEA.

<u>**INDEXING**</u>



1. ████████████████████; NADDIS ███████████

2. ████████████████████████████

3. ████████████████████████████████████████████████████████████

4. ████████████████████████████████████████████████████████████

5. ████████████████████████████

**DEA SENSITIVE**
Drug Enforcement Administration

A.R.  91

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

P. 07/29

TO 82023874946

MAY 26 2006 17:39 FR DEA REGISTRATION

A.R. 92

Attachment #3

**APPLICATION FOR REGISTRATION**
**UNDER CONTROLLED SUBSTANCES ACT OF 1970**

READ INSTRUCTIONS BEFORE COMPLETING
USE BLACK INK

NAME: APPLICANT OR BUSINESS(LAST)

(First, MI)

APPROVED OMB NO. 1117-0012
FORM DEA-225 (11-00)
*Previous editions are obsolete*

No registration will be issued unless a completed application form has been received (21 CFR 1301.13).

The Debt Collection Improvement Act of 1996 (PL 104-134) requires that you furnish your Taxpayer Identifying Number and/or Social Security Number to DEA. This number is required for debt collection procedures should your fee become uncollectible.

TAX IDENTIFYING NUMBER        and/or        SOCIAL SECURITY NUMBER

PROPOSED BUSINESS ADDRESS        *(When using a P.O. Box you must also provide a street address)*

CITY        STATE        ZIP CODE

APPLICANT'S BUSINESS PHONE NUMBER        APPLICANT'S FAX NUMBER        FOR DEA USE ONLY

| 1. BUSINESS ACTIVITY: (Fill-in Circle) | E. ○ MANUFACTURER   F. ○ DISTRIBUTOR   G. ○ RESEARCHER   H. ○ ANALYTICAL LAB   J. ● IMPORTER   K. ○ EXPORTER |

2. DRUG SCHEDULES: *(Fill in all circles that apply)*
○ SCHEDULE I    ○ SCHEDULE III NARCOTIC    ● SCHEDULE IV
○ SCHEDULE II    ● SCHEDULE III NON NARCOTIC    ○ SCHEDULE V

3. INDICATE HERE IF YOU REQUIRE ORDERFORM BOOKS    ○

4. SUPPLY ANY OTHER DEA REGISTRATION NUMBERS FOR ANY CLASS OF BUSINESS AT THE ADDRESS SHOWN ON THIS APPLICATION

5. MANUFACTURERS ONLY
Mark category and Schedules applicable in the circles to the right (Definitions on reverse of instruction sheet)

| MANUFACTURES CATEGORIES | SCHEDULES I | II | III Non | III | IV | V |
|---|---|---|---|---|---|---|
| A ○ Bulk, Synthesizer - Extractor | ○ | ○ | ○ | ○ | ○ | ○ |
| B ○ Dosage Form | ○ | ○ | ○ | ○ | ○ | ○ |
| C ○ Repacker - Relabeler | ○ | ○ | ○ | ○ | ○ | ○ |
| D ○ Non-Human Consumption | ○ | ○ | ○ | ○ | ○ | ○ |

6. ALL APPLICANTS MUST ANSWER THE FOLLOWING:

(a) Are you currently authorized to prescribe, distribute, dispense, conduct research, or otherwise handle the controlled substances in the schedules for which you are applying under the laws of the state or jurisdiction in which you are operating or propose to operate?

○ YES - State License No.        ○ PENDING    ○ N/A

○ YES - State Controlled Substance No.        ○ PENDING    ○ N/A

ATTENTION ▷        Researcher, LAB $130; Dist., Importer, Exporter $813; Manuf $1,625: For 1 YR   Continue on Reverse ▶

P. 08/29    TO 8023074946    MAY 26 2006 17:40 FR DEA REGISTRATION

A.R. 93

**6. CONTINUED**

(b) Has the applicant ever been convicted of a crime in connection with controlled substances under state or federal law?  ○ YES  ● NO

(c) Has the applicant ever surrendered or had a federal controlled substance registration revoked, suspended, restricted or denied?  ○ YES  ● NO

(d) Has the applicant ever surrendered — or ever had a state professional license or controlled substance registration revoked, suspended, denied, restricted, or placed on probation? Is any such action pending?  ○ YES  ● NO

(e) If the applicant is a corporation (other than a corporation whose stock is owned and traded by the public), association, partnership, or pharmacy, has any officer, partner, stockholder or proprietor been convicted of a crime in connection with controlled substances under state or federal law, or ever surrendered or had a federal controlled substance registration revoked, suspended, restricted or denied or ever had a state professional license or controlled substance registration revoked, suspended, denied, restricted, or placed on probation?  ○ YES  ● NO  ○ N/A

**7. EXPLANATION FOR ANSWERING "YES" TO ITEM(S) 6(b), (c), (d), OR (e).** Applicants who have answered "yes" to item(s) 6(b), (c), (d), or (e) are required to submit a statement explaining such response(s). The space provided below should be used for this purpose. If additional space is needed, use a separate sheet and return with application.

**8. DRUG CODE NUMBERS** must coincide with the schedules requested. Listed below are the Drug Code requirements for each business activity:

Analyst/Lab - Not required for all drug codes
Distributor - Schedule I
Importer - Schedule II thru V
Exporter - Schedule II thru V

Researcher - Schedule I and II (see item)
Manufacturer - Schedule I, II, III, IIN in addition to codes furnished, bulk manufacturers (synthesizers/extractors) applicants MUST Circle Below three "Basic Classes" of controlled substances in Schedule I and II which you propose to "Manufacture in Bulk" If additional space is required, use a separate sheet and return with application.

**9. PAYMENT METHOD (Fill in only one circle)**    FEES ARE NOT REFUNDABLE

○ VISA    ○ MASTER CARD    ● CHECK

CREDIT CARD DATE        EXPIRATION DATE

SIGNATURE OF CARD HOLDER

**10. CERTIFICATION FOR FEE EXEMPTION (Fill-in Circle)**

○ FILL-IN CIRCLE IF APPLICANT NAMED HEREON IS A FEDERAL, STATE, OR LOCAL GOVERNMENT OPERATED HOSPITAL, INSTITUTION, OR OFFICIAL. The undersigned hereby certifies that the applicant named hereon is a federal, state, or local government operated analytical lab or researcher, and is exempt from payment of the application fee.

SIGNATURE OF CERTIFYING OFFICIAL (other than applicant)    DATE

PRINT OR TYPE NAME OF CERTIFYING OFFICIAL    PRINT OR TYPE TITLE OF CERTIFYING OFFICIAL

**11. APPLICANT SIGNATURE (must be an original signature in ink).** Remove form from package before signing

SIGNAT[...]    DATE

I hereby certify that the foregoing information furnished on this application is true and correct.

Print or type name

Print or type Title (e.g., President, Dean, Procurement Officer, etc...)

MAKE A COPY FOR YOUR RECORDS.

**RETURN COMPLETED APPLICATION WITH FEE IN ATTACHED ENVELOPE**

*MAKE CHECK PAYABLE TO:*

*DRUG ENFORCEMENT ADMINISTRATION*

UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
CENTRAL STATION
P.O. BOX 28083
WASHINGTON, D.C. 20038-8083

For information, call 1 (800) 882-9539
See "Privacy Act" information on last page of application.

### Import Registration Information

**Material :** Dronabinol , Schedule 3, Code # 7369

**Foreign Port of Exportation:** ████████████████

**Point of Importation:** New York

**Supplier of Material :** ████████████████████

**Amount of Material :** Initial amount: 9 kg ; Annual amount 35 kg/year

**Transport to**███████ via overland common carrier

███████ **Security and Record Keeping:** ████████████will be involved with the security and record keeping for the material.  The material will ship to███████████████████ facility.  The building is equipped with an alarmed vault, alarmed DEA cage, and security card access.  In addition, the whole warehouse area is a restricted access area with only certain employees having access to the area.

**Material will be used for** : Product Development

attachment #..5

### Import Registration Information - continued

**Material :** Zolpidem, Schedule 4, Code # 2783

**Foreign Port of Exportation:** ███████

**Point of Importation:** New York

**Supplier of Material :** ████████████████████
███

**Amount of Material :** Initial amount:18 kg ; Annual amount 70 kg/year

**Transport to** ███ via overland common carrier

███    **Security and Record Keeping:** ████████ will be involved with the
security and record keeping for the material. The material will ship to ███
███████ facility. The building is equipped with an alarmed vault, alarmed
DEA cage, and security card access. In addition, the whole warehouse area is a restricted
access area with only certain employees having access to the area.

**Material will be used for** : Product Development

A.R. 95

## Import Registration Information – continued

**Material :** Zaleplon, Schedule 4, Code # 2781

**Foreign Port of Exportation:** ██████████████

**Point of Importation:** New York

**Supplier of Material :** ████████████████████████
████████████

**Amount of Material :** Initial amount:84 kg ; Annual amount 335 kg/year

**Transport to** ██████ via overland common carrier

████████ **Security and Record Keeping:** ████████████ will be involved with the security and record keeping for the material. The material will ship to ███████████
████████████ facility. The building is equipped with an alarmed vault, alarmed DEA cage, and security card access. In addition, the whole warehouse area is a restricted access area with only certain employees having access to the area.

**Material will be used for :** Product Development



September 30, 2005

Mr. John Robertson
Drug Enforcement Administration
600 Arch Street, Room 10224
Philadelphia, PA 19106

Subject: Letter of Request to modify registration to handle additional controlled
substances – revised letter

Dear Mr. Robertson:

I would like to request to modify our registration to handle the following controlled substances as a
manufacturer.

1. Registrant information:

         DEA Manufacturer
                             Registration Number:

2. Substances to be added:

   Substance           Schedule        DEA Control Number
   Dronabinol          C- III N              7369

3. The purpose will be to add Dronabinol to our manufacturing site registration as an approved
   Controlled Substance for the above mentioned registration.

4. _____ is requesting the that _____ site to be the designated central record
   location for the company in accordance with §1304.04 of 21 CFR.

Sincerely,






September 30, 2005

Mr. John Robertson
Drug Enforcement Administration
600 Arch Street, Room 10224
Philadelphia, PA 19106

**Subject: Letter of Request to modify registration to handle additional controlled substances-revised letter**

Dear Mr. Robertson:

I would like to request to modify our registration to handle the following controlled substances as a manufacturer.

1.  Registrant information:

      DEA Manufacturer
                          Registration Number:

2.  Substances to be added:

| Substance | Schedule | DEA Control Number |
|-----------|----------|--------------------|
| Dronabinol | C- III N | 7369 |

3.  The purpose will be to add Dronabinol to our manufacturing site registration as an approved Controlled Substance for the above mentioned registration.

Sincerely,





**U. S. Department of Justice**
Drug Enforcement Administration

Washington, D.C. 20537

**DEC 0 1 2005**

This is in response to your letter dated September 28, 2005, in which you requested the legal status of the drug product your company is developing, a generic form of Marinol, under the Controlled Substances Act (CSA).   You state that the active ingredient, delta-9-tetrahydrocannabinol, is obtained from cannabidiol extracted from the marijuana plant, *Cannabis sativa L.*

At present, the only product formulation containing tetrahydrocannabinols (THC) that is listed in a schedule other than schedule I is "dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a United States Food and Drug Administration approved product." *See* 21 CFR §1308.13(g)(1).  Thus any drug product containing natural THC (i.e. THC derived from the cannabis plant) is a schedule I product.

Please be advised however, that under the CSA, any interested party may petition DEA to initiate proceedings to amend the schedules of controlled substances, as set forth in 21 USC §811(a) and 21 CFR §1308.43.

Sincerely,

Christine A. Sannerud, Ph.D., Chief
Drug & Chemical Evaluation Section

cc: New Jersey Division Office
ODE Subject
ODE Chron
ODEQ Strait (4745)
ODE: SMC_____
CCC: DD_____
ODEQ:MJS_____:mjs:307-7183:10/06/05, reformatted 11/14/05, 12/01/05

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 10

| 1. Program Code | 2. Cross File | Related Files | 3. File No. ▮▮▮▮ | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: D/I Michelle McGregor<br>At ▮▮▮▮▮▮▮▮▮ | ☐<br>☐<br>☐<br>☐ | | 6. File Title APPROVAL OF APPLICATION<br>CLASS B (DEA 225) | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared<br>12/20/05 | |

9. Other Officers: DI John Robertson

| 10. Report Re: ▮▮▮▮▮▮▮▮▮▮,    IMPORTER (IE10)    Control #▮▮▮▮▮▮ |
|---|

### SYNOPSIS

▮▮▮▮▮▮▮▮▮, has made application for registration as an
importer of the controlled substances: Zaleplon, Zolpidem and Dronabinol.
On ▮▮▮▮▮▮▮▮, Registration Specialist Maria Mendoza issued DEA
#▮▮▮▮▮ to ▮▮▮▮▮▮▮▮▮, for registration as an importer.

### DETAILS

1.  Reference is made to a new application for registration as an
    importer of controlled substances submitted by ▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮. The application
    was submitted and signed by ▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮ on ▮▮▮▮. ▮▮▮ is registered with the U.S. Food and Drug
    Administration with registration number ▮▮▮▮▮, (with no
    expiration date), The ▮▮▮▮▮▮ as a Manufacturer
    (Prescriptions) with registration #▮▮▮▮▮, expiration date of
    June 30, 2006, and the ▮▮▮▮▮▮▮▮ as a
    Wholesaler/Distributor, registration #▮▮▮▮▮ with an expiration
    date of June 30, 2006 (Attachment #1 & #2). ▮▮▮ is requesting
    registration as an Importer of Schedule 3N and 4 controlled
    substances. ▮▮▮ anticipates importing the following drug codes:
    Dronabinol (7369), Zolpidem (2783) and Zaleplon (2781) for product
    development.  A copy of this application is submitted as attachment
    #3.

| 11. Distribution:<br>Division<br><br>District<br><br>Other   SARI/ODRR | 12. Signature (Agent)<br><br>Michelle McGregor , DI | 13. Date |
|---|---|---|
| | 14. Approved (Name and Title)<br>Cheryl Brown<br>Group Supervisor | 15. Date |

DEA Form     - 6
(Jul. 1996)

### DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.     A.R. 100

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No. ███████ | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title APPROVAL OF APPLICATION CLASS B (DEA 225) | |
| 4. Page 2 of 10 | | |
| 5. Program Code | 6. Date Prepared 12/20/05 | |

2.  ██████████████████, is a manufacturer and importer of controlled substances and non-controlled substances. The firm currently holds the following DEA registrations:

   Importer; DEA #█████████, Expiration: 03/31/2006
   Manufacturer; DEA #█████████, Expiration: 03/31/2006
   (███████████████████████████████)

   Manufacturer; DEA #█████████, Expiration: 03/31/2006
   Distributor; DEA #█████████, Expiration: 03/31/2006
   (██████████████████████

3.  ███████████████████, is a public corporation trading on the American Stock Exchange as ████. ████████████ is president of the firm. Submitted as attachment #4 is ████████ organization chart.

4.  On September 14, 2005, Diversion Investigator (DI) Michelle McGregor spoke with ████████████████████████ regarding the firm's application. DI McGregor reviewed the application process with ████████████ and made arrangements for an onsite visit.

5.  On September 27, 2005, DIs John Robertson and Michelle McGregor met with ███████████ and████████████ at ████████████████ to discuss ███████████ application for registration as an importer.

6.  ███████████████████, plans on importing the following controlled substances:

   Dronabinol (Schedule 3N), in bulk form, from █████████ located in █████████████. The foreign port of exportation will be ███████████ and the point of importation will be New York. The imported material will be transported via overland common carrier. The initial shipment will contain 9kg and the estimated annual amount would be 35kg. Upon receiving the controlled substances███████ will transfer the products to its manufacturing registration. The dronabinol will be

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ▮▮▮▮ | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title APPROVAL OF APPLICATION CLASS B (DEA 225) | |
| 4. Page 3 of 10 | | |
| 5. Program Code | 6. Date Prepared 12/20/05 | |

manufactured into soft gel capsules; 2.5mg, 5mg and 15mg then packaged into 100 counts bottles under ▮▮▮▮ company label.

Zolpidem (Schedule 4), from ▮▮▮▮, located in ▮▮▮▮. The foreign port of exportation will be ▮▮▮▮ and the point of importation will be New York. The imported material will be transported via overland common carrier. The initial shipment will contain 18kg in raw material and the estimated annual amount will be 70kg. ▮▮▮▮, upon receiving the Zolpidem will transfer the products to its manufacturing registration. The Zolpidem will be manufactured into tablets, strength; 5mg and 10mg, for 100 count bottles and packaged under ▮▮▮▮ company label.

Zaleplon (Schedule 4), from ▮▮▮▮, located in ▮▮▮▮. The foreign port of exportation will be ▮▮▮▮ and the point of importation will be New York. The imported material will be transported via overland common carrier. The initial shipment will contain 84kg, fine powder, in drums, and the estimated annual amount will be 335kg. ▮▮▮▮, upon receiving the Zaleplon will transfer the product to its manufacturing registration for dosage manufacturing. The zaleplon will be manufactured into dosage units of 5mg or 10mg capsules per 100 count bottles and packaged under ▮▮▮▮ company label.

▮▮▮▮, will transfer the imported products to its manufacturing registration, by using invoices and an internal (computerized) accountability/tracking system. A list of ▮▮▮▮ foreign suppliers is submitted as attachment #5.

7.  ▮▮▮▮, employs approximately ▮▮ full time employees at the ▮▮▮▮ site. The firm's business hours are from ▮▮▮▮ to ▮▮▮▮, and ▮▮▮▮ on ▮▮▮▮.

8.  ▮▮▮▮, facility is located in a light industrial area of ▮▮▮▮. The facility is a ▮▮▮▮ square feet, single story, concrete and metal building. ▮▮▮▮ stated that the

| DEA Form - 6a (Jul. 1996) | **DEA SENSITIVE** Drug Enforcement Administration |
|---|---|

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ███████████ | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title APPROVAL OF APPLICATION CLASS B (DEA 225) | |
| **4.** Page  4  of  10 | | |
| 5. Program Code | 6. Date Prepared 12/20/05 | |

█████ square feet building consists of ████ square feet of administrative offices and the remaining ██████ square feet is used for manufacturing/packaging activities.  Submitted as attachment #6 is ████████ floor plan.  Public access to the facility is through a single front door and into an enclosed vestibule.  The front door is equipped with a magnetic contact alarm, and is armed at all times. Employee access requires a personalized magnetic card and the use of a coded key punch located at the front door.  All visitors must sign in to the facility and are escorted by an employee of the firm whenever visiting the site.

9.      The manufacturing area of the ████████ facility is divided internally into two main parts, manufacturing/packaging and a warehouse area used specifically for shipping and receiving.  There are two man doors and two overhead doors that connect the shipping/receiving warehouse and the manufacturing/packaging areas.  These doors have restricted access and are accessed only by individuals with authorized magnetic swipe cards.  The doors remain locked at all times when not transferring controlled substances from manufacturing to shipping/receiving.  The shipping/receiving warehouse has three external overhead doors and one man-door.  The overhead doors are equipped with latch locks and magnetic contact alarms.  The external man-door has a magnetic contact alarm and is accessed by use of a personalized card sweep reader.

10.     The controlled substance cage which will be used to store the imported controlled substances is located on the north wall of the warehouse.  The controlled substance cage is 37'9"x64'6"x17'6" high, and is constructed of number 10 gauge woven steel wire mesh.  All posts and framing connections are bolted, pinned and brazed.  The cage door is self closing and self locking and is equipped with a magnetic alarm contact switch.  The cage door has a key lock and key pad for arming the cage.  The controlled substance cage has four motion detectors located in each corner of the cage.  The motion detectors provide 100% coverage of the cage area.  Inside the cage there's also a digital recording camera with the capability to store up to 21 days of coverage and produce a digital read out.  A DEA log book is signed upon entering the cage.

**DEA SENSITIVE**
*Drug Enforcement Administration*

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

A.R.  103

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ▮▮▮▮▮ | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title APPROVAL OF APPLICATION CLASS B (DEA 225) | |
| 4. Page  5  of  10 | | |
| 5. Program Code | 6. Date Prepared 12/20/05 | |

11.  ▮▮ also has a controlled substance vault, which will be used if ▮▮
decides to import schedule II controlled substances in the future.
The vault is located inside of the cage and measures 21'x34'6"x15'6"
high.  The vault door has a U.L. Class M rating equal to, and
exceeding the construction requirements as outlined in CFR,
1301.72(3) for penetration and forced entry.  CFR, 1301.72(3)11, for
30 man-minutes against surreptitious entry, 20 man-hours against lock
manipulation, and 20 man-hours against radiological techniques are
covered by the vault door combination lock.  U.L. listed Group 1A
electronic locks are used on the vault door.  The vault is also
equipped with an interior audible alarm.  There are no motion
detectors in the vault.  The vault door is armed with magnetic
contact alarm switches.  Access to either the cage or the vault can
only be gained by authorized employees who are escorted by ▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Attachment #7).

12.  ▮▮▮▮▮▮▮▮, uses ▮▮ Security Services, ▮▮▮▮▮▮
▮▮▮▮  When an alarm is received by ▮▮, ▮▮▮▮ is notified of the
alarm location within the facility.  If the alarm is received after
business hours the ▮▮▮▮▮ Police Department is notified to
respond to the alarm.  Police response time to the ▮▮▮ site is
less than 5 minutes.

13.  D/Is Robertson and McGregor tested the alarm system and found it to
be fully functional.  Alarms tested included the controlled
substances cage door, cage motion detectors, and the controlled
substance vault door.  ▮▮▮ operator ▮▮▮▮▮▮▮▮▮
confirmed the activations.

14.  ▮▮▮▮▮▮ has overall responsibility for record keeping and
security at the facility.  The firm's established procedures for the
handling of controlled substances with investigators were reviewed.
The procedures, as outlined, for the receipt, storage, importing,
security, record keeping, and destruction of controlled substances
were found to be consistent with DEA rules and regulations for the

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

A.R. 104

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| **REPORT OF INVESTIGATION**<br>*(Continuation)* | 1. File No. ▓▓▓▓ | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title APPROVAL OF APPLICATION<br>CLASS B (DEA 225) | |
| 4.<br>Page  6  of  10 | | |
| 5. Program Code | 6. Date Prepared<br>12/20/05 | |

handling of controlled substances. ▓▓▓▓▓▓ stated that ▓▓▓▓▓▓
contracts with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15.  Based on the above information it is recommended that the application
     for registration as an importer submitted by the ▓▓▓▓▓▓▓▓▓
     ▓▓▓▓, be approved.

16.  On ▓▓▓▓▓▓▓▓▓▓▓▓, Registration Specialist Maria Mendoza issued
     DEA # ▓▓▓▓▓▓▓ to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**ATTACHMENTS**

1. ▓▓▓▓▓▓▓    Certificate of Licensure (Wholesale/Distributor)
2.            Certificate of Licensure (Prescription)
3. DEA-225, Application for Registration
4.            organization chart
5. ▓▓▓▓▓▓▓    Import Registration Information
6.            floor plan
7.            employees with controlled substances access
8.            drug destruction company

**INDEXING**

1. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓; NADDIS ▓▓▓▓▓

2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



DEA Form   - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

A.R. 105

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | Page 1 of 2 |
|---|---|---|---|

| 1. Program Code | 2. Cross File | Related Files | 3. File No. ▮▮▮▮ | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: D/I Michelle McGregor<br>At:▮▮▮▮ | ☐<br>☐<br>☐<br>☐ | | 6. File Title MODIFICATION OF REGISTRATION | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | ☐ | | 8. Date Prepared<br>12/21/05 | |
| 9. Other Officers: | | | | |

| 10. Report Re: ▮▮▮▮▮, DEA #▮▮▮▮, REQUEST FOR ADDITIONAL DRUG CODE (MR00) |
|---|

## DETAILS

1. Reference is made to a letter (attachment 1), dated 9-30-05 from ▮▮▮▮▮▮▮▮ for ▮▮▮▮▮▮ ▮▮▮▮▮▮, DEA #▮▮▮▮ (Manufacturing), ▮▮▮▮▮▮ ▮▮▮▮▮. ▮▮▮ has requested the addition of Schedule IIIN Dronabinol, (Drug Code #7369), to their registration.

2. ▮▮▮▮▮ stated that ▮▮▮ is adding Dronabinol to their manufacturing registration in order for both of their manufacturing sites to be approved for in same list of drug codes.

3. ▮▮▮▮ will obtain the Dronabinol (bulk) from their importer registration (DEA #▮▮▮▮) and convert it into soft-gel capsule; 2.5mg, 5mg and 15mg per 100 count bottles

4. On ▮▮▮▮▮▮▮, Registration Technician Maria Mendoza added Dronabinol, drug code #7369 to DEA #▮▮▮▮.

## ATTACHMENTS

1. ▮▮▮▮ letter dated 9/30/05.

## INDEXING

1. ▮▮▮▮▮▮, NADDIS ▮▮▮.

| 11. Distribution:<br>Division | 12. Signature (Agent)<br>Michelle McGregor, DI | 13. Date |
|---|---|---|
| District | 14. Approved (Name and Title)<br>Cheryl Brown<br>Group Supervisor | 15. Date |
| Other  SARI; ODRR | | |

DEA Form    - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

A.R. 106

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ▮▮▮▮▮▮ | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title MODIFICATION OF REGISTRATION | |
| 4. Page 2 of 2 | | |
| 5. Program Code | 6. Date Prepared 12/21/05 | |

2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

A.R. 107

Previous edition dated 8/94 may be used.

# Memorandum

| Subject | Date |
|---|---|
| Registration Record Modifications<br>DEA Number ████████████ | JUL 2 0 2005 |

**To** Diversion Group Supervisors<br>Field Registration Assistants

████████

**From** Registration Unit - ODRR

**ADAMS, Brenda**

Take action as requested for the reason(s) checked below:

[ ]  **"YES" TO A LIABILITY QUESTION (Code A)**
The applicant has answered "YES" to a liability question on the attached application.  The field office will complete the approval/disapproval process.

[ ]  **"YES" TO A LIABILITY QUESTION (Code K)**
The registrant has answered "Yes" to a liability question on the attached application.  ODRR will remove the Administrative Code K and complete the action as requested.  Return this form to ODRR.

[ ]  **NAME/ADDRESS CHANGE ON A RENEWAL APPLICATION**
ODRR will remove the Administrative Code and complete action as requested.  Return this form to ODRR.

[ ]  **NAME/ADDRESS CHANGE REQUESTED BY LETTER**
The field office will input the necessary modifications.  No need to send ODRR a copy.

[ ]  **MID-LEVEL PRACTITIONER APPLICATION (224)**
The field office will complete the approval/disapproval process.

[X]  **225 AND/OR 363 APPLICATION**
The field office will complete the approval/disapproval process.

[ ]  **SCHEDULE/DRUG CODE CHANGE**
The field office will input the necessary modifications.  No need to send ODRR a copy.  The following change(s) in schedule(s) and/or drug code(s) have been requested.

_____  _____  _____  _____  _____  _____  _____

[ ]  **NADDIS**
Return this form to ODRR.

FORM DEA-689 (5-02) *Previous editions are obsolete*

A.R. 108

[ ]   ADMINISTRATION CODE
      Removal/retention of code is requested.  Return this form to ODRR.

[ ]   PROTOCOLS
      Enclosed are protocols listed on the attached sheet which have been
      submitted to the Food and Drug Administration (FDA) as a part of an
      applications for registration as a Researcher of controlled
      substances in Schedule 1.  Return this form to ODRR.

[ ]   OTHER _____


The following section is to be filled out by DEA field office:


          [X] Approved                    [ ] Disapproved


Remarks: _____


_____          _12-27-05_____
Signature                                Date


DATE:_____
INITIAL:_____

A.R. 109

FORM DEA-S89 (5-02)

MAY-10-2006  10:58                                                                P.02

| U.S. Department of Justice / Drug Enforcement Administration | OMB APPROVAL No. 1117-0019 |
|---|---|
| **APPLICATION FOR PERMIT TO IMPORT CONTROLLED SUBSTANCES FOR DOMESTIC AND/OR SCIENTIFIC PURPOSES** PURSUANT TO SECTION 1002, TITLE III, P.L.91-513 ( Read instructions on reverse before completing) | See reverse for Privacy Act |

| TO: **DRUG ENFORCEMENT ADMINISTRATION INTERNATIONAL DRUG UNIT (ODOI) WASHINGTON, D.C. 20537** | DATE Feb 28, 2006 |
|---|---|
| | IMPORTER'S APPLICATION NUMBER |

Application is hereby made pursuant to the provisions of the Controlled Substances Import and Export Act and the regulations prescribed thereunder for a permit to import as follows:

| 1. NAME OF FOREIGN EXPORTER | 2. ADDRESS OF FOREIGN EXPORTER |
|---|---|
| ▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓ |

| 3. FOREIGN PORT OF EXPORTATION | 4. PORT OF ENTRY (U.S. Customs port where shipment will clear) NEW YORK/JFK | 5. LATEST DATE SHIPMENT WILL LEAVE FOREIGN PORT Mar 16, 2006 |
|---|---|---|

| 6a. NAME AND QUANTITY OF DRUG PREPARATION TO BE IMPORTED (Enter names as shown on labels; numbers and sizes of packages; strength, CSA Drug Code, and NDC Number) | 6b. CONTROLLED SUBSTANCE CONTENT OF DRUG OR PREPARATION TO BE IMPORTED expressed as acid, base or alkaloid (Enter name of controlled substance contained in the drug, compound, or preparation) | 6c. DATE IMPORTED AND ACTUAL QUANTITY (Completed by registrant at time of import) DEA PERMIT No.: |
|---|---|---|
| Dronabinol 2.5mg Capsules in Sesame Oil 2 Bags X 200 Caps CSA Drug Code: 7369 NDC# 0527-1450-01 | 2 X 200Caps = 400Caps X .0025gm/1 Cap X 1 = 1 gm/base | |
| Dronabinol 5mg Capsules in Sesame Oil 2 Bags X 200 Caps CSA Drug Code: 7369 NDC# 0527-1451-01 | 2 X 200Caps = 400Caps X .0050gm/1 Cap X 1 = 2 gm/base | ▓▓▓▓▓▓ |
| Dronabinol 10mg Capsules in Sesame Oil 2 Bags X 200 Caps CSA Drug Code: 7369 NDC# 0527-1452-01 | 2 X 200Caps = 400Caps X .010gm/1 Cap X 1 = 4 gm/base Total= 7 gm/base | |

| 7a. ASSIGNED QUOTA FOR THIS YEAR N/A | 7b. TOTAL KG. AUTHORIZED ON PERMITS THIS YEAR N/A | 7c. KG OF 7b IMPORTED TO DATE N/A | 7d. STOCK ON HAND & DATE N/A |
|---|---|---|---|

8. IF SUBSTANCE(S) WILL BE IMPORTED FOR SCIENTIFIC PURPOSES ONLY, PLEASE COMPLETE:

I hereby certify the above controlled substances are imported exclusively for scientific purposes, pursuant to 21 CFR 1312.13(a)(4) (see reverse), as follows:

Internal Analytical Method Development and Validation

|  | Signature of Certifying Individual ▓▓▓▓▓▓ |
|---|---|
| NAME OF IMPORTER ▓▓▓▓▓▓ | ADDRESS OF IMPORTER ▓▓▓▓▓▓ |
| IMPORTER'S TELEPHONE NO. ▓▓▓▓ | DEA REGISTRATION NO. | SIGNATURE ▓▓▓ ...ON MAKING APPLICATION ▓▓▓▓ |

**NOTICE : Controlled Substances may not be imported by mail or parcel post.**

| DEA USE ONLY | APPROVED IMPORT PERMIT NUMBER | DATE IMPORT PERMIT NUMBER ISSUED |
|---|---|---|

A.R. 110

MAY-10-2006  10:59                                                    P.04



**U.S. Department of Justice**
Drug Enforcement Administration

# PERMIT TO IMPORT

The Administrator of the Drug Enforcement Administration, being the person charged with the administration of the laws relating to the importation of the dangerous drugs to which the Controlled Substances Import and Export Act and the several international treaties apply, authorizes and permits the following importation of controlled substances into the United States.

| DATE OF ISSUE | EXPIRATION DATE | PERMIT NO. |
|---|---|---|
| MARCH 22, 2006 | SEPTEMBER 22, 2006 | |

**IMPORTER**

**EXPORTER**

| PORT OF IMPORT | FOREIGN PORT OF EXPORT |
|---|---|
| JAMAICA, NEW YORK | |

Importer is hereby permitted under the provisions of the Controlled Substance Import and Export Act to import items below:

| Item No. | Number and Size of Packages | Name of Substance or Preparation | Controlled Substance Content |
|---|---|---|---|
| 1 | 2 BAGS / 200 CAPSULES/BAG / 2.5MG/CAPSULE | DRONABINOL (MARINOL) | 1GM DELTA-9-THC BASE |
| 2 | 2 BAGS / 200 CAPSULES/BAG / 5MG/CAPSULE | DRONABINOL (MARINOL) | 2GM DELTA-9-THC BASE |
| 3 | 2 BAGS / 200 CAPSULES/BAG / 10MG/CAPSULE | DRONABINOL (MARINOL) | 4GM DELTA-9-THC BASE |
| | NOTHING FOLLOWS | | |

Total Number of Item: THREE

The consignment proposed to be imported is required for legitimate purposes.

NOTE: THE ORIGINAL PERMIT IS REQUIRED TO ACCOMPANY THE SHIPMENT

Endorsement by U.S. Customs: This is to certify that the controlled substance merchandise described herein was imported into this port. If quantity is different than permitted, please indicate in Notes section above.

(Original)

| (Port) | (Signature/Title) | (Date) |
|---|---|---|

For the Administrator
Stephen M. Via
Acting Chief, ODEI

(Signature)

Address:  Drug Enforcement Administration
Import/Export Unit (ODEI)
Washington, DC 20537

DEA Form 35 (10/02)

QUINTUPLICATE— FOR THE IMPORTER

TOTAL P.04

A.R. 111

A.R. 112

MAY-10-2006  10:59                                                    P.03

| U.S. Department of Justice / Drug Enforcement Administration **APPLICATION FOR PERMIT TO IMPORT CONTROLLED SUBSTANCES FOR DOMESTIC AND/OR SCIENTIFIC PURPOSES** PURSUANT TO SECTION 1002, TITLE III, RL.91-513 *( Read instructions on reverse before completing)* | OMB APPROVAL No. 1117 - 0013 See reverse for Privacy Act |
|---|---|

TO:  **DRUG ENFORCEMENT ADMINISTRATION INTERNATIONAL DRUG UNIT (ODOI) WASHINGTON, D.C. 20537**

DATE Apr 18, 2006
IMPORTER'S APPLICATION NUMBER

Application is hereby made pursuant to the provisions of the Controlled Substances Import and Export Act and the regulations prescribed thereunder for a permit to import as follows:

| 1. NAME OF FOREIGN EXPORTER | 2. ADDRESS OF FOREIGN EXPORTER |
|---|---|
| ▮▮▮▮▮ | ▮▮▮▮▮ |

| 3. FOREIGN PORT OF EXPORTATION | 4. PORT OF ENTRY (U.S. Customs port where shipment will clear) NEW YORK/JFK | 5. LATEST DATE SHIPMENT WILL LEAVE FOREIGN PORT May 8, 2006 |
|---|---|---|

| 6a. NAME AND QUANTITY OF DRUG PREPARATION TO BE IMPORTED (Enter names as shown on labels; numbers and sizes of packages; strength, CSA Drug Code, and NDC Number) | 6b. CONTROLLED SUBSTANCE CONTENT OF DRUG OR PREPARATION TO BE IMPORTED expressed as acid, base or alkaloid (Enter name of controlled substance contained in the drug; compound; or preparation) | 6c. DATE IMPORTED AND ACTUAL QUANTITY (Completed by registrant at time of import) DEA PERMIT No: |
|---|---|---|
| DRONABINOL 2.5MG CAPSULES IN SESAME OIL 1 X 175,000 CAPS CSA DRUG CODE: 7369 NDC# 0527-1450-01 | 1 X 175,000 CAPS = 175,000 CAPS X .0025GM/1 CAP X 1 = 437.5 GM/BASE | ▮▮▮▮ |
| DRONABINOL 5MG CAPSULES IN SESAME OIL 1 x 175,000 CAPS CSA DRUG CODE: 7369 NDC# 0527-1451-01 | 1 X 175,000 CAPS = 175,000 CAPS X .0050GM/1 CAP X 1 = 875 GM/BASE | |
| DRONABINOL 10MG CAPSULES IN SESAME OIL 1 X 175,000 CAPS CSA DRUG CODE: 7369 NDC# 0527-1452-01 | 1 X 175,000 CAPS = 175,000 CAPS X .010GM/1 CAP X 1 = 1750 GM/BASE  TOTAL = 3,062.5 GM/BASE | |

| 7a. ASSIGNED QUOTA FOR THIS YEAR N/A | 7b. TOTAL KG. AUTHORIZED ON PERMITS THIS YEAR N/A | 7c. KG OF 7b. IMPORTED TO DATE N/A | 7d. STOCK ON HAND & DATE N/A |
|---|---|---|---|

8. IF SUBSTANCE(S) WILL BE IMPORTED FOR SCIENTIFIC PURPOSES ONLY, PLEASE COMPLETE:

I hereby certify the above controlled substances are imported exclusively for scientific purposes, pursuant to 21 CFR 1312.13(e)(4) (see reverse), as follows:

BIOSTUDY/SUBMISSION BATCHES FOR ANDA APPROVAL

▮▮▮▮▮▮
Signature of Certifying Individual

| NAME OF IMPORTER ▮▮▮▮▮ | ADDRESS OF IMPORTER ▮▮▮▮▮ |
|---|---|
| IMPORTER'S TELEPHONE NO. ▮▮▮▮ | DEA REGISTRATION NO. ▮▮▮ | SIGNATURE AND ▮▮▮▮  IMB APPLICATION ▮▮▮▮ |

**NOTICE : Controlled Substances may not be imported by mail or parcel post.**

| DEA USE ONLY | APPROVED IMPORT PERMIT NUMBER | DATE IMPORT PERMIT NUMBER ISSUED |
|---|---|---|

DEA Form

A.R. 112

████████████████████████████████████████████████████████

Date:  May 9, 2006                    ████████████████████████

Mr. Brian Bayley
United States Department of Justice
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA   22301

Dear Brian:

Per our phone discussion yesterday, the following is a sequence of events for which I am requesting your intervention.

- On████████████, ████████submitted an application for registration under controlled substances act of 1970 for a Schedule IIIN and IV for controlled substances.   Included was the drug code number CSA 7369, which is assigned to Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule.

- On July 6, 2005, representatives of ██████████████████████████ ████████ met with Ann Carter and John Robertson at the DEA Office in Philadelphia.  The purpose of this meeting was to inform the local office of our plans for the manufacture and/or marketing of new controlled substance finished goods. ████████ recalls specifically discussing Dronabinol soft gel capsules 2.5mg, 5mg and 10mg finished goods and asking if there would be any issues. ████████further recalls Mr. Robertson of DEA stating that while the DEA lists the soft gel capsules as a CIII, we would need to advise the DEA each time we imported it.  He advised that DEA treated this drug similarly to drugs that have quotas assigned in that post approval by FDA of our Abbreviated New Drug Application (ANDA) we would need to constantly show we had customer orders for the capsules being imported.

- The Drug Enforcement Agency's Import/Export Unit did issue an import permit DEA registration certificate████████ on ████████.

- On████████████, ████████applied for a permit to import controlled substances for domestic and/or scientific purposes (form 357) for 400 capsules Dronabinol 2.5 mg capsules in sesame oil, 400 capsules 5 mg in sesame oil and 400 capsules 10 mg in sesame oil. The Drug Enforcement Administration issued

████████████████████████████████████████████████████████



a permit no. ███ to import on ████████ with an expiration date of ████████ ████████████ allowing these quantities to be imported from ████████. This Dronobinal was imported and received by ████████ in ████████ on April 24, 2006.

- On April 18, 2006, ████████ made an application for a permit to import controlled substances for domestic and/or scientific purposes (form 357) for 175,000 capsules of each Dronabinal dosage form listed above for the stated purpose of packaging the biostudy batch and submission batches for ANDA approval. These capsules are prepared and awaiting our instructions. These are sensitive materials that need to be packaged quickly. Any delay will be viewed by FDA negatively.

- On May 5, 2006, Stephen Via, Acting Chief of ODEI along with Matt Strait and Michael Morley from ODEI contacted ████████ to inform him that the import permit application of April 18, 2006 was being cancelled. ████████ was informed that 21 CFR 1308 .13 (g) requires Dronabinol to be an FDA approved product. ████████ was further informed that Dronabinol would need to be imported as Schedule I controlled substance and not an IIIN. ████████ stated to Mr Via that the DEA ODEI did issue permit no. ███ on ████████ to bring in samples of 400 capsules of each dosage for Dronabinol. Mr. Via stated that it had been a mistake for the DEA to issue that permit.

It is difficult to understand why Dronobinol, a formulated processed product in sesame oil and encapsulated in a soft gelatin capsule, could be reclassified to a schedule I drug per 21 CFR 1308.11 (d) following the issuing of an import permit by the DEA. ████████ has in the past imported unapproved generic versions of approved FDA products for research and development purposes. In these instances, ████████ has committed in writing that they would not market or distribute the unapproved product and has taken measures to prevent diversion of such unapproved products.

████████ wishes to point out that 21 CFR, Section 1308.13 (g) (1) is used to define a CIIIN drug and the FDA approval refers to there being a product on the U.S. Market in the particular dosage form. In order to get generic drug approval from FDA ████████ is seeking to import an unapproved generic version of the approved FDA branded product, Marinol (the reference listed drug). In order for ████████ to obtain approval to market its Dronabinol in the US, it must package and bottle the drug at its facilities, conduct stability tests and show bioequivalence with the reference listed drug, Marinol in biostudies. Then it must assemble information from this testing and submit an ANDA. The drug product in its packaged and bottled form needs to available for inspection by FDA at ████████ premises.
We believe that FDA approval has no relevance to whether or not a drug is a schedule or what schedule it should be. Diversion is what drives these designations.

████████ would be prepared to provide whatever documentation is necessary to convince the DEA that ████████ has adequate safeguards in place against diversion of the

Dronabinol that we seek to import for research and development work in order to file an ANDA application. Furthermore, following your logic, if the NDA holder of the approved Dronabinol product, Marinol, elected to withdraw their NDA, would their product suddenly become an unscheduled drug.

█████ believes that the Dronabinol that it seeks to import under a schedule CIIIN permit should be allowed by the DEA and any other interpretation of the regulations is in error.

Thank you for your assistance in this matter. Please don't hesitate to contact me if you should need additional information or wish to discuss further.

Sincerely,

Date:  May 10, 2006

███████████████████████

Via facsimile

Mr. Brian Bayley, Esq.
United States Department of Justice
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA   22301

Dear Brian:

Following up on my conversation, DEA should note that paragraph 8 of the
Application for Permit to Import Controlled Substances for Domestic and/or
Scientific Purposes requires the applicant to indicate whether the controlled
substances will be used only for scientific purposes and, if so, to so certify.  Thus,
the Form itself contemplates the importation of unapproved drugs for scientific
purposes, such as for conducting tests to obtain FDA approval for a generic
version.  In other words, the DEA Form is consistent with an interpretation of
Schedule 3N as referring to unapproved Dronabinol.

I apologize for not including this in my letter yesterday.

Kind Regards,



Matt—
E-6249-3
Susan
E-6235

ηη١٩३.

Douglas C.
Throckmorton, M.D.
Acting Deputy Director,
Center for Drug Evaluation
and Research, F.D.A.



**U. S. Department of Justice**
Drug Enforcement Administration

---

*www.dea.gov*                              Washington, D.C.  20537

**JUN 1 2 2006**

████████████
████████████
████████████
████████████

Dear████████████

     The application of████████████████████dated████████████for an import permit to import dronabinol is denied.  The decision to deny the application for an import permit was made on May 5, 2006 and communicated to████████████by telephone on May 5, 2006. Although the final agency action by the Drug Enforcement Administration (DEA) occurred on May 5, 2006, this letter provides████with written notice of the basis for the denial and explains ████████procedural rights.

     The basis for this denial is that████is seeking to import the schedule I controlled substance dronabinol (an isomer of tetrahydrocannabinol) without possessing a DEA registration authorizing the importation of dronabinol.  Additionally,████████application erroneously indicates that the substance it seeks to import is a schedule III controlled substance under National Drug Code 7369.  The product████seeks to import is not approved by the U.S. Food and Drug Administration, and therefore, is not a schedule III controlled substance under National Drug Code 7369.

The following procedures are available to you in this matter:

1. Within 30 days after the date of receipt of this denial, you may file with the Administrator of DEA a written request for a hearing in the form set forth in Section 1316.47, Title 21, Chapter 2, Code of Federal Regulations. (See 21 C.F.R. § 1312.44(a)).

2. Within 30 days after the date of receipt of this denial you may file with the Administrator a waiver of hearing together with a written statement regarding your position on the matters of fact and law involved.  (See 21 C.F.R. § 1312.44(b)).

3. Should you decline to file a request for a hearing or should you so file and fail to appear at the hearing, you shall be deemed to have waived the opportunity for a hearing and the Deputy Administrator of DEA may cancel such hearing, if scheduled, and enter her final order in this matter without a hearing and based upon the investigative file and the record of this proceeding as it may then appear.  (See 21 C.F.R. §§ 1312.44(c) and 1312.44(d)).

Correspondence concerning this matter should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C. 20537.

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control